IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 0:20-cv-60075-RKA

MATTHEW SCHRIER,

      Plaintiff,

v.

QATAR ISLAMIC BANK,

      Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF
## QATAR ISLAMIC BANK'S MOTION TO DISMISS

T. Michael Guiffré
Jonathan R. Weiss
Alexander A. Salinas
SQUIRE PATTON BOGGS (US) LLP
200 South Biscayne Boulevard, Suite 4700
Miami, Florida 33131
(305) 577-7000
jonathan.weiss@squirepb.com
michael.guiffre@squirepb.com
alexander.salinas@squirepb.com

*Attorneys for Defendant*
*Qatar Islamic Bank*

i

## <u>TABLE OF CONTENTS</u>

**Page**

I.   PLAINTIFF FAILED TO PROPERLY EFFECT SERVICE OF PROCESS ......................... 1

II.   THE COURT LACKS PERSONAL JURISDICTION .......................................... 2

III.   PLAINTIFF FAILED TO STATE A CLAIM UPON WHICH
       RELIEF CAN BE GRANTED ............................................................... 6

   A.   Plaintiff Failed to Allege Facts that Meet the Statutory Requirements
        to Constitute an act of "International Terrorism." ............................... 6

   B.   Plaintiff Failed to Plausibly Allege Primary Liability under the
        ATA (Counts I and II) ................................................................ 10

      1.   Plaintiff failed to sufficiently allege that QIB knowingly provided
           material support to either the Nusra Front or Ahrar al-Sham. ............... 10

      2.   Plaintiff failed to sufficiently allege proximate causation. ................... 11

   C.   Plaintiff Failed to Plead Secondary Liability against QIB under
        Section 2333(d) (Counts III through VI). ......................................... 14

      1.   Plaintiff failed to allege facts that QIB directly aided and abetted
           or conspired with the Nusra Front or Ahrar al-Sham. ........................ 14

      2.   Plaintiff failed to plead facts that QIB knowingly aided and
           abetted the Nusra Front or Ahrar al-Sham. ................................... 15

      3.   Plaintiff failed to plead facts that QIB conspired with the Nusra
           Front and Ahrar al-Sham. ....................................................... 16

IV.   THE COURT SHOULD DISMISS THE STATE LAW CLAIMS .............................. 17

   A.   Plaintiff's State Law Claims Do Not Exist or Apply to QIB. ..................... 17

   B.   The State Law Claims are Barred by the Statute of Limitations. ................. 18

   C.   The State Law Claims Fail to State a Claim for Relief. ........................... 18

   D.   This Court Should Abstain From Exercising Supplemental
        Jurisdiction Over the State Law Claims ........................................... 20

   CONCLUSION ................................................................................. 21

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Angell v. Allergan Sales, LLC*,
  2019 U.S. Dist. Lexis 142768 (M.D. Fla. Aug. 22, 2019)................................................19, 20

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006)................................................................................................................11

*Borges v. City of W. Palm Beach*,
  858 F. Supp. 174 (S.D. Fla. 1993) .........................................................................................20

*In re Chiquita Brands Int'l, Inc.*,
  284 F. Supp. 3d 1284 (S.D. Fla. 2018) .............................................................................10, 12

*In re Chiquita Brands Int'l, Inc.*,
  792 F. Supp. 2d 1301 (S.D. Fla. 2011) ....................................................................................8

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)..........................................................................................................3, 4, 5

*Day v. Corner Bank (Overseas) Ltd.*,
  789 F. Supp. 2d 150 (D.D.C. 2011) .........................................................................................2

*Fields v. Twitter, Inc.*,
  881 F.3d 739 (9th Cir. 2018) ..................................................................................................11

*Freeman v. First Union Nat. Bank*,
  865 So.2d 1272 (Fla. 2004)....................................................................................................17

*Freeman v. JPMorgan Chase Bank, N.A.*,
  675 F. App'x 926 (11th Cir. 2017) .........................................................................................19

*Gonzalez v. Metro. Dade Cnty. Pub. Health Trust*,
  626 So. 2d 1030 (Fla. 3d DCA 1993) ....................................................................................17

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945)..................................................................................................................5

*Julin v. Chiquita Brands Int'l, Inc.*,
  690 F. Supp. 2d 1296 (S.D. Fla. 2010) ..................................................................................14

*Kaplan v. Lebanese Canadian Bank, SAL*,
  405 F. Supp. 3d 525 (S.D.N.Y. 2019).................................................................................9, 16

*Kemper v. Deutsche Bank AG*,
   911 F.3d 383 (7th Cir. 2018) ...................................................................10, 16, 17

*Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*,
   748 F.3d 771 (11th Cir. 2015) .........................................................................18

*Estate of Klieman v. Palestinian Auth.*,
   923 F.3d 1115 (D.C. Cir. 2019) .......................................................................3, 4

*La Grasta v. First Union Sec., Inc.*,
   358 F.3d 840 (11th Cir. 2004) .........................................................................18

*Lawrence v. Bank of Am., N.A.*,
   455 F. App'x 904 (11th Cir. 2012) ................................................................19, 20

*Linde v. Arab Bank, PLC*,
   882 F.3d 314 (2d Cir. 2018)..........................................................................9, 13

*O'Neill v. Asat Tr. Reg.*,
   714 F.3d 659 (2d Cir. 2013)..........................................................................3, 4, 5

*Perlman v. Wells Fargo Bank, N.A.*,
   559 F. App'x 988 (11th Cir. 2014) .................................................................19, 20

*Plain Bay Sales, LLC v. Gallaher*,
   2018 U.S. Dist. LEXIS 116129 (S.D. Fla. Jul. 12, 2018)......................................1

*PowerTec Sols. Int'l, LLC v. Hardin*,
   2019 U.S. Dist. LEXIS 201216 (S.D. Fla. Nov. 20, 2019).....................................3

*Rajbhandari v. US Bank*,
   305 F.R.D. 689 (S.D. Fla. 2015)........................................................................3

*Reese Bros. v. USPS*,
   477 F. Supp. 2d 31 (D.D.C. 2007) ......................................................................5

*Rothstein v. UBS AG*,
   708 F.3d 82 (2d Cir. 2013)...............................................................................11

*S. Spanish Trail, LLC v. Globenet Cabos Submarinos Am., Inc.*,
   2019 U.S. Dist. LEXIS 121498 (S.D. Fla. July 22, 2019).....................................6

