IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 0:20-cv-60075-RKA

MATTHEW SCHRIER,

    Plaintiff,

v.

QATAR ISLAMIC BANK,

    Defendant.

**REPLY IN SUPPORT OF MOTION TO COMPEL**

QIB's response offers no reason to excuse it from discovery. This Court should grant the motion to compel so this case may proceed according to the court-ordered schedule, Doc. 39.

**I.      QIB may not unilaterally stay discovery.**

Without acknowledging that QIB was already denied a stay of discovery, QIB's response knocks down a jurisdictional straw man. Doc. 53 at 2–3. It is beyond dispute that a court cannot bind a party without jurisdiction. But the Court does not lack jurisdiction over QIB, nor has it so held. Rather, QIB's objection rests on its unilateral assertion that the Court lacks jurisdiction. *Id.* "[QIB's] belief that [Schrier's] claims ultimately will fail due to the reasons raised in the Motion to Dismiss does not, at this stage of the proceeding, prohibit discovery on those issues or the merits of the case." *Monks v. Diamond Resorts Int'l, Inc.*, No. 17-14307-CIV, 2018 WL 4208330, at *2 (S.D. Fla. May 11, 2018) (rejecting motion to stay discovery despite motion to dismiss for lack of jurisdiction and failure to state a claim). It "has never been the rule" that a motion to dismiss automatically stays discovery, and there is no reason to change course. *Psf Trust 2006-2 v. Ne. Capital Funding, LLC*, No. 08-80470, 2008 WL 11333495, at *2 (S.D. Fla. Oct. 27, 2008).

No principle requires courts to decide motions to dismiss before motions to compel, as QIB asserts. Doc. 53 at 2–3. Other courts have compelled discovery prior to deciding a motion to dismiss. *E.g.*, *Chase Bank USA, N.A. v. NAES, Inc.*, No. 2:07-cv-975, 2010 WL 2161786 (D. Nev. May 4, 2010); *see also RL BB Fin., LLC v. Robinette*, No. 3:11-cv-49, 2013 WL 11521681 (E.D. Tenn. Mar. 26, 2013) (granting motion to compel despite pending 12(b)(6) motion).

**II.     This Court should apply the Federal Rules of Civil Procedure, not Qatari law.**

QIB's response to Schrier's application of the comity factors lacks merit. For ease, Schrier's bullets correspond to the bullets in QIB's response.

- QIB does not challenge Schrier's showing that the information he seeks is critical. Doc.

1

52 at 4. Instead, QIB falls back on the same faulty assumption that its motion to dismiss excuses it from discovery. Doc. 53 at 3. Again, it has no support for that argument besides its own unilateral assertion. QIB's citation to *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997), is misplaced. "The *Chudasama* Court . . . did not establish a bright-line rule that in any federal case, a motion to dismiss will stay any and all proceedings pending a ruling on the motion." *Psf Trust*, 2008 WL 11333495, at *2. Instead, *Chudasama* "require[es] courts to assess the burdens of discovery . . . and the validity of [the] claims." *Id.* The Court did that here and concluded discovery should proceed.

- QIB is wrong to say Schrier's requests are not narrowly tailored. Schrier's requests are limited to the individuals, entities and accounts named in the complaint as terrorism financiers. They seek evidence of the nature of QIB's relationship with its clients, the nature and extent of services provided, the collection or distribution of funds used to support terrorism, and QIB's knowledge of its clients' terrorist connections. *See Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 44 (E.D.N.Y. 2007) (requests seeking such information were narrowly tailored). Seeking information about accounts rather than transactions does not make the requests overbroad. QIB's authority recognizes that complex money-laundering cases like this one call for discovery on "numerous accounts." *Madanes v. Madanes*, 186 F.R.D. 279, 287 (S.D.N.Y. 1999). The timeframe is no obstacle, either. QIB proposed alternative timeframes, Doc. 53-1 at 6–7, and the parties can negotiate a resolution once this Court reaffirms QIB's duty to participate in discovery.

