UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60075-CIV-ALTMAN/HUNT

MATTHEW SCHRIER,

    *Plaintiff*,

v.

QATAR ISLAMIC BANK,

    *Defendant*.

_____/

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

I.  **Plaintiff Cannot Seek Discovery under His New Theories for Personal Jurisdiction**

Plaintiff concedes that he is no longer seeking jurisdictional discovery based on the Anti-Terrorism Act ("**ATA**"), 18 U.S.C. § 2333(a), and invokes new theories that the Court has jurisdiction under the Florida long-arm statute or Federal Rule of Civil Procedure 4(k)(2). ECF No. 108 at 8-9. To seek discovery of QIB's *nationwide* contacts, the Court must find that Plaintiff has made a *prima facie* case of jurisdiction under Rule 4(k)(2), which he has not done.[1] Likewise, Plaintiff failed to make a *prima facie* case of jurisdiction under the Florida long-arm statute.[2] Therefore, there is no jurisdictional basis for Plaintiff to seek discovery, much less discovery of QIB's nationwide contacts.[3]

II. **Plaintiff's Motion is Premature Because He Has Not Effected Service of Process**

Plaintiff has not effected service of process because he did not comply with the Magistrate Judge's Order to "re-attempt" service as he did before (i.e., FedEx through the Clerk). ECF No. 97 at 8. Absent service, the Court may not compel QIB to respond to jurisdictional discovery. *See Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987); *Sample v. Miles*, 239 F. App'x. 14, 18 (5th Cir. 2007) ("it would be unfathomable to allow discovery on people not yet served").

QIB's Pending Motion addresses Plaintiff's failure to effect service in greater detail. ECF Nos. 102 at 4-5; 109 at 8-9. QIB also filed *Objections to the Magistrate Judge's Order on Plaintiff's Motion for*

---

[1] QIB's pending *Motion for Definitive Ruling on Service of Process and the Commencement of Jurisdictional Discovery* ("**QIB's Pending Motion**") establishes that Plaintiff cannot seek jurisdictional discovery under either the Florida long-arm statute or Federal Rule of Civil Procedure 4(k)(2) because he failed to allege sufficient facts to make out a *prima facie* case of jurisdiction. ECF No. 109 at 1-6. The facts Plaintiff *does* allege also establish that Rule 4(k)(2) is inapplicable because the allegations all concern QIB's alleged contact with the single state of New York. *Id.* at 4-5.

[2] Plaintiff states QIB "objected that discovery should be limited to its Florida contacts." Mot. 1. QIB objected to *all* discovery based on Plaintiff's new jurisdictional theories. ECF No. 109 at 1-6.

[3] It is illogical that Plaintiff claims QIB failed to object to discovery under Rule 4(k)(2) in its November 19, 2020 discovery objections when he never sought discovery under Rule 4(k)(2) until, at the earliest, April 16, 2021. *See* ECF No. 108; ECF No. 38 at 4 (Plaintiff relied solely on the ATA to oppose dismissal for lack of personal jurisdiction over QIB). QIB consistently has objected to all forms of discovery based on the Court's lack of personal jurisdiction. Based on these objections, the Court granted QIB's motion to dismiss and denied Plaintiff's first motion to compel. ECF Nos. 74. The Court also ruled that QIB's objections to personal jurisdiction are tolled until after Plaintiff files his Second Amended Complaint. Hr'g Tr. (Sept. 29, 2020), at 24:6-25:10; ECF No. 74. Moreover, as set forth below, discovery has not even commenced, and Plaintiff's discovery requests are unenforceable. Nevertheless, QIB served objections to Plaintiff's discovery requests in an abundance of caution and objected to all discovery because the Court lacks personal jurisdiction over QIB. *See* ECF Nos. 112-1, Reservation of Rights No. 1 and QIB's response to every interrogatory, and 112-2, Reservation of Rights No. 1 and QIB's response to every document request.

*Alternative Service*, which is pending before the Court. ECF Nos. 101, 107. These filings raise threshold issues that are necessary to address before QIB has any obligation to respond to discovery requests.

