IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 0:20-cv-60075-RKA

MATTHEW SCHRIER,

    Plaintiff,

v.

QATAR ISLAMIC BANK,

    Defendant.

**REPLY IN SUPPORT OF MOTION TO COMPEL JURISDICTIONAL DISCOVERY**

I. **Nationwide jurisdictional discovery is proper.**

QIB's conclusory assertion that Schrier did not make a *prima facie* case for personal jurisdiction lacks merit. Ruling on QIB's Motion to Dismiss, the Court found that near-identical allegations of QIB's nationwide contacts made a *prima facie* case of jurisdiction under the Anti-Terrorism Act (ATA). *See* Doc. 75 at 18; *compare* Doc. 1 at ¶¶ 184–194, *with* Doc. 76 at ¶¶ 190–205. Rule 4(k)(2) authorizes jurisdiction based on nationwide contacts, just the same as the ATA. *See Oldfield v. Pueblo de Bahia Loria, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009). QIB offers no reason why discovery would be narrower under Rule 4(k)(2) than the ATA. It also refuses to identify a forum where it is subject to suit, thus authorizing the Court to rely on Rule 4(k)(2). *See Oldfield*, 558 F.3d at 1219 n.22. Nationwide discovery is appropriate.

II. **The motion to compel is not premature.**

The Court should reject both QIB's arguments that the Motion is premature. First, Schrier properly served QIB, as set out in response to the Motion for Definitive Ruling on Service. *See* Doc. 108. The service objection is best resolved in a ruling on that motion. Second, if discovery has not begun, the Court may defer ruling on the Motion to Compel until a ruling on service. Deferral would cure any prematurity problem. Had Schrier put off the Motion to Compel, by contrast, it would simply have prolonged the case. QIB lodged its objections last November, and multiple conferrals have not moved the parties' positions. These objections are ripe for review.[1]

III. **Schrier's proposed discovery timeframe is appropriate.**

QIB's July 29, 2013 discovery cutoff rests on a view of personal jurisdiction the Supreme Court just rejected in *Ford Motor Co. v. Montana Eighth Judicial Circuit*, 141 S. Ct. 1017 (2021).

---

[1] The parties stipulated under Local Rule 26.1(a) to extend the deadline to move to compel to allow proceedings on service, including Schrier's Motion for Alternative Service.

1

QIB insists that only pre-escape transactions are relevant because only those transactions could have caused Schrier's injury. *Ford* held that personal jurisdiction does not require causation. *Id.* at 1026. The Madid campaign, one of the ways QIB's services supported terrorism, continued through *late 2014*, when the Qatari government shut it down for financing the Syrian extremists that kidnapped and tortured Schrier. Doc. 76 at ¶ 184. Supporting the Madid campaign is one of the acts Schrier calls QIB to account for in this Court. *Id.* at ¶¶ 266–80, 302–08. QIB supported the campaign for more than a year after Schrier's escape. This is not "speculative," as QIB says. CNN reported on it in June 2014. *Id.* at ¶ 189. QIB's continued support of the very campaign that funded Schrier's captors creates a sufficient relationship for jurisdiction. Ending on the State Department's designation date for Saad al-Kabi makes sense because QIB is unlikely to have continued providing him services afterward. Before then, however, Schrier simply has no way of knowing what QIB provided—or whether al-Kabi (for example) reimbursed himself. Supporters of terrorism do not typically make their bank records public. Schrier's discovery period will capture QIB's support of the same terrorists that injured Schrier and thus establish jurisdiction.[2]

As for the start date, QIB does not dispute that services it provided up to two years before Schrier's kidnapping could be a proximate cause of Schrier's injury—in other words, that it could be held *liable* for them. *See Boim v. Holy Land Found.*, 549 F.3d 685, 700 (7th Cir. 2008) (en banc). Yet it arbitrarily argues for a jurisdictional discovery start date of October 31, 2012, just two months before Schrier was kidnapped. Schrier's proposed start—the date of the Nusra Front's

---

[2] These records will also bear on the purposeful availment inquiry which, contra QIB, is one of "three *distinct* components" of specific jurisdiction. *Adelson v. Hananel*, 652 F.3d 75, 80 (1st Cir. 2011) (emphasis added). Courts have thus allowed discovery into purposeful availment distinct from relatedness. *See Sonneveldt v. Mazda Motor of Am., Inc.*, No. 8:19-cv-1298, 2020 WL 9312379, at *7 & n.5 (C.D. Cal. April 22, 2020) (ordering discovery into whether a parent-subsidiary relationship constituted purposeful availment and reserving ruling on "whether Plaintiffs' claims are sufficiently related to those contacts").

