**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

Case No. 0:20-cv-60075-RKA

MATTHEW SCHRIER,

    Plaintiff,

v.

QATAR ISLAMIC BANK,

    Defendant.

**REPLY IN SUPPORT OF MOTION TO COMPEL JURISDICTIONAL DISCOVERY**

**ARGUMENT**

    **I.**    **Schrier's motion is timely or, if not, the Court should nonetheless consider it.**

Local Rule 26.1(g) sets a 30-day deadline for motions to compel from the date of discovery responses *or* the date "a party first learned or should have learned of a purported deficiency." The parties' conferrals put the trigger date on August 3, 2021, when QIB rejected Schrier's proposal to resolve this dispute. *See* Doc. 123-5. Schrier timely moved on August 16. Regardless, Schrier's motion to compel is timely as to the Third Jurisdictional Discovery Requests, which QIB answered on July 16. Doc. 123-3. (Sunday, August 15 did not count by operation of Rule 6(a)(1)(B).)

Even if untimely, the Court should rule on the merits. Local Rule 26.1(g) "is permissive and affords the Court discretion in whether to consider a late-filed motion." *Sandalwood Estates Homeowner Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 09-cv-80787, 2010 WL 411088, at *2 (S.D. Fla. Jan. 29, 2010). QIB has not asserted any prejudice, and it consented to an extension. *See* Doc. 124. The lack of prejudice is cause to consider the merits. *See Sandalwood*, 2010 WL 411088, at *2. Schrier attempted in good faith to resolve the dispute without court intervention, as required by the Rules. *See* Fed. R. Civ. P. 37(a)(1); Doc. 40 at 4. "[T]he lack of bad faith" is another reason to consider the motion. *Betancourt v. Mangual's Gen. Servs., Inc.*, No. 15-cv-24961, 2017 WL 2985172, at *4 (S.D. Fla. July 13, 2017). Further, this Court excuses *de minimis* delay. *Chen v. Cayman Arts, Inc.*, No. 10-cv-80236, 2011 WL 2491009, at *2 (S.D. Fla. June 22, 2011). At most, Schrier was seven days late on the Second Jurisdictional Discovery Requests, Doc. 123-2, not months late as in the case QIB cites. Finally, the Court should not accept the argument that the motion was too close to the discovery deadline. "Neither the Federal Rules of Civil Procedure nor this District's Local Rules expressly prohibit the filing of a motion to compel after the discovery deadline." *Chen*, 2011 WL 2491009, at *3.

1

## II. Schrier's proposed time period is appropriate.

QIB offers no answer to Schrier's authority that transactions two years prior to a terrorist attack can support jurisdiction. *See* Doc. 123 at 2 (citing authority). As that authority explains, money can support terrorist violence long after the donation. *See Boim v. Holy Land Found.*, 549 F.3d 685, 689 (7th Cir. 2008). The Court should order discovery beginning September 1, 2012.

The Court should order discovery ending November 1, 2013. QIB concedes that some post-tort events could support jurisdiction. It does not object to discovery up to September 30, 2013—two months after Schrier escaped. *See* Doc. 123-2 at 4; Doc. 126 at 3. QIB's arguments against a month and a day more of discovery, until November 1, 2013, do not stand up when viewed against that concession. QIB claims Schrier must limit himself to discovery "that gave rise to or relate[s] to *his* alleged injuries," Doc. 126 at 3, but a transaction three months later relates to Schrier's injuries as surely as does a transaction two months later. Both would relate to Schrier's claims as a continuation of the pattern of misconduct—providing financial services to supporters of terrorism—that gave rise to Schrier's claims. If this relationship is sufficient to support jurisdiction two months later, the same holds true for three months later (or more, for that matter). The phrase "relate to" has a "broad" meaning, after all. *See Morales v. Trans World Airlines*, 504 U.S. 374, 384 (1992). And Congress intended broadly to give victims of terrorism a remedy against entities "wherever acting and wherever they may be found, that have provided material support" to terrorists. Justice Against Sponsors of Terrorism Act, Pub. L. 114-222, § 2(b) (2016).

QIB's attempt to distinguish *Ford* confirms that QIB is simply urging the Court to adopt the causation rule *Ford* rejected. QIB makes much of what it calls Schrier's "concession" that post-escape transactions "could not have caused his detention." Doc. 126 at 4. But *Ford* definitively held that causation is not required for personal jurisdiction. *Ford Motor Co. v. Mont. Eighth Jud.*

*Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). And *Ford did* consider post-tort forum contacts, such as Ford dealerships available to service cars and the ongoing distribution of replacement parts into the forum. *Id.* at 1028. To limit discovery to transactions that caused Schrier's injuries, as QIB proposes, would improperly reinstate a rule requiring causation for jurisdiction.

Nor should the Court distinguish *Ford* as a "stream of commerce case," as QIB does. Doc. 126 at 3–4 n.6. The "stream of commerce" theory "merely observes that a defendant may in an appropriate case be subject to jurisdiction without entering the forum . . . as where manufacturers or distributors seek to serve a given State's market." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011) (plurality). But "that statement does not amend the general rule of personal jurisdiction." *Id.* The inquiry in *Ford* as here remains whether a defendant purposefully availed itself of the forum by conducting activities and whether those contacts relate to the action. *See id.*

That test is met by the discovery sought. To analogize to *Ford*, QIB provided a product, financial services, that offered access to the U.S. financial system. QIB's customers used that same product, its financial services, to finance Syrian terrorism, including the groups that kidnapped and tortured Schrier. Evidence that QIB continued offering this product—and access to the U.S. financial system—to the individuals and entities that funded Schrier's captors even after Schrier's escape would "relate to" the subject matter of Schrier's claims.

