**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-60075-CIV-ALTMAN/HUNT**

**MATTHEW SCHRIER,**

       *Plaintiff*,

v.

**QATAR ISLAMIC BANK,**

       *Defendant.*

_____/

## <u>DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND<br>MOTION TO COMPEL JURISDICTIONAL DISCOVERY</u>

## I.     Plaintiff Seeks to Compel Discovery Concerning QIB's Foreign Contacts

Plaintiff moves to compel production in response to Request No. 15, which seeks "documents related to all donations [QIB] made to Qatar Charity earmarked for Syria between January 1, 2012 and December 31, 2013, whether or not such donations involved [QIB's] U.S. correspondent accounts." ECF No. 130-1 at 5 (the "Motion"). QIB *agreed* to produce "any documents reflecting any donation earmarked for Syria that QIB made to Qatar Charity during the period from October 31, 2012 through September 30, 2013 to the extent that any such donation was made using a U.S. correspondent account maintained by QIB." *Id.* at 7. Therefore, Plaintiff's Motion asks this Court to order production of documents concerning (i) any foreign donations that were *not* made using a U.S. correspondent account; and (ii) any donations between January 1 and October 30, 2012, and between September 30 and December 31, 2013. The Court should deny Plaintiff's Motion because it seeks merits-based discovery that exceeds the scope of the limited jurisdictional discovery ordered by the Court.

## II.     Plaintiff's Motion is Untimely

Plaintiff's Motion to compel a response to Request No. 15, which was served on July 22, 2021, is an attempt to disregard this Court's requirement that any motion to compel "shall be filed within thirty (30) days" of the discovery response pursuant to Local Rule 26.1(g). General Order (ECF No. 40), at ¶ II.D. Plaintiff sought the same discovery concerning Qatar Charity donations in Request No. 4, which was served on June 9, 2021, and Plaintiff filed an untimely motion to compel a response to that request. *See* ECF No. 123, Ex. A, Req. No. 4; ECF No. 126 at 1.[1] The Court should not permit Plaintiff to circumvent the Court's orders and rules by serving a second discovery request seeking the same documents in order to file a timely motion to compel.[2]

## III.    Plaintiff Failed to Establish that the Discovery He Seeks is Relevant for Personal Jurisdiction based on a Co-Conspirator's Acts in the Relevant Forum

Plaintiff's Motion is a thinly-veiled attempt to seek impermissible merits discovery. The proper inquiry at this stage is whether QIB had sufficient contacts with the United States to support the exercise of personal jurisdiction. QIB has agreed to produce records of any donation to Qatar Charity that was transferred through a U.S. correspondent account. Discovery regarding any donation to a

---

[1] The Court's orders and guidance reflect the Court's intention that the parties engage in an efficient period of limited jurisdictional discovery. ECF No. 74 at 2 (granting Plaintiff 60 days to conduct jurisdictional discovery); *see also* Hr'g Tr. (Sept. 29, 2020) at 18:4-7; Hr'g Tr. (May 27, 2021) at 28:14-19; 29:13-16. Plaintiff's delays and attempts to circumvent the Court's local rules, orders, and guidance frustrate this intention.

[2] The only difference between Request Nos. 4 and 15 is that Request No. 15 expands the time period of the request. At a minimum, the Court should not permit any discovery to the extent that Request No. 15 is duplicative of Request No. 4.

foreign charity that did *not* go through a U.S. correspondent account is irrelevant to whether this Court may exercise personal jurisdiction over QIB, and the Court should deny Plaintiff's Motion.

