IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 0:20-cv-60075-RKA

MATTHEW SCHRIER,

    Plaintiff,

v.

QATAR ISLAMIC BANK,

    Defendant.

**PLAINTIFF'S REPLY IN SUPPORT OF SECOND MOTION TO COMPEL
JURISDICTIONAL DISCOVERY**

## I.  The motion to compel is timely.

Schrier filed this motion 8 days after QIB responded to his Request for Production. QIB cites no authority for rejecting a motion filed 8 days after a discovery response, not even one that has some overlap with a prior request. The request at issue is *not* identical to prior requests. It seeks documents from a longer period, up to December 31, 2013, and it expressly seeks documents that did not touch QIB's correspondent accounts. As QIB knows and as Schrier explained in the motion, Schrier had a reason for serving the request. QIB revealed in conferrals over earlier discovery requests that it collected documents from December 2013 that would be responsive. Schrier promptly issued the request seeking those documents. The motion is not untimely.

## II. The requested discovery is relevant to conspiracy jurisdiction based on the properly alleged U.S. contacts of QIB's co-conspirators.

As QIB notes, Schrier seeks discovery into foreign activity. But such activity is discoverable because it could subject QIB to conspiracy jurisdiction. QIB does not contest that the Nusra Front, Ahrar al-Sham, and Qatar Charity were part of a conspiracy, nor does it dispute that (1) the Nusra Front committed torts in the U.S. or (2) that Syrian terrorism has U.S. effects. The Court could impute these jurisdictional contacts to QIB based on the conspiracy, and it should allow discovery into the Qatar Charity donation, which will bear on QIB's role in the conspiracy.

In discounting the Nusra Front's in-forum acts, QIB takes too narrow a view of the conspiracy. Converting Schrier's accounts was an act in furtherance of the conspiracy, not (as QIB says) the conspiracy's object. The object was to commit terrorist acts in Syria, including against Americans. Doc. 76 at ¶¶ 14, 340, 345. The Nusra Front converted Schrier's accounts to buy equipment—laptops, GPS software, and tactical boots—to support its terrorist activities, and thus further the conspiracy. *Id.* at ¶¶ 57–58. Nor is jurisdiction limited to the Nusra Front's Florida contacts. The Court could exercise jurisdiction based on Rule 4(k)(2), which allows the Court to

1

"aggregate a foreign defendant's nationwide contacts" when conducting the jurisdictional inquiry. *Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1216 (11th Cir. 2006). All the Nusra Front's contacts are on the table. QIB's cherry-picked allegation that the donation was part of a conspiracy only with Ahrar al-Sham does not give the full picture. Schrier alleged the conspiracy included "QIB, Ahrar al-Sham, the Nusra Front, and others." Doc. 76 at ¶ 345. Regardless, Ahrar al-Sham held Schrier captive "in trust" for the Nusra Front for several months, an act that brings Ahrar al-Sham and the Nusra Front into the same conspiracy. *Id.* at ¶ 35.

QIB is also wrong to claim it cannot be subject to jurisdiction for co-conspirators' acts that are "expressly aimed" at the U.S. QIB does not dispute that a terrorist act abroad can create jurisdiction by "caus[ing] pain and sow[ing] terror" in the U.S. *Mwani v. Bin Laden*, 417 F.3d 1, 13 (D.C. Cir. 2005). It tries to avoid the issue by claiming it did not have a direct role in the acts at issue. "But this argument misapprehends . . . the nature of conspiracy jurisdiction. . . . Rather, in any conspiracy, two or more entities that previously pursued their own interests separately are combining as one to act for their common benefit." *Contant v. Bank of Am. Corp.*, 385 F. Supp. 3d 284, 293 (S.D.N.Y. 2019) (quotation omitted). The Court may impute a co-conspirator's activities to QIB, in other words. *See id.* "[B]ecause the law deems co-conspirators to be each others' agents, jurisdiction may be premised on a co-conspirator's in-forum overt acts." *Id.*