*Strauss v. Crédit Lyonnais, S.A.*,
   379 F. Supp. 3d 148 (E.D.N.Y. 2019) ............................................................9, 14, 16

*In re Sealed Case*,
   932 F.3d 915 (D.C. Cir. 2019) ...........................................................................1

iii

*Siegel v. HSBC Holdings PLC,*
    2018 U.S. Dist. LEXIS 8986 (S.D.N.Y Jan. 19, 2018)............................................................5

*Siegel v. HSBC N. Am. Holdings, Inc.,*
    933 F.3d 217 (2d Cir. 2019)............................................................................................9

*Tamam v. Fransabank SAL,*
    677 F. Supp. 2d 720 (S.D.N.Y. 2010)..........................................................................2, 4

*Terrorist Attacks on September 11, 2001 v. Al Rajhi Bank,*
    714 F.3d 118 (2d Cir. 2013)........................................................................................6, 13

*United States v. Dempsey,*
    635 So. 2d 961 (Fla. 1994)............................................................................................17

*United Techs. Corp. v. Mazer,*
    556 F.3d 1260 (11th Cir. 2009) .......................................................................................2

*Waldman v. PLO,*
    835 F.3d 317 (2d Cir. 2016)........................................................................................4, 5

*Weiss v. Nat'l Westminster Bank PLC,*
    278 F. Supp. 3d 636 (E.D.N.Y. 2017) ..........................................................................15

*Westchester Fire Ins. Co. v. Vector Aerospace,*
    2017 U.S. Dist. LEXIS 158169 (S.D. Fla. Sep. 26, 2017)..............................................5

*World-Wide Volkswagen Corp. v. Woodson,*
    444 U.S. 286 (1980).........................................................................................................5

iv

**Statutes**

18 U.S.C. § 2331(1) ................................................................................................6

18 U.S.C. § 2331(1)(A) ......................................................................................9, 10

18 U.S.C. § 2331(1)(B) ....................................................................................7, 8, 9

18 U.S.C. § 2333(a) ......................................................................................4, 10, 14

18 U.S.C. § 2334(a) ...............................................................................................3, 5

18 U.S.C. §2338 ....................................................................................................20

18 U.S.C. § 2339A ................................................................................................10

18 U.S.C. § 2339B ...........................................................................................10, 11

28 U.S.C. § 1331 ..................................................................................................20

28 U.S.C. § 1367 ..................................................................................................20

28 U.S.C. § 1367(c)(1) .........................................................................................20

31 U.S.C. § 5318(k)(3)(B) .....................................................................................1

Fla. Stat. § 95.11(3)(p) .........................................................................................18

Fla. Stat. § 95.031(a) ...........................................................................................18

Fla. Statute § 48.193 .............................................................................................5

**Other Authorities**

Fed. R. Civ. P. 4(c) ..............................................................................................1

Fed. R. Civ. P. 4(k)(1)(A) ....................................................................................3

Fed. R. Civ. P. 12(b)(2) ........................................................................................3

Fed. R. Civ. P. 12(b)(5) ........................................................................................1

Fed. R. Civ. P. 12(b)(6) ..............................................................................6, 14, 18

## I.    PLAINTIFF FAILED TO PROPERLY EFFECT SERVICE OF PROCESS

The Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(5) because Plaintiff

failed to comply with the requirements for effecting proper service of process on Qatar Islamic

Bank ("QIB"). "[I]t is the Plaintiff's burden to prove sufficient service." *Plain Bay Sales, LLC v.*

*Gallaher*, 2018 U.S. Dist. LEXIS 116129, at *6 (S.D. Fla. Jul. 12, 2018).

The Complaint alleges that "QIB maintains accounts with correspondent banks in New

York, and has a USA PATRIOT Act registered agent, Global Payments Advisory Group

["GPAG"], in New York." Compl. ¶ 19. Plaintiff filed a "Proof of Service" stating that the process

server "served the summons on … Sabrina Santopietro, who is designated by law to accept service

of process on behalf of Global Payments Advisory Group on 1/16/2020." Dkt. 6. However, GPAG

is <u>not</u> authorized to accept service of process on behalf of QIB in private causes of action. GPAG

is only authorized to accept service of a summons issued by the Secretary of the Treasury or

Attorney General. Plaintiff's service of process on GPAG is manifestly improper and fails to meet

the requirements of Fed. R. Civ. P. 4(c) and 18 U.S.C. § 2334(a).

The Patriot Act requires that a covered financial institution that maintains a correspondent

account in the United States "shall maintain records in the United States identifying the owners of

such foreign bank and the name and address of a person who resides in the United States and is

authorized to accept service of legal process *for records regarding the correspondent account*."

31 U.S.C. § 5318(k)(3)(B) (emphasis added). Under the Patriot Act, only the Secretary of the

Treasury or the Attorney General, and not U.S. courts, may issue a summons or subpoena for such

records. *Id.* at § 5318(k)(3)(A); *see In re Sealed Case*, 932 F.3d 915, 925 (D.C. Cir. 2019)

("Because the statute confers authority to issue a subpoena directly on the Attorney General and

the Treasury Secretary, rather than on a federal district court, Congress may have given little

consideration to the territorial reach of a district court considering a motion to compel enforcement

of such a subpoena."). The Patriot Act provides only for the service of a government summons for bank records, not a private lawsuit. *See Day v. Corner Bank (Overseas) Ltd.*, 789 F. Supp. 2d 150, 156 (D.D.C. 2011) (statute "requires only that an agent be designated to receive service from either the Secretary of the Treasury or the Attorney General of the United States, and does not apply to private causes of action."); *Tamam v. Fransabank SAL*, 677 F. Supp. 2d 720, 732 (S.D.N.Y. 2010) ("the fact that these PATRIOT Act certifications require foreign banks to designate a proxy to accept service of process by the U.S. Government does not indicate that Defendants should reasonably foresee being haled into a U.S. Court...'").

QIB's Patriot Act *Certification Regarding Correspondent Accounts for Foreign Banks* states that GPAG "is authorized to accept service of legal process on behalf of [QIB] from the *Secretary of the Treasury of [sic.] the Attorney General of the United States* pursuant to Section 5318(k) of title 31, United States Code." Exhibit A, QIB's Patriot Act Certification, dated February 21, 2018 (emphasis added). The limitations set forth in this Certificate are self-evident, and GPAG is not, and has never been, authorized to accept service of a summons issued by a federal court for a private cause of action such as this. Therefore, the Complaint must be dismissed.