- Schrier cannot obtain the information he seeks from any source other than QIB. Subpoenaed third parties do not have QIB's records of the transactions QIB facilitated in support of Syrian terrorist groups, let alone internal communications, due diligence

records, or information about violations of QIB's anti-terrorism financing policies. *E.g.*, Doc. 52-1 at 7, 10; Doc. 52-2 at 10, 15. Nor, for that matter, would QIB's customers. *Cf.* Doc. 53 at 5. Further, unlike QIB, QIB's customers are not bound to participate in discovery in this action. Third-party discovery or some hypothetical means of obtaining information from QIB's customers is no substitute for the requests Schrier served on QIB.

- QIB suggests for the first time that Schrier should conduct discovery through "letters rogatory" or "another method." Doc. 53 at 5; *see* Doc. 53-1 (no mention of letters rogatory). "[T]he letters rogatory process" is not easy, it's "complicated, dilatory, and expensive." *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1273 (11th Cir. 2015) (quotation omitted). If QIB intended to demand Schrier to pursue alternative means of discovery, the time to raise that issue was months ago, not now, with the discovery clock running out. Doc. 39 at 2 (setting close of discovery in October 2020). Resort to letters rogatory would "be inconsistent with the overriding interest in the 'just, speedy, and inexpensive' determination of litigation in our courts." *Société Nationale Industrielle Aerospatiale v. U.S. Dist. Ct.*, 482 U.S. 522, 543 (1987) (quoting Fed. R. Civ. P. 1). The Supreme Court has held that courts need not require litigants to resort to alternatives to the Federal Rules. *Id.* And Schrier should not have to in the circumstances of this case.

- QIB criticizes Schrier's balancing of the U.S. and Qatari interests, but it offers nothing in response beyond vague invocations of "foreign relations interests," the "confidentiality of personal financial information," and, once more, the lack of jurisdiction. Doc. 53 at 5. The jurisdictional point has no weight. Qatar undisputedly has an interest in confidentiality, but it also has an interest in combatting terrorism financing. *See* Doc. 52 at 4–5. The record reveals that Qatar might well prioritize the latter interest over the former in this case,

3

as the next bullet discusses. Indeed, the U.S. and Qatar recently signed an agreement to combat terror financing.[1] As for "foreign relations interests," QIB has not identified one specific interest that would weigh against compliance with discovery. Given the U.S.'s paramount interest in combatting terrorism, *see Weiss*, 242 F.R.D. at 45, and Congress's intent to give Americans harmed by terrorism a remedy in U.S. courts, 18 U.S.C. § 2333, the balance of interests tips in favor of applying the Federal Rules of Civil Procedure.

- The record does not support QIB's claim that the Qatari government will prosecute it for compliance with a lawful U.S. court order requiring disclosure of the financial records of supporters of terrorism—including Saad bin Saad al-Kabi, a Specially Designated Global Terrorist, Doc. 1, ¶ 91. Neither of its experts argue that an enforcement action is *likely* on the facts of this case. Doc. 53-3 at 11; Doc. 53-4 at 10. QIB's representations to the U.S. Treasury further belie the likelihood of enforcement. QIB *agreed* to disclose records to the U.S. Treasury by maintaining a Patriot Act agent in the U.S. *See* Doc. 1, ¶ 19; 31 U.S.C. § 5318. Yet Patriot Act compliance is impermissible under QIB's interpretation of Qatari law. QIB's lone example of an enforcement action in Qatar has nothing to do with a bank complying with a U.S. court order. And QIB has asked the Qatari Central Bank for permission to disclose the documents, despite the absence of any "central-bank-permission" exception to Qatari law—demonstrating that QIB's position is a thinly veiled effort to stonewall legitimate discovery requests. Doc. 53-9. Why bother asking if Qatari law is so clear? In short, "the bank has failed to demonstrate that" the Qatari government "would likely seek to sanction the bank for complying with a United States court order compelling disclosure of documents and information." *Weiss*, 242 F.R.D. at 55. To the

---

[1] *See* https://www.reuters.com/article/us-gulf-qatar-usa-mou-idUSKBN19W1JX.

extent that QIB is concerned about keeping Mr. al-Kabi's financial records secret, it can avail itself of the protective order's procedures—a fact it acknowledges. Doc. 49; Doc. 53-9 at 6. The sheer possibility of an inconsistency with Qatari law doesn't trump the Anti-Terrorism Act or this Court's authority to issue discovery orders to the parties before it.