### III.   Jurisdictional Discovery Has Not Yet Commenced Even if Plaintiff Effected Service

The Court ordered that "[t]he deadline to complete jurisdictional discovery shall be 90 days *from the date this Court determines service to have been properly effected*." ECF No. 86 (emphasis added). Whether service has been properly effected is the subject of QIB's Pending Motion, and Plaintiff has asked the Court to rule on service in response to that motion. ECF No. 108 at 3. Therefore, the 90-day period has not yet commenced, and Plaintiff's motion is premature.[4]

### IV.   Plaintiff's Timeframe for Jurisdictional Discovery is Overbroad

Plaintiff seeks jurisdictional discovery for the period from December 23, 2011 through August 5, 2015, even though Plaintiff alleges he was kidnapped on December 31, 2012 and escaped captivity on July 29, 2013. ECF No. 76., at ¶ 32. Requesting discovery a full year before Plaintiff was kidnapped and two years after he escaped is patently overbroad and seeks information that is irrelevant to whether this Court may exercise personal jurisdiction over QIB. Plaintiff may not use jurisdictional discovery to conduct "fishing expeditions" or otherwise seek facts that would ultimately not support a showing of personal jurisdiction. *See, e.g., Wolf v. Celebrity Cruises, Inc.,* 683 F. App'x 786, 792 (11th Cir. 2017).

Since Plaintiff alleges QIB engaged in conduct *leading* to his captivity and confinement—which QIB denies—his requests for financial transactions *after* his detention ended on July 29, 2013 are not relevant to whether this Court may exercise personal jurisdiction. The Court essentially already concluded this when it granted QIB's Motion to Dismiss the original Complaint and stated that, for personal jurisdiction, the relevant period for any monetary transactions "shouldn't just be the timing of the kidnapping, that it should be the timing and entire duration of the detention itself." Hr'g Tr. (Sept. 29, 2020), at 9:22-24; *see also* Hr'g Tr. (Aug. 12, 2020), at 52:20-23 (the Court noted Plaintiff did not show that money from New York went to the QIB account "and then was in the hands of these terrorists *before* July 29th, 2013") (emphasis added). Therefore, Plaintiff's discovery requests for

---

[4] QIB also was not required to respond to Plaintiff's discovery requests because they were served before Plaintiff effected service of process. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 347 (1999) ("one becomes a party officially, and is required to take action in that capacity, only upon service of a summons"); *Howard v. Heffron*, 118 F.R.D. 590 (W.D. Mich. 1988) (discovery requests made before a complaint and summons are served are unenforceable); *Dollander v. Nicholson*, 2006 WL 8436184, at *1 (S.D. Ga. Oct. 3, 2006) (same); *Jones v. Newby*, 2013 WL 960777, at *1 (E.D. Va. Mar. 12, 2013) (same).; *Sample*, 239 F. App'x. at 18 (deemed admissions excluded from evidence where discovery request was served after filing complaint but before effecting service of process).

financial transactions and other information after July 29, 2013 are overbroad and seek information that is not relevant to personal jurisdiction over QIB.

Plaintiff argues that the Court should order a discovery end date of August 5, 2015 because that is the date that Treasury designated *Saad al-Kabi* a terrorist supporter. Mot. 2. But Plaintiff did not explain the relevance of the *designation date* to whether the Court may exercise personal jurisdiction over *QIB*. Further, Plaintiff's speculative suggestion (Mot. 3) that an extended two-year fishing expedition could reveal a "pattern of financial misconduct" is not based on any facts against QIB that Plaintiff actually alleges. The Supreme Court recently reconfirmed that a "plaintiff's claims must arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). This "does not mean anything goes," as Plaintiff suggests, and "the phrase 'relate to' incorporates real limits." *Id. Ford* did *not* consider, much less hold, that forum contacts *after* the events relating to a plaintiff's claims may support the exercise of personal jurisdiction. Even without considering a "causal" connection to Plaintiff's claims (*id.* at 1026), it is entirely speculative that transactions for two years after Plaintiff's alleged detention "relate to" that detention.

The discovery timeframe also should be no earlier than October 31, 2012, two months before Plaintiff's alleged kidnapping. Plaintiff seeks to extend discovery a full year prior by arguing that December 23, 2011 was the date of the first Nusra Front attack. Mot. 2. Plaintiff submitted no evidence to establish this date, and he failed to explain how any such attack relates to his claims or to the Court's exercise of personal jurisdiction over QIB. In contrast, Plaintiff's jurisdictional allegations speculate about U.S. correspondent account transactions involving the Madid campaign, which Plaintiff alleges commenced "around May 2013." ECF No. 76 at ¶¶ 112, 196-97, 202-204. If anything, Plaintiff's allegations reflect that the jurisdictional discovery period should commence in May 2013.