2

first attack—makes perfect sense.³  The Nusra Front needed money to operate.  All Nusra Front donations after December 23, 2011 supported the group's terrorism due to the fungibility of money.  *See id.*  These donations could support liability and thus could support jurisdiction.  Public sources make clear that al-Kabi, the primary mover behind the Madid campaign, supported the Nusra Front *at least* since 2012.  Doc. 76 at ¶ 91.  Qatar Charity likewise supported the Nusra Front beginning sometime before December 2012, *id.* at ¶¶ 238–241, and its Syrian relief coordinator worked with al-Kabi to support the Nusra Front, *id.* at ¶ 248.

QIB does not dispute that a broader period for discovery of communications is appropriate, nor could it.  Communications by their nature may not occur at the same time as a transaction.  The Court should thus compel a broader period for communications as requested.

QIB wrongly insinuates that third-party discovery showed no transactions to support jurisdiction.  To the contrary, those records *confirm* that QIB completed relevant transactions before and after Schrier's captivity.  *See also* Doc. 76 at ¶¶ 203, 260.  The records are subject to a protective order (and are not relevant to this Motion), but Schrier will gladly discuss them under seal if the Court wants more information.  Suffice it to say that QIB seeks a narrower timeframe only to obstruct access to evidence that it financed terror and is subject to this Court's jurisdiction.

**IV.    Discovery into QIB's participation in a conspiracy is proper.**

QIB misapprehends the point of Schrier's requests for information about its foreign acts and makes inapposite arguments as a result.  Schrier already alleged in-forum acts of QIB's co-conspirators: (1) conversion of Schrier's credit cards and bank accounts, including purchases from this district, Doc. 76 at ¶¶ 56–60, and (2) torturing Schrier to induce the U.S. government to pay a

---

³ Contra QIB, Schrier alleged that Nusra Front attacks began in December 2011.  Doc. 76 at ¶ 24.  The Stanford Mapping Militants Project dates the first attack to December 23, 2011.  Available at https://cisac.fsi.stanford.edu/mappingmilitants/profiles/hayat-tahrir-al-sham.

ransom, *id.* at ¶¶ 45–54.[4]  The Court found no evidence that QIB engaged in "this particular conspiracy."  Doc. 75 at 12.  But the Court said that "QIB and the terrorists" may have "conspired generally with respect to other objections of the conspiracy."  *Id.*  The pertinent question is the scope of the conspiracy, and Schrier may discover facts on this subject.  QIB may have information showing that it was part of the conspiracy that included the co-conspirators' forum contacts, which would establish jurisdiction.

### V. QIB's objection to Requests 6 through 9 is a straw man.

Schrier never asked QIB to generate lists of Nusra Front members or investigate every transaction ever.  Schrier's expectation is a reasonable search of QIB's own records.  QIB admits it has records reflecting knowledge of which of its customers and services supported the Nusra Front.  Doc. 112-2 at 2–3.  Since Schrier does not ask QIB to undertake the burden it feigns, it should have no problem with the reasonable search Schrier proposes.  Nor do these requests relate purely to the merits.  The correspondent account transactions sought by Requests 6 to 8 could support jurisdiction, just as could correspondent account transactions involving Saad al-Kabi and Qatar Charity.  The same holds true for communications about such transactions.  This evidence overlaps with the merits, to be sure, but "[t]he distinction between jurisdictional and merits issues is not inevitably sharp, for the two inquiries may overlap."  *Perry v. Merit Sys. Prot. Bd.*, 137 S. Ct. 1975, 1986 (2017).  The Court should compel responses to Requests 6 through 9.

### VI. QIB must respond to Request Nos. 16 and 17.

Evidence of service on QIB through its agent Global Payments Advisory Group (GPAG) is discoverable.  QIB makes that much clear in arguing that nationwide discovery is inappropriate.  If Schrier effectively served QIB under the ATA through GPAG, then the objection to nationwide

---

[4] Supporting terrorism aimed at "caus[ing] pain and sow[ing] terror in" the U.S. creates jurisdiction because the conduct causes U.S. effects.  *Mwani v. bin Laden*, 417 F.3d 1, 13 (D.C. Cir. 2005).