Finally, Schrier knows from third-party discovery of transactions that post-date September 30, 2013, and Schrier intends to submit them to the Court. Also, QIB already collected documents from the period sought. The best course is to compel production and allow full consideration of QIB's contacts on the merits, not in the abstract in the abbreviated motion-to-compel format.

### III. The Court should compel QIB to produce responsive stored email.

At the outset, QIB's unrelated scope objections are no reason to forego restoration of QIB's

emails. QIB objected to Requests 5–9 and 14 *only* to the extent they sought communications outside a certain period or unrelated to U.S. correspondent accounts. Doc. 123-2 at 13–19; Doc. 123-3 at 7–9. The flip side is that QIB does *not* object to producing communications within a certain period or related to U.S. correspondent accounts. Under this Court's order, "[i]f there is an objection based upon an unduly broad scope, . . . discovery should be provided as to those matters within the scope that is not disputed." Doc. 40 at 2. QIB must produce documents within the unobjected scope if the Court orders it to restore backup tapes. And the Court should do so.

QIB overstates the inaccessibility of the backup tapes by including the cost of review. The proper focus of the analysis is "cost or burden . . . associated with some technological feature that inhibits accessibility," not the cost of reviewing documents. *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 301 (S.D. N.Y. 2012); *see also id.* ("[T]he sheer volume of data may make its production expensive, but that alone does not" make the data inaccessible). E-discovery always requires some document review or data storage, yet "the presumption is that the responding party must bear the expense of complying with discovery requests." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978). The Court should focus on the data restoration cost alone and otherwise follow the presumption that QIB bears the burden of responding to discovery. According to QIB, the fixed restoration cost is approximately $100,000—a fraction of the $612,000 high-end estimate QIB gives. Doc. 126 at 5; Doc. 126-1 at ¶¶ 12–13. QIB does not argue the data is inaccessible at that cost, and from this proper reference point the Court should conclude that it is not.

Even if the Court deems the data not reasonably accessible, it should still order QIB to restore and produce emails. Contra QIB, Schrier did state what he expects to find in these emails: evidence that transactions related to Syrian terrorism. This evidence would not necessarily appear in transaction records themselves. Third-party discovery yielded emails that discussed QIB

4

correspondent transactions, their purpose, and other information about them that did not appear in a transaction record. An internal QIB email revealing that a particular transaction supported Syrian terrorism would show that QIB's correspondent accounts were used to benefit the groups that kidnapped and tortured Schrier. These emails would supplement transaction records and could support jurisdiction.

QIB further contends that these emails would represent merits discovery, but it never explains the distinction. An email that links a correspondent transaction to Syrian terrorism may well support Schrier's merits claims, but it would support jurisdiction, too, as evidence that QIB conducted activities in the U.S. related to Schrier's claims. Jurisdiction does not turn simply on whether a transaction occurred (though that is relevant). It turns, to quote QIB, on "*whether* there was a transaction *that relates to Plaintiff's claim*." Doc. 126 at 5 (second emphasis added). Email could reveal that a transaction relates to Schrier's claim and thus would bear on jurisdiction.

The potential delay should not dissuade the Court from ordering email restored, either. This is the first QIB has raised the potential delay. In past discovery responses, QIB represented that emails would be available "from other sources in QIB's IT environment." *E.g.*, Doc. 87-2 at 11–13. Schrier had no reason to believe he needed to ask for six months of jurisdictional discovery to obtain emails until QIB's response to the motion to compel. The newfound delay should not bar Schrier from obtaining appropriate discovery to support jurisdiction. As for QIB's claim that emails are infrequent or rare, QIB never squares that assertion with the claim that it would have to review 108,000 potentially responsive documents if ordered to restore email. Both cannot be true. For these reasons, the Court should order restoration of email to search for responsive documents.

## CONCLUSION

Schrier respectfully requests the Court grant the motion to compel in full.

Respectfully submitted this 26th day of August, 2021.

                                              */s/ John H. Rains IV*
John H. Rains IV
Georgia Bar No. 556052, Florida Bar No. 56859
Kamal Ghali
Georgia Bar No. 805055 (admitted *pro hac vice*)
Matthew R. Sellers
Georgia Bar No. 691202 (admitted *pro hac vice*)
rains@bmelaw.com
ghali@bmelaw.com
sellers@bmelaw.com
**BONDURANT, MIXSON & ELMORE, LLP**
1201 West Peachtree Street, N.W., Suite 3900
Atlanta, Georgia 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

G. Scott Hulsey
District of Columbia Bar No. 449040 (admitted *pro hac vice*)
Carrie A. Tendler
New York Bar No. 4400842 (admitted *pro hac vice*)
scott.hulsey@kobrekim.com
carrie.tendler@kobrekim.com
**KOBRE & KIM**
1919 M Street, N.W.
Washington, DC 20036
Telephone: (202) 664-1904
Facsimile: (202) 664 1920

Kevin T. Carroll
District of Columbia Bar No. 1020479
New York Bar No. 4075339 (admitted *pro hac vice*)
kcarroll@wiggin.com
**WIGGIN AND DANA LLP**
800 17th Street, N.W., Suite 520
Washington, DC 20006
Telephone: (202) 800-2475
Facsimile: (212) 551-2888

***Attorneys for Plaintiff Matthew Schrier***

## CERTIFICATE OF SERVICE

I hereby certify that I have filed a true and correct copy of the foregoing **REPLY IN SUPPORT OF MOTION TO COMPEL JURISDICTIONAL DISCOVERY** using the CM/ECF filing system which will cause copies to be served on counsel of record.

This 26th day of August, 2021.

*/s/ John H. Rains IV*
John H. Rains IV
Georgia Bar No. 556052
Florida Bar No. 56859