Plaintiff seeks to compel discovery based on the amorphous assertion that any foreign donation to Qatar Charity that was *not* transferred through a U.S. correspondent account "could establish conspiracy jurisdiction." Mot. at 2. However, the cases on which Plaintiff relies establish that any such donation would *not* support jurisdiction under either the Florida long-arm statute or Rule 4(k)(2) based on any alleged tort committed by an alleged co-conspirator in the relevant forum.[3]

First, Plaintiff cites *eLandia*, in which the court held that under the Florida long-arm statute, "[i]f an individual successfully alleges that any member of a conspiracy committed tortious acts *in Florida in furtherance of the conspiracy*, then all of the conspirators are subject to personal jurisdiction in Florida." *eLandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1330 (2010) (emphasis added).[4] Plaintiff has not alleged, and cannot allege, that a co-conspirator committed a tort in Florida. At most, Plaintiff alleges the Nusra Front used Plaintiff's credit card to buy sunglasses and window washer fluid from online vendors in Florida. Am. Compl. ¶ 58. However, these are not tortious acts in furtherance of the alleged "conspiracy." Rather, Plaintiff alleges QIB conspired "to commit acts of international terrorism in Syria," not to commit identity theft or conversion. Am. Compl. ¶ 15; *see* Hr'g Tr. (Sept. 29, 2020) at 11:20-12:17; Hr'g Tr. (Aug. 12, 2020) at 47:11-19; Hr'g Tr. (May 27, 2021) at 26:22-27:8 ("the allegations of contacts with Florida are unrelated to QIB"). Plaintiff also alleges that any donation to Qatar Charity was made "as part of a conspiracy to enable *Ahrar al-Sham's* terrorist activities in Syria," not the Nusra Front's purchases in Florida. Am. Compl. ¶ 14 (emphasis added). Thus, any discovery about foreign donations to Qatar Charity earmarked for Syria is irrelevant to Plaintiff's theory that QIB is subject to personal jurisdiction under the Florida long-arm statute based on the allegations that the Nusra Front bought sunglasses and window washer fluid in Florida.[5]

Next, Plaintiff relies on *Mwani* to argue that a conspiracy to commit a tort "that has U.S.-targeted effects creates jurisdiction, no matter where the tort occurs." Mot. at 2 (quoting *Mwani v. Bin*

---

[3] Plaintiff claims the Court has personal jurisdiction over QIB pursuant to the Florida long-arm statute or Fed. R. Civ. P. 4(k)(2). *See* ECF No. 108, at 8-9.

[4] To establish conspiracy jurisdiction over a non-resident defendant under the Florida long-arm statute, three prongs must be met: (1) jurisdiction can be asserted over a "resident" defendant with sufficient ties to Florida; (2) the plaintiff can demonstrate the existence of a conspiracy in which the non-resident defendant and the resident defendant participated; and (3) an overt act *in furtherance of the conspiracy* took place *within the state*. *Quail Cruises Ship Mgmt., Ltd. v. Agencia de Viagens CVC Tur Limitada*, No. 09-23248-CIV, 2011 WL 5057203, at *4 (S.D. Fla. Oct. 24, 2011) (emphasis added).

[5] Plaintiff also relies on *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 86 (2d Cir. 2018), but this case examined whether defendants were subject to jurisdiction under California's long-arm statute based on a co-conspirator's tortious acts in that forum.

*Laden*, 417 F.3d 1, 13 (D.C. Cir. 2005)).[6] In *Mwani*, the court did *not* consider or hold that personal jurisdiction can be based on a co-conspirator's tortious acts. Instead, the court held that Osama bin Laden and al Qaeda were subject to personal jurisdiction under Rule 4(k)(2) because they *directly* engaged in activities subjecting them to personal jurisdiction, including "with overt acts occurring within this country's borders." *Id.*; *see In re Terrorist Attacks on September 11, 2001* ("*Terrorist Attacks I*"), 392 F. Supp. 2d 539, 558 n.5 (S.D.N.Y. 2005) (citing *Mwani* to conclude that a defendant's "personal or direct participation in the conduct giving rise to Plaintiff's injuries" is required to subject him to personal jurisdiction); *Ofisi v. Al Shamal Islamic Bank*, No. 15-2010 (JDB), 2019 WL 1255096, at *6 (D.D.C. Mar. 19, 2019) (same). *No court* "has permitted the assertion of conspiracy jurisdiction under Rule 4(k)(2)." *Rudersdal v. Harris*, No. 18-CV-11072 (GHW) (RWL), 2021 WL 2209042, at *16 (S.D.N.Y. Feb. 27, 2021); *Ofisi*, 2019 WL 1255096, at *5 n.8.[7] Therefore, Plaintiff's request for discovery to support a conspiracy theory that is not cognizable under Rule 4(k)(2) should be denied.[8]