Subjecting QIB to conspiracy jurisdiction based on the "effects test" for jurisdiction is perfectly proper. The "effects test" holds that jurisdiction can rest on intentional conduct that causes harm in the forum. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1356 (11th Cir. 2013). *Mwani* holds that the effects in this country of terrorist attacks committed abroad can subject the perpetrators to jurisdiction—in *Mwani*, the 1998 U.S. embassy bombings in Kenya. 417 F.3d at 2. (The "overt acts" in this country that QIB notes were related attacks, including the

1993 World Trade Center bombing, which occurred *five years earlier* but was nonetheless found to support jurisdiction. *Id.* at 13.) Subjecting QIB to personal jurisdiction based on the U.S. effects of Syrian terrorism is a straightforward exercise of determining whether co-conspirators' torts caused effects in the forum and imputing that conduct to QIB. This approach is not novel. Courts have found jurisdiction based on the effects of a co-conspirator's acts in the forum. *See Kyko Global, Inc. v. Prithvi Info. Sols. Ltd.*, No. 2:18-cv-1290, 2020 WL 3654951, at *15 (W.D. Pa. July 6, 2020). This is simply a "an example of the well-established principle that 'a defendant's contacts with the forum State may be intertwined with his transactions or interactions with other parties.'" *Contant*, 385 F. Supp. 3d at 293 (quoting *Walden v. Fiore*, 571 U.S. 277, 286 (2014)).

QIB is also wrong to say Schrier lacks a statutory basis for conspiracy jurisdiction. QIB does not dispute that the Florida long-arm statute allows conspiracy jurisdiction, and the effects of Syrian terrorism were felt in Florida as elsewhere. Conspiracy jurisdiction is also proper under Rule 4(k)(2). Rule 4(k)(2) permits "exercising jurisdiction . . . consistent with the United States Constitution and laws." "[F]ederal courts considering the federal constitutionality of conspiracy jurisdiction" under state long-arm statutes "have found the doctrine completely in line with" due process. *Kyko Global*, 2020 WL 3654951, at *15. QIB does not argue that conspiracy jurisdiction violates due process, nor does it offer any reason conspiracy jurisdiction could comport with due process under state statutes but not Rule 4(k)(2). QIB's claim that Congress did not intend to make conspiracy jurisdiction available under Rule 4(k)(2) finds no support in the Rule's text, which requires only that jurisdiction be "consistent" with the Constitution. The Court must "presume . . . the legislature says what it means and mean what it says." *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017) (quotation omitted and alterations adopted). Conspiracy jurisdiction is "consistent" with due process, so the Court should hold that it is available.

3

The cases QIB cites to claim the donation is irrelevant do not apply because none considered conspiracy jurisdiction. Both *In re Terrorist Attack on September 11, 2001* cases held that donating to Al Qaeda is not conduct "expressly aim[ed]" at the U.S. *In re Terrorist Attack on September 11, 2001*, 538 F.3d 71, 95 (2d Cir. 2008); *In re Terrorist Attack on September 11, 2001*, 714 F.3d 659, 676 (2d Cir. 2013). Neither discussed whether a conspiracy would allow a court to impute Al Qaeda's torts to the donors. The same goes for *Atchley v. AstraZeneca UK Limited*, 474 F. Supp. 3d 194 (D.D.C. 2020). *Atchley* held that transactions that financed terrorism were at most indirectly aimed at causing effects in the U.S., and thus were "not expressly aimed at the United States such that specific jurisdiction is proper." *Id.* at 204. But *Atchley* likewise did not consider whether to impute contacts based on a conspiracy. QIB puts misplaced reliance on these cases.

**III.     Schrier's request time period is appropriate.**

The Court should reject QIB's conclusory assertion that the period it unilaterally selected is sufficient. QIB's attempts to distinguish *Averbach v. Cairo Amman Bank* and *Boim v. Holy Land Foundation* both fail. *Averbach* exercised jurisdiction under the New York long-arm statute, as QIB notes. No. 19-cv-4, 2020 WL 486860, at *5 (S.D.N.Y. Jan. 21, 2020). But New York's long-arm statute is near-identical to Florida's. *Compare* Fla. Stat. § 48.193(1)(a), *with* N.Y.C.P.L.R. § 302(a)(1). And the due process analysis is identical under state long-arm statutes and Rule 4(k)(2). *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 945 (11th Cir. 1997). QIB correctly calls *Boim* a liability decision, not a jurisdictional one. 549 F.3d 685, 688 (7th Cir. 2008). But that makes no difference. A transaction that suffices for liability has a sufficient relationship to a claim to support jurisdiction without offending due process.