## II.   THE COURT LACKS PERSONAL JURISDICTION

This Court has no personal jurisdiction over QIB, nor has Plaintiff alleged any facts to establish personal jurisdiction over QIB. Plaintiff alleges that this Court has personal jurisdiction by virtue of having served a summons on QIB. This is inaccurate as a matter of law. The constitutional and statutory requirements for exercising personal jurisdiction over a foreign defendant are much more rigorous. "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274

(11th Cir. 2009) (internal citation omitted). "[V]ague and conclusory allegations … do not suffice to establish a *prima facie* case of personal jurisdiction." *PowerTec Sols. Int'l, LLC v. Hardin*, 2019 U.S. Dist. LEXIS 201216, at *7 (S.D. Fla. Nov. 20, 2019).

Plaintiff does not allege that QIB has any contacts with Florida, or the United States, apart from maintaining correspondent bank accounts in New York. Plaintiff does not even allege that he was a Florida resident at the time the alleged torts occurred. These allegations are insufficient to establish personal jurisdiction over QIB, or, for that matter, any connection with Florida. Therefore, the Court must dismiss the Complaint under Fed. R. Civ. P. 12(b)(2).

The Complaint alleges that this Court has personal jurisdiction over QIB under Fed. R. Civ. P. 4(k)(1)(A) and/or (C) and 18 U.S.C. § 2334(a).[1] Compl. ¶ 21. Each of the grounds upon which Plaintiff relies to establish personal jurisdiction depends on effective service of process. *See Rajbhandari v. US Bank*, 305 F.R.D. 689, 693 (S.D. Fla. 2015) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.") (internal citation omitted). As set forth in Section I, *supra*, Plaintiff failed to properly serve the summons and establish personal jurisdiction over QIB.

Even if Plaintiff had properly served the summons, "due process requires a plaintiff to allege (1) that a defendant has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *O'Neill v. Asat Tr. Reg.*, 714 F.3d 659, 673 (2d Cir. 2013); *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014). To establish "minimum contacts," Plaintiff must establish either specific or general jurisdiction over QIB. *See Estate of Klieman v. Palestinian Auth.*, 923 F.3d 1115, 1119 (D.C. Cir. 2019).

---

[1] Rule 4(k)(1)(A) does not permit Plaintiff to rely on a federal statute such as 18 U.S.C. § 2334(a) to establish personal jurisdiction. Instead, Plaintiff must establish that QIB "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A).

In order to establish specific jurisdiction, Plaintiff's suit must "aris[e] out of or relat[e] to the defendant's contacts with the forum." *Daimler*, 571 U.S. at 127 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.8 (1984)). To exercise specific jurisdiction "'consistent with due process, the defendant's *suit-related conduct* must create a *substantial connection* with the forum.'" *Klieman*, 923 F.3d at 1120 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (1984)) (emphasis in original). The Plaintiff fails to allege any conduct of QIB related to this suit which is even remotely, let alone substantially, connected to Florida. In an action under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333(a), "[t]he residence or citizenship of the plaintiffs is an insufficient basis for specific jurisdiction over the defendants." *Waldman v. PLO*, 835 F.3d 317, 337 (2d Cir. 2016) (finding no specific jurisdiction where the plaintiffs were U.S. citizens, the terrorist attacks occurred in and around Jerusalem, and the defendants' activities occurred outside the U.S.). Even less so in a case such as this, where Plaintiff is not even alleged to have been a Florida resident at the time that the alleged tortious conduct occurred. Compl. ¶ 18.

A court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum. This is a "relatively demanding standard" requiring foreign corporations' affiliations with the forum to be "so 'continuous and systematic' as to render them *essentially at home* in the forum.'" *Klieman*, 923 F.3d at 1119-20 (quoting *Daimler*, 571 U.S. at 127) (emphasis in original). "[A]bsent exceptional circumstances, … general jurisdiction will lie only where an entity is formally incorporated or maintains its principal place of business." *Klieman*, 923 F.3d at 1120 (internal citations omitted). Plaintiff's allegation that QIB "maintains accounts with correspondent banks in New York" (Compl. ¶ 19) is "insufficient to support the exercise of general personal jurisdiction." *O'Neill*, 714 F.3d at 681; *Tamam,* 677 F. Supp. 2d at

727 (holding that "courts in this district have routinely held that merely maintaining a New York correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction.").

Federal courts in Florida ordinarily consider the Florida long-arm statute to determine whether they have personal jurisdiction over a foreign defendant. *See Westchester Fire Ins. Co. v. Vector Aerospace*, 2017 U.S. Dist. LEXIS 158169, at *3 (S.D. Fla. Sep. 26, 2017); *Daimler*, 571 U.S. at 125. However, Plaintiff has not alleged any facts to establish jurisdiction under Fla. Statute § 48.193. In fact, the Complaint does not allege *a single* contact that QIB has with Florida. As a result, Plaintiff has failed to establish either specific or general jurisdiction in its Complaint.

Even under a statute authorizing nationwide service of process and "national jurisdiction," Plaintiff still must establish that QIB has "minimum contacts with the United States so as not to violate 'traditional notions of fair play and substantial justice.'" *Reese Bros. v. USPS*, 477 F. Supp. 2d 31, 39 (D.D.C. 2007) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("[T]he foreseeability that is critical to due process analysis is … that the defendant's conduct and connection with the forum … are such that he should reasonably anticipate being haled into court there."). The ATA's nationwide service statute, 18 U.S.C. § 2334(a), "does not answer the constitutional question of whether due process is satisfied…. [D]ue process analysis—considerations of minimum contacts and reasonableness—applies even when federal service-of-process statutes are satisfied." *Waldman*, 835 F.3d at 343. Courts have rejected the notion that the alleged "provision of financial services to an entity that carries out a terrorist attack on United States citizens" by itself subjects a defendant to the jurisdiction of American courts. *O'Neill*, 714 F.3d at 676 (*quoting In re Terrorist Attacks on September 11, 2001,* 538 F.3d 71, 96 (2d Cir. 2008)); *see also Siegel v. HSBC Holdings PLC*, 2018 U.S. Dist. LEXIS 8986, at *12 (S.D.N.Y Jan. 19, 2018) ("Allegations that a bank

5

provides financial services to clients that associate with al-Qaeda, thereby aiding al-Qaeda, are 'not enough for personal jurisdiction purposes.'") (quoting *In re Terrorist Attacks on September 11, 2011*, 714 F.3d 659, 676 (2d Cir. 2013)). In accordance with due process considerations and well-established precedent, the Complaint must be dismissed for lack of personal jurisdiction.