- So far as Schrier knows, the documents he seeks originated in Qatar and remain there. This factor concededly weighs in QIB's favor. Doc. 53 at 5–6. But the location of the documents is not dispositive when, as here, the other factors weigh in favor of applying the Federal Rules of Civil Procedure. Several courts have ordered discovery in Anti-Terrorism Act cases "notwithstanding competing foreign legal obligations" or the location of the documents. *Linde v. Arab Bank PLC*, 706 F.3d 92, 114 (2d Cir. 2013); *see Weiss*, 242 F.R.D. at 42, 58 (requiring production of U.K. documents in an Anti-Terrorism Act case).

Given the denial of a stay and that the comity factors weigh in favor of the Rules of Civil Procedure, there is no need to defer a ruling compelling QIB to participate in discovery. Doc. 53 at 5–6. Waiting would prejudice Schrier. Discovery closes in October 2020.[2] Doc. 39 at 2. The longer QIB delays discovery, the less time Schrier has to obtain information relevant to his claims. Nor is QIB's June 21 letter to Qatar Central Bank, Doc. 53-9, a reason to wait. QIB has had Schrier's discovery request since March 20, 2020. Doc. 52-1; Doc. 52-2. QIB surely knew months ago—and certainly no later than May 2020—that the requests could implicate its obligations under Qatari law. *Id.* Yet it waited until after the parties conferred about QIB's objections even to ask permission. Doc. 53-9. This delaying tactic should not receive the Court's sanction.

For all these reasons, the Court should grant Schrier's motion to compel without delay.

---

[2] The close of discovery is the relevant date for measuring prejudice, not, as QIB suggests, the date of Schrier's escape. Doc. 53 at 3 n.2. Further, Schrier did not "delay" for seven years. He brought suit promptly once he discovered QIB's involvement.

Respectfully submitted this 2nd day of July, 2020.

/s/ *John H. Rains IV*
John H. Rains IV
Georgia Bar No. 556052, Florida Bar No. 56859
Kamal Ghali
Georgia Bar No. 805055 (admitted *pro hac vice*)
Matthew R. Sellers
Georgia Bar No. 691202 (admitted *pro hac vice*)
rains@bmelaw.com
ghali@bmelaw.com
sellers@bmelaw.com
**BONDURANT, MIXSON & ELMORE, LLP**
1201 West Peachtree Street, N.W., Suite 3900
Atlanta, Georgia 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

G. Scott Hulsey
District of Columbia Bar No. 449040 (admitted *pro hac vice*)
Carrie A. Tendler
New York Bar No. 4400842 (admitted *pro hac vice*)
scott.hulsey@kobrekim.com
carrie.tendler@kobrekim.com
**KOBRE & KIM**
1919 M Street, N.W.
Washington, DC 20036
Telephone: (202) 664-1904
Facsimile: (202) 664 1920

Kevin T. Carroll
District of Columbia Bar No. 1020479
New York Bar No. 4075339 (admitted *pro hac vice*)
kcarroll@wiggin.com
**WIGGIN AND DANA LLP**
800 17th Street, N.W., Suite 520
Washington, DC 20006
Telephone: (202) 800-2475
Facsimile: (212) 551-2888

***Attorneys for Plaintiff Matthew Schrier***

## CERTIFICATE OF SERVICE

I hereby certify that I have filed a true and correct copy of the foregoing **REPLY IN SUPPORT OF MOTION TO COMPEL** using the CM/ECF filing system which will cause copies to be served on counsel of record.

This 2nd day of July, 2020.

*/s/ John H. Rains IV*
John H. Rains IV
Georgia Bar No. 556052
Florida Bar No. 56859