It is evident Plaintiff seeks expansive discovery because he learned through third-party subpoenas that there are *no* U.S. transactions in the months before or during his captivity that would support exercising jurisdiction over QIB. Plaintiff speculates that a broader timeframe will give him an opportunity to discover whether "[p]ost-escape transactions are part of the pattern of financial misconduct" or whether "al-Kabi fronted money to the Nusra Front and paid himself back using donations routed through the U.S." Mot. 3. This is the epitome of merits discovery and a completely inappropriate and speculative allegation. Jurisdictional discovery is limited to ascertaining the truth of the Plaintiff's factual allegations supporting jurisdiction, and Plaintiff makes no such allegations of a pattern of conduct or of al-Kabi reimbursing himself through donations in his amended complaint. *See Auf v. Howard Univ.*, 2020 U.S. Dist. LEXIS 53226, at *30 (S.D. Fla. Mar. 25, 2020) ("[T]he purpose

of jurisdictional discovery is to ascertain the truth of the allegations or facts underlying the assertion of personal jurisdiction. It is *not* a vehicle for a 'fishing expedition' in hopes that discovery will sustain the exercise of personal jurisdiction.") (emphasis in original). The Court should reject Plaintiff's arbitrary and expansive timeframe and limit any jurisdictional discovery to the period from October 31, 2012 through July 29, 2013.[5]

### V.   Jurisdictional Discovery of QIB's *Foreign* Contacts is Improper

There is no possible justification for Plaintiff to obtain far-flung merits-based discovery of QIB's activities *outside* the United States to "explore" the scope of a thinly-alleged conspiracy. Mot. 4. This Court held that to establish personal jurisdiction under a conspiracy theory, Plaintiff must show that "the acts of the *coconspirators* were in furtherance of this particular conspiracy and that those acts took place *in the United States*." Hr'g Tr. (Sept. 29, 2020), at 12:11-16 (emphasis added); *see* ECF No. 38 at 8 (Plaintiff acknowledging personal jurisdiction would be based on the "co-conspirator's in-forum acts"). The cases cited by Plaintiff confirm that the pertinent inquiry is the alleged co-conspirator's in-forum acts. Mot. 4, citing, *e.g., Elandia Int'l, Inc. v. Ah Koy,* 690 F. Supp. 2d 1317, 1330 (S.D. Fla. 2010) (plaintiff must "successfully allege[ ] that any member of a conspiracy committed tortious acts *in Florida* in furtherance of the conspiracy") (emphasis added). Therefore, QIB's contacts outside the U.S. are irrelevant and not the proper subject of jurisdictional discovery.

### VI.  QIB's Objections to Request Nos. 6 through 9 Should be Sustained

QIB objected to Request Nos. 7, 8 and 9 based on Plaintiff's use of the terms "Nusra Front" and "Ahrar al-Sham" and specifically explained why these terms are ambiguous. It is not possible for QIB to investigate every single transaction and determine whether the person or entity who received

---

[5] Plaintiff also seeks discovery after July 29, 2013 by suggesting that the purposeful availment analysis is divorced from the suit-related contacts analysis. Mot. 3. It is not. Plaintiff has acknowledged that the Court may not exercise general jurisdiction over QIB, instead arguing for the exercise of specific jurisdiction. ECF No. 38 at 5. Rule 4(k)(2)'s specific jurisdiction analysis is threefold: (1) QIB "must have contacts related to or giving rise to the plaintiff's cause of action"; (2) QIB must, "*through those contacts*, have purposefully availed itself of forum benefits," and (3) QIB's "contacts with the forum must be such that it could reasonably anticipate being haled into court there." *Fraser v. Smith,* 594 F. 3d 842, 850 (11th Cir. 2010) (emphasis added); *see also BristolMyers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S.Ct. 1773, 1781 (2017) ("When there is no such connection [between the forum and the underlying controversy], specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985) (Courts must determine that the defendant "has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to *those activities*.") (emphasis added); *Atchley v. AstraZeneca UK,* 474 F. Supp. 3d 194, 206 (D.D.C. 2020) (finding no purposeful availment where there was no "relevant suit-related conduct" in the forum).