4

discovery is moot. That the Court previously rejected service on GPAG makes no difference. "Failure to prove service does not affect the validity of service." Fed. R. Civ. P. 4(*l*). The Court rejected Schrier's service on GPAG based on its finding Schrier did not prove GPAG was QIB's agent for service. Doc. 75 at 5–8. But that raises a fact issue, as the scope of agency often does. *See, e.g.*, *S. Fla. Coastal Elec., Inc. v. Treasures on Bay II Condo Ass'n*, 89 So.3d 264, 267 (Fla. 3d DCA 2012). Evidence in QIB's possession could give the Court reason to revisit its holding.

**VII.    Discovery is appropriate notwithstanding QIB's other objections.**

QIB's remaining objections, which it does not identify, are not grounds for refusing to produce documents. QIB gave its constructions of Schrier's definitions, and it must produce documents that fit those constructions. QIB represents that all responsive information is available in QIB's current IT environment. Doc. 112-2 at 11. If true, Schrier does not expect QIB to resurrect old systems. QIB refuses to translate documents, but Schrier instructed QIB to *search* in English and Arabic, not to translate anything. QIB also makes improper boilerplate objections. *E.g.*, Doc. 112-2 at 4 (QIB's objection 9). None of this should stand in the way of discovery.

**VIII.    QIB offers no reason its Qatar law objection should not be overruled.**

The Court already "undert[ook] [the] thorough comity analysis" that QIB requests. *Id.* The Court balanced "the factors that ha[ve] been laid out by the United States Supreme Court on foreign discovery" and found that the U.S. and Qatari interests in fighting terrorism outweighed the "very remote" possibility of criminal or civil exposure in Qatar. Doc. 75 at 18. QIB offers no reason the comity analysis should come out differently this time. The Court should adhere to its prior ruling. QIB also offers no reason it violated the Court's order. It has the "burden of proving foreign law," but it offers no support for its bare assertion that Qatar law required it to object a second time. *Baker v. Booz Allen Hamilton, Inc.*, 358 F. App'x 476, 481 (4th Cir. 2009).

Respectfully submitted this 12th day of May, 2021.

/s/ John H. Rains IV
John H. Rains IV
Georgia Bar No. 556052, Florida Bar No. 56859
Kamal Ghali
Georgia Bar No. 805055 (admitted *pro hac vice*)
Matthew R. Sellers
Georgia Bar No. 691202 (admitted *pro hac vice*)
rains@bmelaw.com
ghali@bmelaw.com
sellers@bmelaw.com
**BONDURANT, MIXSON & ELMORE, LLP**
1201 West Peachtree Street, N.W., Suite 3900
Atlanta, Georgia 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

G. Scott Hulsey
District of Columbia Bar No. 449040 (admitted *pro hac vice*)
Carrie A. Tendler
New York Bar No. 4400842 (admitted *pro hac vice*)
scott.hulsey@kobrekim.com
carrie.tendler@kobrekim.com
**KOBRE & KIM**
1919 M Street, N.W.
Washington, DC 20036
Telephone: (202) 664-1904
Facsimile: (202) 664 1920

Kevin T. Carroll
District of Columbia Bar No. 1020479
New York Bar No. 4075339 (admitted *pro hac vice*)
kcarroll@wiggin.com
**WIGGIN AND DANA LLP**
800 17th Street, N.W., Suite 520
Washington, DC 20006
Telephone: (202) 800-2475
Facsimile: (212) 551-2888

*Attorneys for Plaintiff Matthew Schrier*

## CERTIFICATE OF SERVICE

I hereby certify that I have filed a true and correct copy of the foregoing **REPLY IN SUPPORT OF MOTION TO COMPEL JURISDICTIONAL DISCOVERY** using the CM/ECF filing system which will cause copies to be served on counsel of record.

This 12th day of May, 2021.

                                                 */s/ John H. Rains IV*
                                                 John H. Rains IV
                                                 Georgia Bar No. 556052
                                                 Florida Bar No. 56859