## IV.    Plaintiff *Again* Seeks Documents for an Excessively Broad Time Period

Plaintiff again seeks to compel jurisdictional discovery for an expanded time period because the discovery produced by QIB and third parties has confirmed that QIB did not have sufficient U.S. contacts during the relevant time period identified by the Court to justify the Court's exercise of personal jurisdiction. Plaintiff now goes a step further, seeking to compel not only discovery of non-forum contacts but also discovery during a time period beyond that which he seeks to compel in his prior, still-pending motion.[9] ECF No. 123. Both aspects of Plaintiff's request far exceed the limited scope permitted for jurisdictional discovery.

---

[6] Plaintiff's claim is superficial and incorrect. Plaintiff cited a section of *Mwani* that addressed whether the exercise of federal jurisdiction was consistent with the Constitution. *See Mwani*, 417 F.3d at 13. It did not create "standalone" federal jurisdiction or relieve Plaintiff of the obligation to identify and satisfy a statutory basis for exercising jurisdiction. *Id.* at 8.

[7] Plaintiff also relies on *Morris v. Khadr*, 415 F. Supp. 2d 1323 (D. Utah 2006). Like *Mwani*, this case did not consider whether jurisdiction under Rule 4(k)(2) can be based on the acts of a co-conspirator, and the defendant was a primary participant in the terrorist acts. *See In re Terrorist Attacks on September 11, 2001* ("*Terrorist Attacks II*"), 538 F.3d 71, 93-94 (2d Cir. 2008), *abrogated on other grounds* (explaining defendants in *Mwani* and *Khadr* were primary participants in terrorist acts).

[8] No matter how Plaintiff may try to justify his discovery request, any donation QIB made to Qatar Charity would not support personal jurisdiction under Rule 4(k)(2). In *Terrorist Attacks I*, the court held that donating funds to a charity, even if they may have been diverted to support al Qaeda, "cannot be considered primary participation" subjecting a defendant to personal jurisdiction. 392 F. Supp. 2d at 559; *see also Terrorist Attacks II*, 538 F.3d at 94 (plaintiffs' allegations that defendants "intended to fund al Qaeda through their donations to Muslim charities" was insufficient to establish jurisdiction); *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 676 (2d Cir. 2013) ("plaintiffs' allegations that Jameel donated money to various purported al Qaeda fronts, even if true, are not a sufficient basis for us to exercise specific personal jurisdiction over him"); *Atchley v. AstraZeneca UK Ltd.*, 474 F. Supp. 3d 194, 203 (D.D.C. 2020) (allegation that "foreign defendants 'knowingly financed terrorist attacks that targeted' Americans" was insufficient for jurisdiction).

[9] In his August 16, 2021 motion to compel, Plaintiff seeks to compel production of documents concerning any donations made to Qatar Charity earmarked for Syria from September 1, 2012 to November 1, 2013, a period that already departs from the Court's guidance. ECF No. 123 at 1 and Ex. A, Req. No. 4. In the present Motion, Plaintiff seeks to further

Contrary to Plaintiff's assertion, QIB has not conceded that post-tort transactions would support jurisdiction. Unlike Plaintiff, QIB has respected and abided by the Court's determination that the relevant period for jurisdictional discovery is "the period of detention," but Plaintiff may be entitled to discovery "a couple of months before and maybe to a couple months after" his alleged detention. Hr'g Tr. (May 27, 2021), at 29:4-9. QIB maintains that this time period is more than sufficient to determine whether the Court may exercise personal jurisdiction over QIB. Plaintiff has again failed to demonstrate why the Court's prior guidance and instructions concerning the relevant time period were incorrect, nor has Plaintiff established that either forum or non-forum contacts during these expanded periods would be sufficient to support the exercise of personal jurisdiction.[10]