QIB also misreads *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021). Causation was not a "critical element" of *Ford*'s analysis. The Court was clear that

4

a "causation-only approach finds no support in this Court's requirement of a connection between a plaintiff's suit and a defendant's activities," *id.* at 1026—so clear that one Justice concurred in the judgment only to explain his view that Ford's contacts with Montana and Minnesota caused the plaintiff's claims. *Id.* at 1033 (Alito, J., concurring in the judgment). The jurisdictional analysis rested on Ford "serv[ing] a market for a product in a state," not the product causing injury there. *Id.* at 1022. *Ford* did consider post-tort contacts, including dozens of in-forum dealerships, which sold the model that caused the accidents and offered repair services. 141 S. Ct. at 1028.

Nor should the Court distinguish *Ford* and *Madden* as "stream of commerce" cases. The "stream of commerce" theory "merely observes that a defendant may in an appropriate case be subject to jurisdiction without entering the forum . . . as where manufacturers or distributors seek to serve a given State's market." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011) (plurality). But "that statement does not amend the general rule of personal jurisdiction." *Id.* The inquiry in *Ford* as here remains whether a defendant purposefully availed itself of the forum by conducting activities and whether those contacts relate to the action. *See id.*

Conspiracy law is no different in the jurisdictional context than the liability context. Courts "have no hesitancy in applying the well-accepted rules applicable to the liability of co-conspirators" to jurisdiction. *Wilcox v. Stout*, 637 So.2d 335, 337 (Fla. 2d DCA 1994). *Koch v. Royal Wine Merchants, Ltd.* states the accepted rule that a court can attribute to a conspirator the acts of co-conspirators that pre-date the conspirator joining. 907 F. Supp. 2d 1332, 1347 (S.D. Fla. 2012). The Court may impute the conspiracy's earlier contacts to QIB for this reason.

**IV.    The Court should require restoration and production of electronic data.**

Like QIB, Schrier incorporates his arguments in reply to QIB's response to the pending motion to compel. Doc. 127 at 5–6.

5

Respectfully submitted this 13th day of September, 2021.

*/s/ John H. Rains IV*
John H. Rains IV
Georgia Bar No. 556052, Florida Bar No. 56859
Kamal Ghali
Georgia Bar No. 805055 (admitted *pro hac vice*)
Matthew R. Sellers
Georgia Bar No. 691202 (admitted *pro hac vice*)
rains@bmelaw.com
ghali@bmelaw.com
sellers@bmelaw.com
**BONDURANT, MIXSON & ELMORE, LLP**
1201 West Peachtree Street, N.W., Suite 3900
Atlanta, Georgia 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

G. Scott Hulsey
District of Columbia Bar No. 449040 (admitted *pro hac vice*)
Carrie A. Tendler
New York Bar No. 4400842 (admitted *pro hac vice*)
scott.hulsey@kobrekim.com
carrie.tendler@kobrekim.com
**KOBRE & KIM**
1919 M Street, N.W.
Washington, DC 20036
Telephone: (202) 664-1904
Facsimile: (202) 664 1920

Kevin T. Carroll
District of Columbia Bar No. 1020479
New York Bar No. 4075339 (admitted *pro hac vice*)
kcarroll@wiggin.com
**WIGGIN AND DANA LLP**
800 17th Street, N.W., Suite 520
Washington, DC 20006
Telephone: (202) 800-2475
Facsimile: (212) 551-2888

***Attorneys for Plaintiff Matthew Schrier***

6

## **CERTIFICATE OF SERVICE**

I hereby certify that I have filed a true and correct copy of the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF SECOND MOTION TO COMPEL JURISDICTIONAL DISCOVERY** using the CM/ECF filing system which will cause copies to be served on counsel of record.

This 13th day of September, 2021.

                                                */s/ John H. Rains IV*
                                                John H. Rains IV
                                                Georgia Bar No. 556052
                                                Florida Bar No. 56859