## III.   PLAINTIFF FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Plaintiff has failed to state a claim for relief against QIB, and therefore the Complaint should be dismissed pursuant to Rule 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *S. Spanish Trail, LLC v. Globenet Cabos Submarinos Am., Inc.*, 2019 U.S. Dist. LEXIS 121498, at *3 (S.D. Fla. July 22, 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 679, and *Twombly*, 550 U.S. at 555).

### A.   Plaintiff Failed to Allege Facts that Meet the Statutory Requirements to Constitute an act of "International Terrorism."

Counts I through VI of Plaintiff's Complaint, all of which allege violations of § 2333, require that a United States national be injured by an act of "international terrorism," which is defined in § 2331(1). In Counts I and II, Plaintiff alleges that QIB's material support of the Nusra Front and Ahrar al-Sham was an act of international terrorism. Compl. ¶¶ 256, 267. Plaintiff also alleges that QIB aided and abetted or conspired with the Nusra Front and Ahrar al-Sham. *See* Counts III through VI. None of these Counts alleges that QIB had any contact with either the Nusra Front or Ahrar al-Sham. Instead, Plaintiff bases its claims on allegations that QIB provided routine "financial services" (*i.e.*, bank accounts) to Saad bin Saad al-Kabi and Qatar Charity and that it

6

made a donation to Qatar Charity, none of which constitutes an act of international terrorism. *E.g.,* Compl. ¶¶ 3, 4 ("QIB played two substantial roles …"), 10, 12, 207, 247, 249, 263, 282, 286.

The essential element that serves as the foundation for such a claim is that the defendant knowingly played a role in terrorist activities. Providing routine financial services or a charitable donation to persons who supported terrorist organizations, as alleged by Plaintiff, does not by itself rise to the requisite level of scienter to constitute an act of "international terrorism." Section 2331(1)(B) requires that the act be intended "(i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping."

Plaintiff merely makes formulaic recitals of these elements for five counts, as follows:

| Count One | Counts Three and Four | Counts Five and Six |
|---|---|---|
| "QIB's material support of the Nusra Front objectively appears to have been intended to (a) intimidate and coerce the civilian populations of Syria and the United States, (b) influence the policy of the Syrian and United States governments by intimidation and coercion, and (c) affect the conduct of the Syrian and United States governments by mass destruction, assassination, and kidnapping." (¶ 254) | "The Nusra Front's kidnapping, hostage taking, torture, assault, battery, and extortion of Mr. Schrier appear to have been intended to (a) intimidate or coerce the civilian population of the United States, (b) influence the policy of the Qatari and United States governments by intimidation and coercion, and (c) affect the conduct of the Qatari and United States governments by kidnapping. In particular, and among other things, the Nusra Front's kidnapping, torture, and false imprisonment of Mr. Schrier appears to have been intended to (a) intimidate United States civilians who sought to report on the Syrian Civil War, (b) influence the Qatari government's policy of paying ransom for Western hostages and the United States government's policy of refusing to pay ransom to terrorists, and (c) affect the conduct of the Qatari and United States governments by inducing them to pay ransom for Mr. Schrier." (¶ 274) | "Ahrar al-Sham's kidnapping and hostage taking of Mr. Schrier appear to have been intended to (a) intimidate or coerce the civilian population of the United States; (b) influence the policy of the Qatari and United States governments by intimidation and coercion; (c) affect the conduct of the Qatari and United States governments by kidnapping. In particular, Ahrar al-Sham's kidnapping and hostage taking appears to have been intended to (a) intimidate United States civilians who sought to report on the Syrian Civil War, (b) influence the Qatari government's policy of paying ransom for Western hostages and the United States government's policy of refusing to pay ransom to terrorists, and (c) affect the conduct of the Qatari and United States governments by inducing them to pay ransom for Mr. Schrier." (¶ 308) |

Regarding Count II (¶¶ 261-271), Plaintiff's failure to allege these elements is fatal to his claim.

7

Plaintiff's allegations are nothing more than conclusory allegations and formulaic recitals of legal elements. They cannot serve as a basis for liability against QIB. Plaintiff alleges no ultimate facts that would allow this Court to reach the speculative conclusion that there was an act of "international terrorism," as defined by § 2331(1)(B). For example, Plaintiff alleges that "QIB had anti-terrorism funding policies" (Compl. ¶ 197) and therefore "*would have known* of al-Kabi's use of the QIB account to finance the Nusra Front." Compl. ¶ 198 (emphasis added). Plaintiff alleges that "QIB's due diligence policies and the [unspecified] information they yielded provide *circumstantial* evidence that QIB expressly and *tacitly* agreed with al-Kabi to allow him to use the QIB account to fundraise for the Nusra Front." Compl. ¶ 208 (emphasis added). Plaintiff makes similarly equivocal allegations that QIB "knew *or* intended" some of the charitable donation to Qatar Charity would "reach Ahrar al-Sham." Compl. ¶ 264 (emphasis added); Compl. ¶¶ 248, 251, 253, 265 ("knew *or recklessly disregarded*") (emphasis added); Compl. ¶¶ 329, 337, 345, 352, 358, 365 ("knew *or should have known*") (emphasis added). Plaintiff used the phrase "*upon information and belief*" 23 times, indicating he is not confident enough in his allegations to make them directly. This Circuit has rejected allegations "based on information and belief" as "vague and conclusory" and failing "to provide any factual content" to support inferences of liability. *See In re Chiquita Brands Int'l, Inc.*, 792 F. Supp. 2d 1301, 1347 (S.D. Fla. 2011).