funds was a member the Nusra Front or Ahrar al-Sham. The fact that Plaintiff cannot provide a list of members of the Nusra Front and Ahrar al-Sham underscores how ambiguous his requests are and how burdensome it would be to attempt to identify such members and any responsive documents. Similarly, Request No. 6 seeks transactions that flowed to the "Madid campaign." It is not possible for QIB to investigate every single transaction to determine whether it was part of a fundraising campaign. Furthermore, Plaintiff is seeking broad merits discovery rather than jurisdictional discovery tailored to his allegations. Plaintiff only alleges that QIB provided financial services to Saad bin Saad al-Kabi and Qatar Charity. ECF No. 76 at ¶ 4. General discovery about financial services QIB may have provided to any other person far exceeds the limited scope of jurisdictional discovery and constitutes a classic fishing expedition. Plaintiff failed to address QIB's other objections. *See* ECF No. 112-2 at 13-17. Therefore, the Court should deny the motion to compel responses to these Requests.

**VII.   Plaintiff's Patriot Act Requests Solely Relate to Service the Court Ruled was Improper**

Plaintiff admits that he seeks Patriot Act agent documents to determine whether he properly served QIB. Mot. 5. This exceeds the scope of jurisdictional discovery concerning a defendant's forum contacts, and the Court has already ruled that Plaintiff's service on QIB's Patriot Act agent was "improper for a number of reasons." Hr'g Tr. (Sept. 29, 2020), at 5:10-11.

**VIII.   Plaintiff Failed to Address All of QIB's Objections to Individual Requests**

QIB asserted numerous objections to each interrogatory and document request. Plaintiff failed to address each of these objections and, as a result, concedes their validity. To be clear, QIB reasserts its objections to all discovery requests, including objections Plaintiff failed to address. Therefore, notwithstanding any ruling on Plaintiff's arguments, the Court should not compel discovery responses.

**IX.   It is Premature to Address Qatar Law Restrictions on Disclosure**

Plaintiff contends that QIB cannot object to discovery based on Qatar law. As briefed with respect to Plaintiff's first Motion to Compel, which was denied (ECF No. 74), Qatar law prohibits QIB from disclosing the confidential information of its customers without their consent, and violations carry criminal penalties. *See* ECF No. 53 at 2-5. Plaintiff does not disagree. Therefore, QIB is bound to raise this objection and requests the Court undertake a thorough comity analysis.[6] *See id.*

---

[6] Plaintiff cites the Court's ruling that QIB may not rely on Qatar law to object to discovery. Mot. 1. However, the Court's ruling did not compel QIB to respond to any particular discovery request and actually denied Plaintiff's motion to compel. ECF No. 74. Accordingly, the Court's prior ruling would not enable QIB to avoid criminal penalties for disclosing confidential customer information. It was incumbent on QIB to object to requests that would require it to violate Qatar law.

**Request for Hearing**

If the Court proceeds with jurisdictional discovery based on QIB's Pending Motion, which it should not, QIB requests that the Magistrate Judge convene a hearing to address the scope of discovery to enable QIB to seek its customers' consent to disclose information. Obtaining customers' consent to disclosure would enable QIB to respond to any discovery obligations without violating Qatar law. *See* Order, ECF No. 97 at 5 (recognizing that "courts should try to minimize offenses to foreign law").

**Request for Attorney's Fees**

QIB requests an award of attorney's fees incurred to respond to Plaintiff's premature and frivolous motion pursuant to Federal Rule of Civil Procedure 37(a)(5)(B).

Dated: May 7, 2021               Respectfully submitted,

*/s/ Shawn C. Layman*
Shawn C. Layman (FBN 48112)
   slayman@crowell.com
T. Michael Guiffre (DC Bar No. 465745)
   (pro hac vice)
   mguiffre@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 654-6704
Facsimile: (202) 628-5116

*Attorneys for Defendant Qatar Islamic Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2021, a true and correct copy of a true and correct copy of the foregoing was served via transmission of Notices of Electronic Filing generated by CM/ECF on all counsel or parties of record.

*/s/ Shawn C. Layman*
Shawn C. Layman (FBN 48112)