Plaintiff offers no explanation as to how an alleged donation to Qatar Charity months *after* his escape could have contributed to his alleged kidnapping or detention, or otherwise would be relevant to the question of jurisdiction.[11] Plaintiff also mischaracterizes a statement in *Koch* that a conspirator can face responsibility for the actions of co-conspirators "with respect to actions that took place before a conspirator joined" to mean that a defendant can be held liable even if he was not a member of the conspiracy before those injuries were sustained. *Koch v. Royal WineMerchants, Ltd.*, 907 F. Supp. 2d 1332, 1346 (S.D. Fla. 2012) (quotation omitted). In *Koch*, the court merely recognized that a person can be liable for conspiracy if he enters into an agreement "*to do* an unlawful act or *to do* a lawful act by unlawful means," there is "an overt act *in pursuance* of the conspiracy," and the plaintiff is damaged "*as a result of* the acts done under the conspiracy."[12] *Id.* at 1346 (quotation omitted) (emphasis added). The court held that the plaintiff had sufficiently alleged a claim for civil conspiracy, which the plaintiff alleged against all defendants,[13] but still dismissed all claims against two of the defendants for lack of

---

expand the period for donations to the period from January 1, 2012 to December 31, 2013. Plaintiff failed to explain his change of position concerning the relevant time period for Qatar Charity donations. In reality, Plaintiff now seeks a broader time period for Qatar Charity donations because his prior document request did not yield any responsive documents. Plaintiff's desperation to find any hook for jurisdictional discovery does not justify this fishing expedition.

[10] Plaintiff misapplies other decisions in his improper efforts to revisit this Court's clear instructions. For example, *Averbach* assessed jurisdiction under the New York long-arm statute, which Plaintiff has not invoked as a basis for jurisdiction here. *See Averbach v. Cairo Amman Bank*, No. 19-cv-0004, 2020 WL 486860, at *5 (S.D.N.Y. Jan. 21, 2020). Similarly misapplied, *Boim* contemplates causation within the context of liability, not personal jurisdiction. *Boim v. Holy Land Foun.* 549 F.3d 685, 700 (7th Cir. 2008) (en banc). Both decisions considered the defendants' activities *in* the United States.

[11] In *Mwani*, for example, the court stated that it would not consider acts that took place *after* the attack at issue for purposes of evaluating personal jurisdiction. *See Mwani*, 417 F.3d at 13. Similarly, the court in *Morris* stated that the relevant inquiry is the defendant's conduct *before* the plaintiff incurred his injuries. *Morris v. Khadr*, 415 F. Supp. 2d at 1336 ("To establish jurisdiction over a terrorist, Plaintiffs must make a prima facie showing of each Defendant's personal or direct participation in the *conduct giving rise to* Plaintiffs' injuries.") (emphasis in original) (internal quotations omitted).

[12] The plaintiff alleged that the defendants all conspired before he suffered his injuries, and the authorities cited by the court do not provide that a person joining a conspiracy *after* the plaintiff suffered his injury is liable for such injury. *Koch*, 907 F. Supp. 2d at 1346–47.

[13] *See Koch*, No. 9:11-cv-81197-DTKH (S.D. Fla., Jul. 9, 2012), ECF No. 45, at 93 (Second Amended Complaint).

personal jurisdiction. *Id.* at 1339, 1346-47. The court did not find there was conspiracy jurisdiction against these defendants, and certainly not conspiracy jurisdiction based on post-tort transactions.