Plaintiff further attempts to support his inferences by citing to several reports from *more than a year* after his escape, such as the Department of Treasury's August 2015 designation of al-Kabi as a Specially Designated Global Terrorist, which cannot be imputed to QIB's state of mind in 2012-2013. Comp. ¶¶ 91; 232; 234. Plaintiff's speculations about what QIB knew or intended are insufficient in and of themselves, and they certainly are insufficient to make the leap of logic that QIB intended to achieve the objectives required in 2331(1)(B).

8

Other cases have held that providing financial services and charitable contributions to persons who support a terrorist organization is insufficient to meet the requirements of § 2331(1)(B). In *Linde v. Arab Bank, PLC*, 882 F.3d 314, 326-27 (2d Cir. 2018), the Second Circuit held that "providing financial services to a known terrorist organization" does not invariably equate to an act of international terrorism. *See also, e.g. Strauss v. Crédit Lyonnais, S.A., 379 F. Supp. 3d 148, 160-61 (E.D.N.Y. 2019)* ("Defendant merely provided banking services … which does not satisfy the intent required by § 2331(1)(B)."); *Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 225 (2d Cir. 2019) (Plaintiffs "did not advance any non-conclusory allegation that AQI received any of those funds or that HSBC knew or intended that AQI would receive the funds."). Whether QIB had anti-terrorism funding policies and followed them is a far cry from playing a role in terrorist activities. *Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525, 535 (S.D.N.Y. 2019) ("Even assuming, arguendo, that Defendant knew or should have known prior to the attacks about the Five Customers' relationships with Hizbollah, failure to perform due diligence on clients or adhere to sanctions and counter-terrorism laws do not, on their own, equate to knowingly playing a role in terrorist activities.").

To constitute an act of international terrorism, Plaintiff also must establish that the alleged activities "involve violent acts or acts dangerous to human life…." 18 U.S.C. § 2331(1)(A). In this respect, Plaintiff focuses on the acts of the Nusra Front and Ahrar al-Sham, rather than QIB. The acts allegedly committed by QIB are insufficient to meet this requirement.

> [P]roviding routine financial services to members and associates of terrorist organizations is not so akin to providing a loaded gun to a child as to … compel a finding that as a matter of law, the services were violent or life-endangering acts that appeared intended to intimidate or coerce civilians or to influence or affect governments.

*Linde*, 882 F.3d at 326-27. In *Strauss*, 379 F. Supp. 3d at 159, the court found that donations to "13 Charities [that] were [alleged to be] controlled by Hamas founders, without more, is insufficient to

prove that Defendant's activities were violent or endangered human life.*" Plaintiff's allegations also fail to sufficiently plead the requirements of § 2331(1)(A), and Counts I through VI must be dismissed.

**B.      Plaintiff Failed to Plausibly Allege Primary Liability under the ATA (Counts I and II).**

Plaintiff's first two counts allege primary liability under the ATA pursuant to 18 U.S.C. §§ 2333(a), 2339A, and 2339B for providing "material support" to the Nusra Front and Ahrar al-Sham. In addition to the statutory requirements, "ordinary tort requirements of 'fault, state of mind, causation, and foreseeability must be satisfied' in an ATA action." *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 389 (7th Cir. 2018). Since "the ATA provides for treble damages and cost shifting, a plaintiff must prove intentional misconduct by the defendant." *Id*. at 390.

**1.      Plaintiff failed to sufficiently allege that QIB knowingly provided material support to either the Nusra Front or Ahrar al-Sham.**

Under Count II, Plaintiff is required to allege facts that, if true, would state a claim under § 2339A, which makes it unlawful for a person to provide material support or resources to a foreign terrorist organization, "knowing or intending that they are to be used in preparation for, or in carrying out, a violation of" certain enumerated offenses. This Court has held that:

> Section 2339A requires proof of a heightened *mens rea*. To be liable under 2339A, the defendant must have provided the support or resources acting with knowledge or intent that the support would be used in preparation for, or in carrying out, specific terror-related crimes. Thus, the mental state required under §2339A 'extends both to the support itself, *and* to the underlying purposes for which the support is given,' and an ATA plaintiff proceeding on a 2339A predicate must show evidence of the defendant's specific knowledge of, or intent to further, the specified underlying crime.

*In re Chiquita Brands Int'l, Inc.*, 284 F. Supp. 3d 1284, 1309 (S.D. Fla. 2018).

Plaintiff alleges that QIB provided material support and conspired with Qatar Charity to provide material support to Ahrar al-Sham by giving Qatar Charity 500,000 Qatari riyals. Compl. ¶¶ 262-63. As established in Section III.A., *supra*, Plaintiff failed to allege facts establishing that

10

QIB knew or intended its charitable donation "would reach Ahrar al-Sham and would be used by Ahrar al-Sham" to commit an offense. Compl. ¶ 264. QIB's knowledge is a critical element, without which there would be no liability. Therefore, Count II must be dismissed.

Count I is based on § 2339B, which makes it unlawful for a person to knowingly provide material support or resources to a foreign terrorist organization. "A person must have knowledge that the organization is a designated terrorist organization, that the organization has engaged or engages in terrorist activity, or that the organization has engaged or engages in terrorism," as those terms are defined in § 2339B and other specified statutes. 18 U.S.C. § 2339B.

Plaintiff alleges that QIB provided material support and conspired with al-Kabi to provide material support to the Nusra Front, and that QIB provided material support and conspired with Qatar Charity to provide material support to Ahrar al-Sham, which in turn supported the Nusra Front. Compl. ¶¶ 247, 249. Plaintiff failed to allege any non-conclusory facts that QIB had actual knowledge that either al-Kabi, whom was not designated as a terrorist until August 2015, or Qatar Charity were associated with either the Nusra Front or Ahrar al-Sham. There are also no allegations that QIB directly had any contact with the Nusra Front, let alone knowingly provided the Nusra Front support. Therefore, §2339B cannot be satisfied, and Count I must be dismissed.

### 2. Plaintiff failed to sufficiently allege proximate causation.

Plaintiff has failed to allege facts that QIB proximately caused his injuries, and therefore his claims fail as a matter of law. Recovery under § 2333 is not permitted "on a showing of less than proximate cause." *Rothstein v. UBS AG*, 708 F.3d 82, 95 (2d Cir. 2013). "[T]he fact that there is an intervening cause of the plaintiff's injury may foreclose a finding of proximate cause." *Id.* at 92. To establish "proximate causation, the central question … is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).