Plaintiff again misapplies *Ford* to argue he should get discovery of post-escape transactions because "some relationships will support jurisdiction without a causal showing." Mot. at 3 (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021)). Plaintiff argues he "need not show that any donation 'caused' Schrier's claims," essentially conceding that any donation to Qatar Charity after his detention could not have caused his injuries. *Id. Ford*, however, reconfirmed that a "plaintiff's claims must arise out of or relate to the defendant's contacts with the forum." *Id.* This "does not mean anything goes," as Plaintiff suggests, and "the phrase 'relates to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id. Ford* distinctly considered jurisdiction "[w]hen a company like Ford serves a market for a product in a State and that product causes injury in the State to one of its residents."[14] 141 S. Ct. at 1022. *Ford* did *not* consider, much less hold, that *non-forum* or forum contacts *after* the events relating to a plaintiff's claims may support the exercise of personal jurisdiction. Plaintiff's "causal showing" argument is not a license to conduct a fishing expedition.[15] Regardless of the timeframe applied to jurisdictional discovery, Plaintiff has failed to establish that discovery of any foreign charitable donation to Qatar Charity, particularly one after Plaintiff suffered alleged injuries, is relevant to whether Plaintiff is subject to personal jurisdiction in the United States based on the alleged acts of the Nusra Front or even Ahrar al-Sham.

## V.   QIB Should Not Be Required to Restore Archived Electronic Data

QIB objects to Plaintiff's request to require QIB to restore and produce archived email responsive to Request No. 15 and incorporates its objections and supporting evidence in opposition to Plaintiff's other pending motion to compel. *See* ECF No. 126 at 4-5 and attached declarations.[16]

---

[14] In this regard, causation *was* a critical element of the jurisdictional inquiry, as the product caused the injury. *See Ford*, 141 S.Ct. at 1026–27. In contrast, if funds were obtained by a theoretical terrorist financier to reimburse himself after-the-fact, they could not have been used to support the kidnapping and detention of Plaintiff and thus cannot support jurisdiction.

[15] Like *Ford*, *Madden* was a stream-of-commerce case alleging marketing and sale of defective products. *Madden v. Petland Summerville, LLC*, No. 2:20-cv-2953, 2021 WL 2582214, at *3 (D.S.C. June 23, 2021) ("When a company … services a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit.") (quoting *Ford*, 141 S. Ct. at 1022). The court permitted jurisdictional discovery into the defendant's *related* activities *directed at the forum*. *Id.* The court did not address the discoverability of post-tort forum contacts, and the defendant did not argue that post-tort forum contacts are not discoverable in opposing the motion to compel. *See id.*, ECF No. 61. *Madden* did not suggest that *non-forum* contacts during any period could support a finding of jurisdiction.

[16] Plaintiff argues that the "bulk of the cost QIB identified is for data storage and review." Mot. at 5. Plaintiff fails to justify why the Court should not consider the full cost-impact of his request. Even excluding review costs, QIB would incur approximately $171,213 to $235,102 to restore and process data, assuming QIB reviews the data of 10 custodians, and the process could take 3.5 to 6 months to complete and perhaps longer. *See* ECF No. 126-1 at ¶ 11, 14-15 and Attach. A.

**Request for Hearing**

QIB requests a hearing on this motion.

**Request for Attorney's Fees**

QIB requests an award of attorney's fees pursuant to Federal Rule of Civil Procedure 37(a)(5)(B).

Dated: September 8, 2021                    Respectfully submitted,


_/s/ Shawn C. Layman_
Shawn C. Layman (FBN 48112)
   slayman@crowell.com
T. Michael Guiffre (DC Bar No. 465745)
   (pro hac vice)
   mguiffre@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 654-6704
Facsimile: (202) 628-5116

_Attorneys for Defendant Qatar Islamic Bank_

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2021, a true and correct copy of a true and correct copy of the foregoing was served via transmission of Notices of Electronic Filing generated by CM/ECF on all counsel or parties of record.

/s/ Shawn C. Layman
Shawn C. Layman (FBN 48112)