This Court had adopted the "substantial factor" test for proximate cause, which places the burden on a plaintiff to show that the defendant's conduct "was a material and 'substantial factor' in bringing about their injuries" and that those injuries were a "reasonably foreseeable consequence of that conduct." *In re Chiquita*, 284 F. Supp. 3d at 1317 (S.D. Fla. 2018).

For Count I, Plaintiff makes the conclusory allegation that his injuries were "proximately caused by QIB's material support of the Nusra Front." Compl. ¶ 259. However, Plaintiff does not allege facts that QIB directly supported the Nusra Front or that QIB's support of the Nusra Front was a material and substantial factor in bringing about his injuries. Instead, Plaintiff alleges that QIB supported al-Kabi by letting al-Kabi use a bank account to funnel money al-Kabi received from third persons to the Nusra Front. Compl. ¶ 247. Plaintiff's allegations that QIB provided financial services to al-Kabi starting in *May 2013* could not have proximately caused his kidnapping in *December 2012*. Thus, the Complaint establishes no direct link between QIB and the Nusra Front, or that Plaintiff's injuries were a reasonably foreseeable consequence.

Additional indirect and speculative links Plaintiff alleges underscore that Plaintiff cannot establish proximate cause. Plaintiff alleges that he was kidnapped on December 31, 2012 (Compl. ¶ 29) and that al-Kabi opened an account at QIB "[n]o later than May 2013." Compl. ¶ 95. Plaintiff further alleges that al-Kabi did not begin soliciting donations for the Madid fundraising campaign until "around May 2013." Compl. ¶ 110. The first alleged tweet connecting al-Kabi to a QIB bank account was on June 2, 2013. Compl. ¶ 123. Plaintiff alleges that he freed himself on July 29, 2013. Compl. ¶ 66. Plaintiff does *not* allege that al-Kabi used his QIB account to transfer funds to the Nusra Front before Plaintiff was kidnapped or freed himself. Plaintiff does *not* allege that the Nusra Front used any such funds. Plaintiff's allegations that QIB provided financial services to al-Kabi starting in *May 2013* could not have proximately caused his kidnapping in *December 2012*.

Courts have voiced concerns with stretching ATA liability too far down the chain of responsible causation. *See Fields v. Twitter, Inc.,* 881 F.3d 739, 749 (9th Cir. 2018) ("[W]e are troubled by the seemingly boundless litigation risks that would be posed by extending the ATA's bounds as far as foreseeability may reach."). Therefore, providing "'routine banking services to organizations and individuals said to be affiliated with' terrorists does not necessarily establish causation." *Linde*, 882 F.3d at 327; *Terrorist Attacks on September 11, 2001,* 714 F.3d at 124 (holding that mere provision of routine banking services to terrorists does not necessarily support causation). Holding QIB liable for a terrorist act merely because it allegedly provided financial services to a single person four months *after* the terrorist act, is precisely the boundless liability that proximate cause is meant to protect against.

Plaintiff's allegations in Counts I and II relating to Qatar Charity are even more convoluted. Plaintiff alleges that QIB supported Qatar Charity "by making a donation to Qatar Charity to support Ahrar al-Sham and the Syrian Islamic Front, which fought alongside and shared resources with the Nusra Front." Compl. ¶¶ 249, 263. These allegations are insufficient to meet proximate causation. *See Terrorist Attacks on Sept. 11, 2001,* 714 F.3d at 124 ("[D]efendants are alleged to have provided funding to purported charity organizations known to support terrorism that, in turn, provided funding to al Qaeda and other terrorist organizations. These allegations are insufficient for proximate causation."). Plaintiff does not allege that QIB participated in his kidnapping or provided money directly to Ahrar al-Sham or the Nusra Front; nor does he allege that the charitable donation to Qatar Charity actually was transferred to Ahrar al-Sham or the Nusra Front or aided in his kidnapping. *See id.* And, again, Plaintiff has a timing problem. The Complaint fails to allege that QIB made its charitable contribution *before* Plaintiff was held captive by Ahrar al-Sham. *See* Compl. ¶¶ 10 (alleging QIB made a 500,000 Qatari riyal donation to Qatar Charity "in 2013"), 35

(alleging Plaintiff was held captive by Ahrar al-Sham from May 5, 2013 to June 20, 2013). Therefore, Plaintiff failed to allege facts that would establish QIB's charitable donation proximately caused his injuries. *See Julin v. Chiquita Brands Int'l, Inc.*, 690 F. Supp. 2d 1296, 1314 (S.D. Fla. 2010) ("[t]o sufficiently allege proximate cause, Plaintiffs must also allege that their payments to [the terrorist organization] occurred prior to, not subsequent to, the kidnappings at issue."). The lack of proximate cause requires dismissal of both Counts I and II.

C.   **Plaintiff Failed to Plead Secondary Liability against QIB under Section 2333(d) (Counts III through VI).**

Counts III through VI, which allege secondary liability under the ATA based on aiding and abetting and conspiracy theories, fail to state a claim under Fed. R. Civ. P. 12(b)(6).[2]   Section 2333(d) provides liability for an action under 2333(a) "for an injury arising from an act of international terrorism committed, planned, or authorized by an organization that had been designated as a foreign terrorist organization … as of the date on which such act was committed, planned, or authorized." Liability may be asserted against any person "who aids and abets, by knowingly providing substantial assistance, or who conspires with the person *who committed* such an act of international terrorism." *Id.* (emphasis added).

> In enacting JASTA, Congress instructed that the 'proper legal framework for how [aiding and abetting] liability should function' under the ATA is the framework identified in *Halberstam*. *Halberstam* set forth three elements for finding aiding and abetting liability in the civil context: (1) the party whom the defendant aids must perform a wrongful act that causes an injury, (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance, and (3) the defendant must knowingly and substantially assist the principal violation.

*Strauss*, 379 F. Supp. 3d at 155-56 (citations omitted).

1.   **Plaintiff failed to allege facts that QIB directly aided and abetted or conspired with the Nusra Front or Ahrar al-Sham.**

---

[2] To be clear, Counts III through VI suffer from the same "proximate cause" defects addressed in Section III.B.2.

Plaintiff's artful drafting in Counts III and IV alleges legal conclusions that Plaintiff aided and abetted and conspired with the Nusra Front. Compl. ¶¶ 26, 278. Plaintiff's factual allegations, however, do not include any alleged direct contact, communications, financial services, donations, or other conduct between QIB and the Nusra Front. Section 2333(d) creates a cause of action against a "person who aids and abets or conspires with the person *who committed* the terrorist act." *Weiss v. Nat'l Westminster Bank PLC*, 278 F. Supp. 3d 636, 650 (E.D.N.Y. 2017). "By the plain language of the statute, §2333(d) does not create liability against a person who aids and abets or conspires with the person who merely authorized (rather than committed) the terrorist act." *Id*. Plaintiff alleges that Nusra Front committed the terrorist act. However, all of Plaintiff's factual allegations allege conduct between QIB and al-Kabi and Qatar Charity, neither of which is alleged to have committed (or even planned or authorized) the acts committed against Plaintiff. By failing to allege any direct acts with Nusra Front, Plaintiff failed to state a claim in Counts III and IV.

Plaintiff makes similar conclusory allegations in Counts V and VI that QIB aided and abetted and conspired with Ahrar al-Sham, the Nusra Front, Qatar Charity, and "others" to support the terrorist acts. Compl. ¶¶ 314, 319, 324. Plaintiff alleges that Ahrar al-Sham committed the terrorist acts. However, all of Plaintiff's factual allegations allege conduct between QIB and al-Kabi and Qatar Charity, neither of which is alleged to have committed the terrorist acts. Therefore, Counts V and VI also fail to state a claim for relief.

**2.    Plaintiff failed to plead facts that QIB knowingly aided and abetted the Nusra Front or Ahrar al-Sham.**

In Counts III and V, Plaintiff alleges that QIB knowingly aided and abetted the Nusra Front and Ahrar al-Sham and "was generally aware of and knew its role in financing" their acts of international terrorism. Compl. ¶¶ 286, 315. This generic allegation is insufficient to state a claim.

15

"Aiding and abetting requires the secondary actor to be aware that, by assisting the principal, it is itself assuming a role in terrorist activities." For a defendant that is a financial institution, this requires a showing that "in providing [financial] services, the bank was generally aware that it was thereby playing a role *in [the terrorist organization's] violent or life-endangering activities*," which "*requires more than the provision of material support* to a designated terrorist organization."

*Strauss*, 379 F. Supp. 3d at 155-56 (internal citations omitted; emphasis added).

As set forth in Section III.A., *supra,* Plaintiff has failed to plead specific facts to support the conclusory allegation that QIB knowingly played a role in terrorist activities. Plaintiff does not even allege that QIB provided financial services to the Nusra Front or Ahrar al-Sham. Nor does Plaintiff allege that QIB had knowledge that it was playing a role in violent or life-endangering activities by providing its banking services. Here, the allegations are even further removed as Plaintiff (1) does not allege that financial services and charitable donations were provided either before he was kidnapped or before he was freed; (2) does not allege that any money actually was provided to the Nusra Front or Ahrar al-Sham before he was freed; (3) does not allege that Ahrar al-Sham was a designated terrorist organization, and (4) alleges that the financial services and charitable donations were provided to two third-party supporters of a terrorist organization—al-Kabi, who was not designated as a terrorist until August 2015 (well after Plaintiff was freed), and Qatar Charity, which Plaintiff has never alleged was designated as a terrorist organization. Therefore, Plaintiff failed to plausibly plead that QIB knowingly aided and abetted the Nusra Front and Ahrar al-Sham to commit acts of international terrorism against him.

**3.      Plaintiff failed to plead facts that QIB conspired with the Nusra Front and Ahrar al-Sham.**

In Counts IV and VI, Plaintiff alleges that QIB conspired with the Nusra Front and Ahrar al-Sham. However, an ATA-based conspiracy claim cannot be used "to hold defendants liable who were not the proximate cause of the plaintiff's injury." *Kemper*, 911 F.3d at 395. Therefore, mere

allegations that a bank provided financial services to a terrorist organization are insufficient to allege an unlawful agreement or conspiracy. *Kaplan*, 405 F. Supp. 3d at 534 (S.D.N.Y. 2019) (providing banking services is insufficient to infer defendant "shared any common goal of committing an act of international terrorism"); *Kemper*, 911 F.3d at 395 (business dealings that incidentally assisted a separate terrorism-related conspiracy do not suggest bank agreed to join that conspiracy). Plaintiff has plead no facts to show QIB's proximity to these organizations, let alone to the acts in question.

## IV.   **THE COURT SHOULD DISMISS THE STATE LAW CLAIMS**

### A.   **Plaintiff's State Law Claims Do Not Exist or Apply to QIB.**

Counts VII–XII of the Complaint allege causes of action based on the theory that, under Florida state law, QIB *aided and abetted* (1) false imprisonment, (2) intentional infliction of emotional distress, (3) battery, and (4) assault (collectively, the "State Law Claims"). Plaintiff has failed to establish that Florida law applies to his claims against QIB. The only relationship to Florida one can glean from the Complaint is that Plaintiff *currently* resides in Florida. Compl. ¶¶ 18 & 22. There is no relationship between Florida and the tortious acts alleged in the Complaint.

Assuming, *arguendo*, that Florida law does apply, no Florida court has ever recognized general civil liability for aiding and abetting, and this Court should decline to do so here. Under Florida law, causes of action are recognized by the decisions of its appellate courts or legislative decree. *United States v. Dempsey*, 635 So. 2d 961, 964 (Fla. 1994); *Gonzalez v. Met-ro. Dade Cnty. Pub. Health Trust*, 626 So. 2d 1030, 1032 (Fla. 3d DCA 1993). No Florida court has expressly affirmed the existence of any of the State Law Claims. *See ZP No. 54 Ltd. P'ship v. Fidelity & Deposit Co. of Maryland*, 917 So.2d 368, 371 (Fla. Dist. Ct. App. 2005) (noting a "dearth of authority" that aiding and abetting constitutes a cause of action); *Freeman v. First Union Nat. Bank*, 865 So.2d 1272, 1274-75 (Fla. 2004). Nor is there any statute establishing these causes of action. Therefore, the State Law Claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**B.**     __The State Law Claims are Barred by the Statute of Limitations.__

Even if this Court were inclined to establish these four new causes of action in Florida, the State Law Claims are barred by the statute of limitations. District courts are empowered to dismiss a claim on statute of limitations grounds if "it is apparent from the face of the complaint that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 846 (11th Cir. 2004).

By default, these State Law Claims are subject to a four-year statute of limitations period because they do not fall within any enumerated category under Florida's statute of limitations. *See* Fla. Stat. § 95.11(3)(p). The statute of limitations begins to run from the time the cause of action accrues, which is when the last element constituting the cause of action occurs. Fla. Stat. § 95.031(a). For aiding-and-abetting claims, the statute of limitations begins to run, and the cause of action accrues, when the underlying tort occurs. *See, e.g., Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*, 748 F.3d 771, 780-81 (11th Cir. 2015).

The Complaint alleges that the intentional torts committed against Plaintiff occurred from December 2012 until July 2013. Compl. ¶¶ 29, 32, 66. Plaintiff's injuries occurred, at the latest, in July 2013. Compl. ¶¶ 32, 66. That is when the four-year statute of limitations began. As such, the statute of limitations expired in July 2017, which was nearly three years before Plaintiff filed his Complaint. The State Law Claims are time barred and should be dismissed.

**C.**     __The State Law Claims Fail to State a Claim for Relief.__

Assuming, *arguendo,* that the claims asserted by Plaintiff were recognized under Florida law, Plaintiff has failed to allege facts sufficient to establish liability. Claims for aiding and abetting generally require the following elements: (1) the existence of an underlying wrong; (2) the defendant's knowledge of that wrong; and (3) the defendant having provided substantial assistance for the commission of that wrong. *Freeman v. JPMorgan Chase Bank, N.A.*, 675 F.

App'x 926, 934-35 (11th Cir. 2017) (breach of fiduciary duty); *Angell v. Allergan Sales, LLC*, 2019 U.S. Dist. Lexis 142768, *25-26 (M.D. Fla. Aug. 22, 2019).

Knowledge of the tortious conduct against the plaintiff is an essential element of aiding and abetting in every context in which it has been acknowledged by a Florida court. *Freeman*, 675 F. App'x at 935 ("[T]o establish that a bank substantially assisted a fraudulent scheme to steal trust funds, knowledge of the underlying fraud 'is the crucial element.'"). This "will only be satisfied if the plaintiff pleads facts demonstrating that the [secondary wrongdoer] had '*actual knowledge*' of the wrongdoings," as opposed to allegations that he "should have known about the underlying wrong." *Angell*, 2019 U.S. Dist. Lexis 142768 at *26, 30. "[A]llegations which demonstrated merely constructive knowledge, recklessness, or gross negligence cannot satisfy the 'knowledge' element of an aiding and abetting claim under Florida law." *Id.* at 28. "Conclusory statements that a defendant *actually knew* are insufficient to support an aiding and abetting claim where the facts only suggest that the defendant *should have known* that something was amiss." *Id.* at *30.

Two decisions from the Eleventh Circuit involving aiding-and-abetting claims against banks are instructive: *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904 (11th Cir. 2012) and *Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988 (11th Cir. 2014). Both cases rely on the principle that "Florida does not require banking institutions to investigate transactions when providing routine banking services." *Angell*, 2019 U.S. Dist. Lexis 142768 at *33. In both cases, financial institutions were accused of aiding and abetting their customers to operate a Ponzi scheme through accounts at the banks. *Lawrence*, 455 F. App'x at 905; *Perlman*, 559 F. App'x at 989. The complaints alleged that the primary wrongdoers engaged in numerous suspicious and atypical transactions. *Lawrence*, 455 F. App'x at 907; *Perlman*, 559 F. App'x at 993. In *Lawrence*, the plaintiff even alleged that specific bank employees regularly reviewed and approved these

suspicious transactions, and received a pecuniary benefit from approving these transactions. *See Angell*, 2019 U.S. Dist. Lexis 142768 at \*35-36 (quoting complaint). However, the Eleventh Circuit found that, at most, these allegations could "arouse suspicions" or show only that the bank "should have known" of the Ponzi scheme—but were not enough to state a claim for aiding and abetting. *Lawrence*, 455 F. App'x at 907; *Perlman*, 559 F. App'x at 993.

As set forth in Section III.A., *supra*, the Complaint in this case is devoid of specific factual allegations that demonstrate QIB had actual knowledge of the underlying torts committed against Plaintiff. Therefore, because the State Law Claims fail to allege that QIB had actual knowledge of the underlying torts committed against Plaintiff, the Court should dismiss them.

**D.     This Court Should Abstain From Exercising Supplemental Jurisdiction Over the State Law Claims.**

Because this Court's subject matter jurisdiction has been invoked pursuant to original question jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. §2338, the basis for adjudicating the State Law Claims is by virtue of this Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367. Pursuant to 28 U.S.C. § 1367(c)(3), a court may decline to exercise supplemental jurisdiction when the court dismisses "all claims over which it has original jurisdiction." As Plaintiff has failed to state any claim under the ATA, which is Plaintiff's sole basis for asserting subject matter jurisdiction (Compl. ¶ 20), the Court should decline to exercise supplemental jurisdiction.

The Court should also decline to exercise supplemental jurisdiction because the State Law Claims raise novel and complex issues of Florida state law. *See* 28 U.S.C. § 1367(c)(1). Because the State Law Claims are unrecognized under Florida law, this Court should decline supplemental jurisdiction. *See also Borges v. City of W. Palm Beach*, 858 F. Supp. 174, 177 (S.D. Fla. 1993).

## CONCLUSION

For all of these reasons, Defendant respectfully requests that the Court grant its motion to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(5) and 12(b)(6).

Dated: February 14, 2020

Respectfully submitted,

Squire Patton Boggs (US) LLP
*Attorneys for Defendant*
200 South Biscayne Boulevard, Suite 4700
Miami, Florida 33131
Telephone:    +1 305 577 7000
Facsimile:    +1 305 577 7001
E-mail:        jonathan.weiss@squirepb.com


By: */s/ Jonathan R. Weiss*
T. Michael Guiffre (DC Bar No. 465745)
(*pro hac vice application pending*)
Jonathan R. Weiss (FBN 057904)
Alexander A Salinas (FBN 123682)


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 14, 2020, a true and correct copy of the foregoing was served via transmission of Notices of Electronic Filing generated by CM/ECF on all counsel or parties of record.

*/s/Jonathan R. Weiss*
Jonathan R. Weiss