UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60075-CIV-ALTMAN/HUNT

MATTHEW SCHRIER,

     *Plaintiff,*

v.

QATAR ISLAMIC BANK,

     *Defendant.*

_____/

**MEMORANDUM OF LAW IN SUPPORT OF QATAR ISLAMIC BANK'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Shawn C. Layman (FBN 48112)
   slayman@crowell.com
T. Michael Guiffre (DC Bar No. 465745)
   (pro hac vice)
   mguiffre@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 654-6704
Facsimile: (202) 628-5116

Aryeh L. Kaplan
   Aryeh.kaplan@pillsburylaw.com
Markenzy Lapointe (FBN 172601)
   Markenzy.lapointe@pillsburylaw.com
Ariella J. Ederi (FBN 1002965)
   Ariella.ederi@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
600 Brickell Avenue, Suite 3100
Miami, FL 33131
Telephone: (786) 913-4900
Facsimile: (786) 913-4901

*Attorneys for Defendant Qatar Islamic Bank*

## <u>TABLE OF CONTENTS</u>

I.  PLAINTIFF FAILED TO ESTABLISH PERSONAL JURISDICTION OVER QIB .............2

    A.  The Court Has Already Ruled that Plaintiff Did Not Serve QIB Pursuant to the Anti-Terrorism Act's Nationwide Service Provision. ........................................................................3

    B.  Plaintiff Failed to Allege a *Prima Facie* Basis for Exercising Personal Jurisdiction Under the Florida Long-Arm Statute.........................................................................................................3

    C.  Plaintiff Has Failed to Allege a Basis for Personal Jurisdiction Under Rule 4(k)(2). .................6

        1.  Plaintiff has only alleged contacts between QIB and New York................................6

        2.  Plaintiff failed to satisfy due process requirements for specific jurisdiction. ..........................7

II.  PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF ...........................................11

    A.  Plaintiff Failed to Allege Facts that Meet the Statutory Requirements to Constitute an Act of "International Terrorism."........................................................................................................11

    B.  Plaintiff Failed to Plausibly Allege Primary Liability in Counts One and Two.......................14

        1.  Plaintiff failed to sufficiently allege proximate causation. ...........................................14

        2.  Plaintiff failed to allege sufficient facts that would establish QIB knowingly provided material support to either the Nusra Front or Ahrar al-Sham. ........................................15

    C.  Plaintiff Failed to Plead Secondary Liability against QIB under Section 2333(d). .................16

        1.  Plaintiff failed to allege facts that QIB directly aided and abetted or conspired with the Nusra Front or Ahrar al-Sham.........................................................................................17

        2.  Plaintiff failed to plead facts that QIB knowingly aided and abetted the Nusra Front or Ahrar al-Sham................................................................................................................17

        3.  Plaintiff failed to plead facts that QIB conspired with Nusra Front and Ahrar al-Sham.....18

III.  THE COURT SHOULD DISMISS THE STATE LAW CLAIMS...........................................18

    A.  Plaintiff's State Law Claims Fail to State a Claim for Relief. .......................................................18

    B.  Plaintiff's State Law Claims are Barred by the Statute of Limitations.......................................20

    C.  The Court Should Not Exercise Supplemental Jurisdiction Over the State Law Claims........20

## TABLE OF AUTHORITIES

**CASES**                                                                                       **PAGE(S)**

*Alston v. www.calculator.com,*
   476 F. Supp. 3d 1295 (S.D. Fla. 2020) ................................................................................7

*Angell v. Allergan Sales, LLC,*
   Case Nos. 3:18-cv-282-J-34JBT & 3:18-cv-283-J-34JBT,
   2019 U.S. Dist. Lexis 142768 (M.D. Fla. Aug. 22, 2019) ...........................................19

*Anza v. Ideal Steel Supply Corp.,*
   547 U.S. 451 (2006) ............................................................................................................14

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................................................11

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................................................11

*Borges v. City of W. Palm Beach,*
   858 F. Supp. 174 (S.D. Fla. 1993). ................................................................................20

*BristolMyers Squibb Co. v. Superior Court of Cal., San Francisco Cty.,*
   137 S. Ct. 1773 (2017)..........................................................................................................3

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985).............................................................................................................3

*Cascade Yarns, Inc. v. Knitting Fever, Inc.,*
   No. C10-861RSM, 2011 WL 1042578 (W.D. Wash., Mar. 18, 2011)...........................3

*Chimene v. Royal Caribbean Cruises Ltd.,*
   No. 16-23775 CIV, 2017 WL 1536055 (S.D. Fla. Apr. 5, 2017) ................................7

*In re Chiquita Brands Int'l, Inc.,*
   792 F. Supp. 2d 1301 (S.D. Fla. 2011). .......................................................................13

*In re Chiquita Brands Int'l Inc.,*
   284 F. Supp. 3d 1284 (S.D. Fla. 2018). ...............................................................14, 16

*Cohen v. Facebook,*
   252 F. Supp. 3d 140 (E.D.N.Y. 2017) .............................................................................3

*C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.,*
   626 F. Supp. 2d 837 (N.D. Ill. 2009)...........................................................................6, 7

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.,*
   593 F.3d 1249 (11th Cir. 2010)..........................................................................................2

*Fields v. Twitter, Inc.,*
   881 F.3d 739, 749 (9th Cir. 2018) .................................................................................14

*Francosteel Corp. v. M/V Charm,*
   19 F.3d 624 (11th Cir. 1994).............................................................................................8

*Fraser v. Smith,*
   594 F. 3d 842 (11th Cir. 2010)................................................................................................3

*Freeman v. JPMorgan Chase Bank, N.A.,*
   675 F. App'x 926 (11th Cir. 2017). ......................................................................................19

*Haemoscope Corp. v. Pentapharm AG,*
   No. 02 C 4261, 2002 WL 31749195 (N.D. Ill. Dec. 9, 2002) ..........................................7

*Int'l Shoe Co. v. Washington,*
   326 U.S. 310 (1945) ...................................................................................................................2

*Jackson v. Grupo Indus. Hotelero, S.A.,*
   No. 07-22046-CIV-HUCK, 2008 WL 4648999 (S.D. Fla. Oct. 20, 2008)...................7

*Johnson v. Royal Caribbean Cruises, Ltd.,*
   474 F. Supp.3d 1260 (S.D. Fla. 2020)...................................................................................2

*Julin v. Chiquita Brands Int'l, Inc.,*
   690 F. Supp. 2d 1296 (S.D. Fla. 2010) ..............................................................................15

*Kemper v. Deutsche Bank AG,*
   911 F.3d 383 (7th Cir. 2018)........................................................................................ 16, 18

*Kertesz v. Net Transactions, Ltd.,*
   635 F. Supp. 2d 1339 (S.D. Fla. 2009) ................................................................................5

*Kipnis v. Bayerische Hypo-Und Vereinsbank, AG,*
   748 F.3d 771 (11th Cir. 2015).............................................................................................20

*La Grasta v. First Union Sec., Inc.,*
   358 F.3d 840, 846 (11th Cir. 2004). ...................................................................................20

*Lawrence v. Bank of Am., N.A.,*
   455 F. App'x 904 (11th Cir. 2012) ......................................................................................19

*Linde v. Arab Bank, PLC,*
   882 F.3d 314 (2d Cir. 2018) ........................................................................................ 13, 15

*Louis Vuitton Malletier, S.A. v. Mosseri,*
   736 F.3d 1339 (11th Cir. 2013)..............................................................................................2

*Maale v. Kirchgessner,*
   No. 08-80131-CIV, 2010 WL 11506096 (S.D. Fla. June 11, 2010)...............................5

*Mocha Mill, Inc., v. Port of Mokha, Inc.,*
   No. 18-cv-02539, 2019 WL 1048252 (N.D. Cal. Mar. 5, 2019)....................................7

*Marsh Supermarkets, Inc. v. Queen's Flower Corp.,*
   696 So. 2d 1207 (Fla. 3d DCA 1997) ..................................................................................5

*Musacchio v. United States,*
   577 U.S. 237 (2016) ...................................................................................................................3

*Meyer Werft GMBH & Co., KG v. Humain,*
   305 So. 3d 657 (Fla. 3d DCA 2020) ....................................................................................4

*Noble House, LLC v. Underwriters at Lloyd's, London,*
 No. 20-62080-CIV, 2021 WL 896219 (S.D. Fla. Mar. 3, 2021) ...................................... 6

*Ofisi v. Al Shamal Islamic Bank,*
 No. 15-2010 (JDB), 2019 WL 1255096 (D.D.C. Mar. 19, 2019) ............................... 11

*Payless Drug Stores Northwest, Inc. v. Innovative Clothing Exchange, Inc.,*
 615 So. 2d 249 (Fla. 3d DCA 1993) .................................................................. 5

*Perlman v. Wells Fargo Bank, N.A.,*
 559 F. App'x 988 (11th Cir. 2014) .................................................................. 19

*Posner v. Essex Ins. Co.,*
 178 F.3d 1209 (11th Cir. 1999) ........................................................................ 2

*PowerTec Sols. Int'l, LLC v. Hardin,*
 No. 19-61373-CIV-ALTMAN/Hunt,
 2019 U.S. Dist. LEXIS 201216 (S.D. Fla. Nov. 20, 2019). .................................. 2

*Quail Cruises Ship Mgmt., Ltd. v. Agencia de Viagens CVC Tur Limitada,*
 No. 09-23248-CIV, 2011 WL 5057203 (S.D. Fla. Oct. 24, 2011) ....................... 4, 5

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,*
 119 F. 3d 935 (11th Cir. 1997) ......................................................................... 2

*RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.,*
 579 F. App'x 779 (11th Cir. 2014) ............................................................... 5, 16

*Rothstein v. UBS AG,*
 708 F.3d 82 (2d Cir. 2013) ............................................................................. 14

*Rudersdal v. Harris,*
 No. 18-CV-11072 (GHW) (RWL), 2021 WL 2209042 (S.D.N.Y. Feb. 27, 2021) .................. 11

*Saxton v. ACF Indus.,*
 254 F.3d 959 (11th Cir. 2001) ........................................................................ 20

*Siegel v. HSBC N. Am. Holdings, Inc.,*
 933 F.3d 217 (2d Cir. 2019) ..................................................................... 10, 13

*Steinberg v. Barclay's Nominees,*
 No. 04-60897-CIV, 2008 WL 4601043 (S.D. Fla. Sept. 30, 2008) ........................ 8

*Storm v. Carnival Corp.,*
 No. 20-22227, 2020 WL 7415835 (S.D. Fla. Dec. 18, 2020) .............................. 7

*Strauss v. Crédit Lyonnais, S.A.,*
 379 F. Supp. 3d 148 (E.D.N.Y. 2019) ..................................................... 13, 17, 18

*In re Takata Airbag Products Liability Litigation,*
 396 F. Supp. 3d 1101 (S.D. Fla. 2019) .............................................................. 6

*Tamam, v. Fransabank SAL,*
 677 F. Supp. 2d 720 (S.D.N.Y. 2010) ................................................................ 8

*In re Terrorist Attacks on Sept. 11, 2001,*
 714 F.3d 659 (2d Cir. 2013) ..................................................................... 10, 15, 18

*Vasquez v. Hong Kong and Shanghai Banking Corp., Ltd.,*
    477 F. Supp.3d 241 (S.D.N.Y. 2020) ...................................................................8

*Venetian Salami Co. v. Parthenais,*
    554 So. 2d 499, 502 (Fla. 1989) ........................................................................4

*Virgin Health Corp. v. Virgin Enterprises Ltd.,*
    393 F. App'x 623 (11th Cir. 2010) ....................................................................7

*Walden v. Fiore,*
    571 U.S. 277 (2014) .....................................................................................2, 3

*Weiss v. Nat'l Westminster Bank PLC,*
    278 F. Supp. 3d 636 (E.D.N.Y. 2017) .............................................................17

*Williams Electric v. Honeywell, Inc.,*
    854 F.2d 389 (11th Cir. 1988) ...........................................................................5

*Wolf v. Celebrity Cruises, Inc.,*
    683 F. App'x 786 (11th Cir. 2017) ....................................................................7

*Woodruff-Sawyer & Co. v. Ghilotti,*
    255 So. 3d 423 (Fla. 3d DCA 2018) ................................................................3

*ZP No. 54 Ltd. P'ship v. Fidelity & Deposit Co. of Maryland,*
    917 So. 2d 368 (Fla. 5th DCA 2005) .............................................................19

Plaintiff's Second Amended Complaint ("**SAC**") again fails to allege a *prima facie* case of personal jurisdiction over Qatar Islamic Bank ("**QIB**"). Plaintiff has failed to develop any evidentiary basis for jurisdiction through the jurisdictional discovery the Court ordered after dismissing Plaintiff's original Complaint for lack of personal jurisdiction and ineffective service of process more than a year ago. ECF No. 74. Indeed, this Court already held that virtually identical allegations did not establish a *prima facie* case of personal jurisdiction over QIB. *Id.* Now that jurisdictional discovery has concluded, it is evident that the Court must dismiss the case again for lack of personal jurisdiction.

The SAC alleges that this Court has personal jurisdiction over QIB under Federal Rules of Civil Procedure 4(k)(1)(A), 4(k)(1)(C), 4(k)(2) and/or 18 U.S.C. § 2334(a). SAC, ECF No. 155, ¶ 21. But Plaintiff fails to allege (let alone establish) the requisite jurisdictional facts on any of these bases— nor can he because, at most, QIB, a Qatar bank, only obtained the services of New York banks to effect transactions for QIB's customers in Qatar and the SAC fails to allege any other contacts with the United States in the relevant time frame. In fact, jurisdictional discovery *established* that QIB has no other contacts with the United States—including no offices, employees, or business. Plaintiff's jurisdictional theory thus rests nearly exclusively—as before—on the contacts of QIB's correspondent accounts in New York. But as jurisdictional discovery established, these transactions were *de minimis* and there was no indication that QIB "used its U.S. correspondent accounts to process one or more donations to the Madid campaign." SAC ¶ 229. More specifically, jurisdictional discovery established that there were *no* transactions concerning al-Kabi and only three transactions concerning Qatar Charity in total before Plaintiff's alleged escape on July 29, 2013. *See infra.* These meager contacts are insufficient to establish personal jurisdiction over QIB on any basis.

In the alternative, Plaintiff raises unfounded and inapplicable conspiracy theories to attribute the alleged U.S. contacts of non-parties to QIB. The SAC fails to allege facts to make a *prima facie* case that QIB conspired with the Nusra Front or Ahrar al-Sham, or that the Nusra Front or Ahrar al-Sham (and therefore, QIB, as a purported co-conspirator) are subject to jurisdiction in the state of Florida— or anywhere in the United States. Moreover, the limited facts alleged in the SAC are not true, as evidenced from the testimony and documents Plaintiff obtained through jurisdictional discovery. Plaintiff was provided ample opportunity to develop a basis for jurisdiction at QIB's expense, but the evidence points to only one conclusion: the Court should dismiss the SAC for lack of personal jurisdiction.

The Court also should dismiss the SAC for failure to state a claim. Plaintiff fails to establish that Florida state law, or any state law, applies to his claims against QIB. In fact, Plaintiff failed to

amend these claims at all despite admitting, astonishingly, in a prior hearing that he does not know whether there is a legal basis for his State Law Claims. Plaintiff's Anti-Terrorism Act claims also should be dismissed, because the SAC fails to plead either primary or secondary liability as to QIB, and does not allege any facts to show that QIB itself committed an act of international terrorism.

## I. PLAINTIFF FAILED TO ESTABLISH PERSONAL JURISDICTION OVER QIB

Plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). "[V]ague and conclusory allegations … do not suffice to establish a *prima facie* case of personal jurisdiction." *PowerTec Sols. Int'l, LLC v. Hardin*, No. 19-61373-CIV-ALTMAN/Hunt, 2019 U.S. Dist. LEXIS 201216, at *7 (S.D. Fla. Nov. 20, 2019). Even if Plaintiff were to meet his burden, QIB can rebut Plaintiff's allegations by submitting affidavits, documents, or testimony. *Internet Sol. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009). "[T]he burden shifts back to the plaintiff, this time requiring the plaintiff to prove—not merely allege—jurisdiction by affidavits, testimony, or other documents." *Johnson v. Royal Caribbean Cruises, Ltd.*, 474 F. Supp.3d 1260, 1265 (S.D. Fla. 2020) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214-15 (11th Cir. 1999)). Courts construe *reasonable* inferences in favor of the plaintiff only if the evidence conflicts. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010).

The constitutional and statutory requirements for exercising personal jurisdiction over a foreign defendant are rigorous. First, Plaintiff must establish a statutory basis for the Court to exercise jurisdiction. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F. 3d 935, 940 (11th Cir. 1997). Plaintiff does not allege that QIB had any contacts with Florida, or the United States, apart from maintaining correspondent bank accounts in New York. As addressed below, these allegations are insufficient to establish jurisdiction under Rules 4(k)(1)(A), 4(k)(1)(C), 4(k)(2) and 18 U.S.C. § 2334(a).

Second, Plaintiff must satisfy constitutional due process requirements, but fails to do so. Under the Due Process Clause, "the nonresident generally must have 'certain minimum contacts … such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). Plaintiff has acknowledged that the Court may not exercise general jurisdiction over QIB, instead arguing for the exercise of specific jurisdiction. ECF No. 38 at 4-5. The specific jurisdiction analysis is threefold: (1) QIB "must have contacts related to or giving rise to the plaintiff's cause of action;" (2) QIB must, "through those contacts, have purposefully availed itself of forum benefits;" and (3) QIB's "contacts with the forum must be such that it could reasonably anticipate being haled

into court there." *Fraser v. Smith*, 594 F. 3d 842, 850 (11th Cir. 2010) (emphasis added). When there is no connection between the forum and the underlying controversy, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities" in the forum. *BristolMyers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (Courts must determine that the defendant "has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to *those activities*."); *Walden*, 571 U.S. at 284 ("to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State"). As addressed below, Plaintiff alleges only sparse contacts that are insufficient to satisfy these due process requirements, and Plaintiff cannot prove the sparse allegations he does rely on.

### A. The Court Has Already Ruled that Plaintiff Did Not Serve QIB Pursuant to the Anti-Terrorism Act's Nationwide Service Provision.

Plaintiff continues to allege that the Court may exercise jurisdiction under Rule 4(k)(1)(C) and the Anti-Terrorism Act ("**ATA**"), 18 U.S.C. § 2334(a), which provides for nationwide service of process, even though the Court already considered the Parties' evidentiary submissions and held that Plaintiff's attempted service on Global Payments Advisory Group was ineffective when it granted QIB's first Motion to Dismiss. Hr'g Tr. (Sept. 29, 2020) at 5:10-8:18; ECF No. 74; *Musacchio v. United States*, 577 U.S. 237, 244–45, 136 S. Ct. 709, 716, 193 L. Ed. 2d 639 (2016) (noting that courts generally refuse to revisit issues that have already been decided). The Court ordered alternative service pursuant to Rule 4(f)(3), and Plaintiff subsequently represented to the Court that he served QIB in Qatar. ECF Nos. 97, 98, 121. Therefore, the Court should reject any argument by Plaintiff that Rule 4(k)(1)(C) and 18 U.S.C. § 2334(a) provide a basis for exercising personal jurisdiction.[1]

### B. Plaintiff Failed to Allege a *Prima Facie* Basis for Exercising Personal Jurisdiction Under the Florida Long-Arm Statute.

Plaintiff's SAC does not allege any jurisdictional facts that would establish a *prima facie* case subjecting QIB to the jurisdiction of a court of general jurisdiction in Florida, as required by Rule 4(k)(1)(A). Florida's long-arm statute must be "strictly construe[d]," *Woodruff-Sawyer & Co. v. Ghilotti*, 255 So. 3d 423, 430 (Fla. 3d DCA 2018), and "the plaintiff bears the burden of pleading sufficient

---

[1] Because Plaintiff elected to serve the summons outside the United States, which exceeds the territorial limitations of the ATA, he did not effect service under the ATA and is precluded from invoking the ATA as a statutory basis for personal jurisdiction. Where the ATA authorizes nationwide service, as opposed to worldwide service, service of process must occur in the United States. *Cohen v. Facebook*, 252 F. Supp. 3d 140, 152 (E.D.N.Y. 2017); *see also Cascade Yarns, Inc. v. Knitting Fever, Inc.*, No. C10-861RSM, 2011 WL 1042578, at * 1, 2 (W.D. Wash., Mar. 18, 2011).

jurisdictional facts to fall within the long-arm statute." *Meyer Werft GMBH & Co., KG v. Humain*, 305 So. 3d 657, 660 (Fla. 3d DCA 2020). To establish jurisdiction over a non-resident defendant, Plaintiff must establish that (1) the Florida long-arm statute provides a basis for personal jurisdiction, and (2) sufficient minimum contacts exist between QIB and Florida so as to satisfy traditional notions of fair play and substantial justice. *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989).

Plaintiff's allegations are insufficient to establish jurisdiction over QIB either directly or by a theory of conspiracy jurisdiction. Plaintiff fails to allege that QIB has *any* contacts with Florida, let alone the minimum contacts necessary to satisfy due process. Plaintiff also fails to identify any act enumerated under the Florida long-arm statute that he contends would provide a jurisdictional basis to subject QIB to jurisdiction in Florida. Fla. Stat. § 48.193(1)(a). Plaintiff's singular allegation referencing Florida is that the *Nusra Front*—not QIB—used his credit card for two online transactions to purchase sunglasses and window washer fluid from Florida vendors. SAC ¶¶ 74-75. This allegation is identical to his allegation in his original Complaint, and the Court already found that this allegation is insufficient to make a *prima facie* case to exercise personal jurisdiction over QIB.[2]

Plaintiff's sunglasses theory is dependent on making a *prima facie* case that QIB is subject to jurisdiction in Florida by conspiring with the Nusra Front. Plaintiff must meet three requirements to establish co-conspirator jurisdiction over a non-resident defendant under the long-arm statute: "(1) jurisdiction can … be asserted over a 'resident' defendant (*i.e.* one with sufficient ties to the state); (2) the plaintiff can demonstrate the existence of a conspiracy in which the non-resident defendant and the resident defendant participated; and (3) an overt act in furtherance of the conspiracy took place within the state." *Quail Cruises Ship Mgmt., Ltd. v. Agencia de Viagens CVC Tur Limitada*, No. 09-23248-CIV, 2011 WL 5057203, at *4 (S.D. Fla. Oct. 24, 2011). Plaintiff has failed to make a *prima facie* case for conspiracy jurisdiction under the Florida long-arm statute as to all three requirements.

First, Plaintiff fails to establish that jurisdiction can be asserted over the Nusra Front. To treat the Nusra Front as a resident defendant, Plaintiff must establish that (1) the Florida long-arm statute provides a basis for jurisdiction over the Nusra Front, and (2) the Nusra Front has sufficient minimum contacts with the state of Florida so as to satisfy due process requirements. *See Venetian*, 554 So. 2d at 502 (setting forth two-prong analysis). Plaintiff has not identified any act enumerated under the statute on which his claims are based because Plaintiff cannot do so. The only Florida contacts that Plaintiff

_____

[2] ECF No. 1, ¶ 58; Hr'g Tr. (Sept. 29, 2020) at 11:2-12:17; Hr'g Tr. (May 27, 2021) at 26:22-27:5 ("[T]he allegations of contacts with Florida are unrelated to QIB."); Hr'g Tr. (Aug. 12, 2020) at 47:11-48:10 (Plaintiff confirming he did not allege the sunglasses and window washer fluid were used in his kidnapping or captivity).

has alleged against the Nusra Front are two online purchases from Florida vendors for sunglasses and window washer fluid. SAC ¶ 75. Plaintiff fails to allege who made these two purchases and any facts demonstrating that they were acting on behalf of the Nusra Front.[3] The Florida long-arm statute also requires that Plaintiff's lawsuit *arise primarily out of an in-state act enumerated in the statute. See RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 784 (11th Cir. 2014) ("In other words, "the activities in Florida [must be] essential to the success of the tort.") (quoting *Williams Electric v. Honeywell, Inc.* 854 F.2d 389, 394 (11th Cir. 1988)); Fla. Stat. § 48.193 (providing jurisdiction for "any cause of action *arising from*" the enumerated acts) (emphasis added). Plaintiff's claims against QIB are based on his alleged kidnapping and detention by the Nusra Front in Syria, not the two alleged purchases from Florida vendors.[4] Plaintiff fails to allege any other contacts between the Nusra Front and Florida that could possibly meet the minimum contacts threshold to satisfy due process requirements to exercise personal jurisdiction over the Nusra Front.[5]

Second, Plaintiff has not demonstrated the existence of a conspiracy between QIB and the Nusra Front. *Quail Cruises Ship Mgmt*, 2011 WL 5057203, at *4. Plaintiff must make out a "colorable, factually supported claim of the conspiracy's existence," but has failed to do so. *Maale v. Kirchgessner*,

---

[3] Plaintiff presumably bases his allegations concerning these two purchases on transactions involving his PayPal account. PayPal produced a spreadsheet of transactions in response to Plaintiff's subpoena. Given its size, it is not feasible to attach the entire spreadsheet as an exhibit. However, Exhibit H contains excerpts of the PayPal spreadsheet that appear to include the transactions on which Plaintiff bases his allegations. The spreadsheet identifies certain individuals to whom purchases were delivered, but does not provide any evidentiary basis to conclude that those individuals made the purchases on behalf of the Nusra Front. The fact that no item purchased was delivered to Syria indicates that the Nusra Front did not make the purchases. There also were no purchases after Plaintiff's alleged kidnapping on December 31, 2012 until February 11, 2013, indicating that someone other than the Nusra Front obtained access to the account. It also is not clear that the products were obtained from a Florida vendor. Taking these facts into account, Plaintiff's allegation that the Nusra Front made these two purchases is so speculative that he failed to make a *prima facie* case subjecting the Nusra Front to the jurisdiction of this Court. As Exhibit H rebuts Plaintiff's allegation, Plaintiff must produce evidence upon which the Court could conclude that the Nusra Front made these two purchases.
[4] Personal jurisdiction over one individual claim cannot be expanded to cover other claims unless the claims "arose from the same jurisdiction generating event." *RMS Titanic, Inc.*, 579 F. App'x at 787 (quoting *Cronin v. Wash. Nat'l Ins. Co.*, 980 F.2d 663, 671 (11th Cir. 1993)).
[5] Florida courts have consistently held that the mere purchase of goods within the state by a non-resident is insufficient to satisfy due process requirements. *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1346 (S.D. Fla. 2009); *Marsh Supermarkets, Inc. v. Queen's Flower Corp.*, 696 So. 2d 1207, 1209 (Fla. 3d DCA 1997) (defendant's purchases from a Florida vendor is insufficient to establish minimum contacts so as to allow it to be sued in Florida); *Payless Drug Stores Northwest, Inc. v. Innovative Clothing Exchange, Inc.*, 615 So. 2d 249, 250 (Fla. 3d DCA 1993) (finding non-resident's failure to pay for two orders from Florida vendor is insufficient to establish minimum contacts with Florida).

No. 08-80131-CIV, 2010 WL 11506096, at *2 (S.D. Fla. June 11, 2010) (quotation omitted). The SAC does not make (let alone, prove) any new allegations that support the existence of the alleged conspiracy, and this Court has already found that Plaintiff's original allegations of the conspiracy were insufficient. Hr'g Tr. (Sept. 29, 2020) 12:13-17 ("[T]here's no evidence that they conspired with respect to this specific conspiracy, and that those conspiratorial acts, or any of them, were taken in the [forum]. So, for all those reasons, the motion with respect to personal jurisdiction is likewise granted.").

Finally, Plaintiff did not sufficiently allege that an act in furtherance of the alleged conspiracy took place within Florida. Plaintiff has not supplemented his original, deficient allegations with any new facts or well-pled allegations to support a finding different than the one the Court already made when it dismissed Plaintiff's original Complaint. ECF No. 74; *see also* Hr'g Tr. (Sept. 29, 2020) 12:13-17.[6] Therefore, Plaintiff has again failed to meet his burden to plead factual allegations that could support jurisdiction over QIB under the Florida long-arm statute.

### C. Plaintiff Has Failed to Allege a Basis for Personal Jurisdiction Under Rule 4(k)(2).

Plaintiff's final basis for seeking jurisdiction is Rule 4(k)(2), which provides that effective service establishes personal jurisdiction if the plaintiff's claim arises under federal law, the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and the exercise of jurisdiction is consistent with the United States Constitution and laws. Rule 4(k)(2) was designed to address the issue of a non-resident defendant who does not have minimum contacts with any individual state sufficient to support the exercise of jurisdiction, but does have sufficient contacts with the United States as a whole. *In re Takata Airbag Products Liability Litigation*, 396 F. Supp. 3d 1101, 1152 (S.D. Fla. 2019). Courts "rarely invoke jurisdiction under Rule 4(k)(2)." *Noble House, LLC v. Underwriters at Lloyd's, London*, No. 20-62080-CIV, 2021 WL 896219, at *5 (S.D. Fla. Mar. 3, 2021). Where, as here, the only contacts alleged are between the defendant and a single state, Rule 4(k)(2) is inapplicable.

### 1. Plaintiff has only alleged contacts between QIB and New York.

Plaintiff's own allegations establish that Rule 4(k)(2) is inapplicable. Rule 4(k)(2) applies where a defendant has "ample contacts with the nation as a whole, but whose contacts are so scattered among states that none of them would have jurisdiction." *C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.*, 626 F. Supp. 2d 837, 844 (N.D. Ill. 2009) (quotation omitted). Here, however, Plaintiff alleges that QIB

---

[6] Plaintiff's SAC makes a conclusory allegation that "identity theft and conversion were in furtherance of [the Nusra Front's] goal to bring about further acts of terrorism in Syria." SAC ¶¶ 79-80. Plaintiff provides no factual allegations or evidence to support this conclusory assertion, nor does he explain how the purchase of sunglasses and window washer fluid delivered to destinations outside of Syria would bring about acts of terrorism in Syria.

has U.S. contacts only with New York. *See* SAC ¶¶ 19, 223-32. If QIB's alleged contacts with New York were sufficient to subject QIB to suit in New York (which they are not), Rule 4(k)(2)(A) would be inapplicable. Alternatively, if QIB's alleged contacts with New York were insufficient to subject it to suit in New York (as is the case here), they also would be insufficient to satisfy constitutional due process requirements under Rule 4(k)(2)(B) as there would be no sufficient contacts with the nation as a whole. Therefore, under either scenario, Rule 4(k)(2) does not apply.[7]   As Plaintiff's SAC fails to allege any direct contacts between QIB and the United States beyond the maintenance of New York correspondent accounts, Rule 4(k)(2) is inapplicable.

**2.   Plaintiff failed to satisfy due process requirements for specific jurisdiction.**

Plaintiff fails to allege jurisdictional facts that would make a *prima facie* showing that QIB's contacts with the United States as a whole satisfy constitutional requirements. "[E]ven if Rule 4(k)(2) could apply, conclusory statements do not constitute the *prima facie* showing necessary to carry the burden of establishing jurisdiction." *Storm v. Carnival Corp.*, No. 20-22227, 2020 WL 7415835, at *11 (S.D. Fla. Dec. 18, 2020); *see also Virgin Health Corp. v. Virgin Enterprises Ltd.*, 393 F. App'x 623, 627 n.2 (11th Cir. 2010) (plaintiff "bears the burden of pleading jurisdiction" under Rule 4(k)(2))*; Alston v. www.calculator.com*, 476 F. Supp. 3d 1295, 1311 n.2 (S.D. Fla. 2020) (rejecting Rule 4(k)(2) jurisdiction where complaint did not contain any allegations regarding nationwide contacts that would support the Rule); *cf., Jackson v. Grupo Indus. Hotelero, S.A.*, No. 07-22046-CIV-HUCK, 2008 WL 4648999, at *9 (S.D. Fla. Oct. 20, 2008) (applying Rule 4(k)(2) where complaint made numerous specific allegations that defendant directed suit-related conduct to the United States broadly through advertisements, promotional activities, travel agency partnerships, and other activities not specific to any one state).

For Rule 4(k)(2) to apply, Plaintiff must show that QIB's alleged contacts with the United States (a) relate to or give rise to Plaintiff's cause of action, (b) involve some act by which QIB

---

[7] The Eleventh Circuit reached the same conclusion that a defendant was not subject to jurisdiction under the due process prong of Rule 4(k)(2) where there was no jurisdiction under the Florida long-arm statute and the plaintiff had not "specifically alleged any contacts with the United States beyond those asserted under Florida's long-arm statute." *Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 793 (11th Cir. 2017); *see also Chimene v. Royal Caribbean Cruises Ltd.*, No. 16-23775 CIV, 2017 WL 1536055, at *1 (S.D. Fla. Apr. 5, 2017) (same result where plaintiff alleged defendant had only Florida contacts); *Haemoscope Corp. v. Pentapharm AG*, No. 02 C 4261, 2002 WL 31749195, at *9 (N.D. Ill. Dec. 9, 2002) ("it would violate the Fifth Amendment to subject [defendant] to personal jurisdiction" under Rule 4(k)(2) because defendant's only alleged contacts were with Massachusetts); *Mocha Mill, Inc., v. Port of Mokha, Inc.*, No. 18-cv-02539, 2019 WL 1048252, at *6 (N.D. Cal. Mar. 5, 2019) (same result where plaintiffs pled no U.S. contacts outside of California); *C.S.B. Commodities*, 626 F. Supp. 2d at 844 (same result where defendants' only alleged contacts were with Illinois).

purposefully availed itself of the privilege of conducting activities within the forum, and (c) be such that QIB should reasonably anticipate being haled into a United States court. *Francosteel Corp. v. M/V Charm,* 19 F.3d 624, 627 (11th Cir. 1994); *Steinberg v. Barclay's Nominees,* No. 04-60897-CIV, 2008 WL 4601043, *6 (S.D. Fla. Sept. 30, 2008). Plaintiff's allegations do not meet his burden. The only direct contacts between the QIB and the United States alleged are the maintenance and use of New York correspondent accounts.[8] SAC ¶¶ 19, 223-32. The maintenance and use of New York correspondent accounts is not sufficient for purposes of Rule 4(k)(2), and it does not satisfy the minimum contacts requirement to assert specific jurisdiction over QIB.

Post-*Daimler* ATA cases have made clear that there is no personal jurisdiction where an entity's alleged conduct was not "rooted" in the entity's contacts with the United States, finding for example that the provision of financial services to an entity that carries out a terrorist attack on U.S. citizens was not sufficient to subject a defendant to personal jurisdiction, and that the mere maintenance of a U.S. correspondent account is insufficient to establish minimum contacts with the United States. *In re Terrorist Attacks on Sept. 11,* 2001, 714 F.3d 659, 676 (2d Cir. 2013) (merely providing financial services to an entity that carries out a terrorist attack is insufficient for personal jurisdiction); *Vasquez v. Hong Kong and Shanghai Banking Corp., Ltd.,* 477 F. Supp.3d 241, 258 (S.D.N.Y. 2020) (three transactions through a correspondent account were "too sparse" to warrant inference of purposeful availment); *Tamam, v. Fransabank SAL,* 677 F. Supp. 2d 720, 731-32 (S.D.N.Y. 2010) ("The mere maintenance of a correspondent account in New York no more establishes minimum contacts with the United States than it does provide a basis for the exercise of long-arm jurisdiction"; plaintiffs' injuries were "not substantially related to the U.S. correspondent accounts such that their claims arise from the alleged currency transfers"). This is significant because Plaintiff has not alleged that QIB had any contacts with the United States beyond its New York correspondent accounts, and jurisdictional discovery has confirmed these accounts do not relate or give rise to Plaintiff's claims. The contacts alleged simply cannot be used to support the constitutional exercise of specific personal jurisdiction over QIB.

Even assuming that purely New York contacts could somehow satisfy Rule 4(k)(2) requirements (which they cannot), and despite having conducted jurisdictional discovery, Plaintiff still fails to allege with specificity that any New York correspondent account transaction was used in his

---

[8] The nature of QIB's New York correspondent account relationships was made clear during jurisdictional discovery. Notably, New York banks provided services to QIB to effect transactions for its Qatar customers, and QIB managed these accounts through representatives of the New York banks located in Dubai and Bahrain. This underscores the extremely limited nature of QIB's U.S. contacts, even with New York. Exh. G (QIB's Rule 30(b)(6) deposition testimony).

alleged kidnapping and detention. Plaintiff makes only a general allegation that "QIB used its U.S. correspondent accounts to process one or more donations to the Madid campaign." SAC ¶ 229. This is the same allegation that Plaintiff made in his original Complaint, and the Court held that this allegation was insufficient to establish personal jurisdiction. ECF No. 1, ¶ 194; ECF No. 74.[9]

The fact is that Plaintiff *cannot* allege that any particular donation to the Madid campaign was processed through a New York correspondent account, or that any such donation facilitated either his kidnapping or detention. Jurisdictional discovery established there were *no* transactions concerning al-Kabi and only three transactions concerning Qatar Charity before Plaintiff's alleged escape:[10]



| Exhibit | Date | USD Amt. | Originator | Beneficiary | N.Y. Correspondent Bank | Description |
|---------|------|----------|-----------|-------------|-------------------------|-------------|
| A | ███ | ███ | ██ | ███████ | ████ | ██ |
| B | ███ | ██ | █ | ███████ | █████ | ████ |
| C | ██ | ██ | ██ | ███████ | █████ | █████ |

The transactional documents do not reflect that any of the funds were transferred to, or otherwise benefited, the Madid campaign, the Nusra Front, or Ahrar al-Sham, or that they otherwise contributed to Plaintiff's alleged kidnapping and detention, and Plaintiff has not alleged otherwise. Further, jurisdictional discovery confirmed that there were *no* transfers through QIB's New York correspondent accounts into al-Kabi's account, confirming that the allegations on which Plaintiff primarily relies to establish jurisdiction are false. *See* SAC ¶¶ 176, 209-10, 229.

Jurisdictional discovery identified three transactions *after* Plaintiff's alleged escape:

---

[9] *See* Hr'g Tr. (Sept. 29, 2020) 9:15-18 ("[P]laintiff has not alleged—and I don't think at this point can establish—that even a single dollar that facilitated either his kidnapping or detention came through the New York accounts of QIB's correspondent banks."); 10:5-10 ("[P]laintiff has no allegations that are well pled in the complaint that suggest a single dollar flowed through the correspondent accounts in the United States to the QIB Madid accounts and then to any of the terrorist organizations in a way that would have facilitated either the kidnapping or the detention of Mr. Schrier.").

[10] QIB has produced all New York correspondent account transactions concerning all individuals, entities, and accounts identified by Plaintiff in his jurisdictional discovery requests. Only three transactions were identified during the period of September 1, 2012 to July 29, 2013.

| Exhibit | Date | USD Amt. | Originator | Beneficiary | N.Y. Correspondent Bank | Description |
|---------|------|----------|------------|-------------|-------------------------|-------------|
| D | ███ | ███ | ███ | ███ | ███ | ███ |
| E | ███ | ███ | ███ | ███ | ███ | ███ |
| F | ███ | ███ | ███ | ███ | ███ | ███ |

These post-escape transactions are irrelevant. The transactional documents also do not reflect that any of the funds were transferred to, or otherwise benefited, the Madid campaign, the Nusra Front, or Ahrar al-Sham, or that they otherwise contributed to Plaintiff's alleged kidnapping and detention even after the fact, and Plaintiff has not alleged otherwise with respect to the Qatar Charity transactions.

The *only* transaction that Plaintiff identifies in the SAC is the ███████ transaction listed above sent by ████████████ (Exh. F).[11] SAC ¶ 230. This transaction was initiated more than three months *after* Plaintiff's alleged escape, and the transfer documentation on which Plaintiff relies does not contain any information supporting his allegation that the transfer—*which was processed by Citibank, N.A., and JPMorgan Chase*— "ultimately supported the Madid campaign." *See* SAC ¶ 232; Exhs. F, I. Therefore, Plaintiff has failed to establish that the transfer gave rise or otherwise related to Plaintiff's claims and does not satisfy the minimum contacts requirement to assert specific personal jurisdiction over QIB. *See Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 225 (2d Cir. 2019) (plaintiffs "did not advance any non-conclusory allegation that AQI received any of those funds").

Plaintiff previously attempted to compensate for QIB's limited contacts solely with New York by arguing that the torts committed by the Nusra Front and Ahrar al-Sham, which he alleges had "U.S.-targeted effects," should be imputed onto QIB to create jurisdiction.[12] *See, e.g.,* ECF No. 130 at

---

[11] Plaintiff refers to this account as "the al-Kabi account." SAC ¶ 4. QIB does not concede that this account was owned or controlled by the Saad bin Saad al-Kabi referenced in Plaintiff's SAC, but for purposes of this motion only, will not dispute Plaintiff's characterization of the account.

[12] While the 'effects' test may be sufficient to establish minimum contacts in instances where a foreign defendant is a primary participant in a terror attack, that is not the case here. Plaintiff does not allege that QIB was a direct participant in his alleged kidnapping and detention, or that QIB directed *any* suit-related activities at the United States beyond those alleged in New York. *Cf. Mwani v. Bin Laden*, 417 F.3d 1, 13 (D.C. Cir. 2005) (finding personal jurisdiction under Rule 4(k)(2) because defendants *directly* engaged in activities subjecting them to personal jurisdiction, including "with overt acts occurring within this country's borders."); *In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 558 n.5 (S.D.N.Y. 2005) (citing *Mwani* to hold that a defendant's "personal or direct participation in the conduct giving rise to Plaintiff' injuries" is required to subject him to personal jurisdiction).

2. However, Plaintiff fails to allege facts to make a *prima facie* case that QIB conspired with the Nusra Front or Ahrar al-Sham, or that the Nusra Front or Ahrar al-Sham (and therefore, QIB, as an alleged co-conspirator) are subject to jurisdiction under Rule 4(k)(2). Even if he had, conspiracy-based jurisdiction is not cognizable under Rule 4(k)(2). ECF No. 130 at 2. No court "has permitted the assertion of conspiracy jurisdiction under Rule 4(k)(2)." *Rudersdal v. Harris*, No. 18-CV-11072 (GHW) (RWL), 2021 WL 2209042, at *16 (S.D.N.Y. Feb. 27, 2021) (with detailed reasoning); *Ofisi v. Al Shamal Islamic Bank*, No. 15-2010 (JDB), 2019 WL 1255096, at *5 n.8 (D.D.C. Mar. 19, 2019).

In conclusion, Plaintiff has failed to allege facts sufficient to make a *prima facie* case to support personal jurisdiction under any statutory basis. Plaintiff also cannot rebut the evidence submitted by QIB establishing that his allegations are not true. Furthermore, any exercise of personal jurisdiction would not comport with due process. Therefore, the Court should dismiss Plaintiff's SAC.

## II.   PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF

Plaintiff fails to state a claim for relief against QIB, and therefore the SAC should be dismissed pursuant to Rule 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 679 (quoting *Twombly*, 550 U.S. at 555).

### A.   Plaintiff Failed to Allege Facts that Meet the Statutory Requirements to Constitute an Act of "International Terrorism."

Counts One through Six of Plaintiff's SAC, all of which allege violations of 18 U.S.C. § 2333, require that a U.S. national be injured by an act of "international terrorism," defined in § 2331(1). In Counts One and Two, Plaintiff alleges that QIB's material support of the Nusra Front and Ahrar al-Sham was an act of international terrorism. SAC ¶¶ 320, 332. In Counts Three through Six, Plaintiff also alleges that QIB aided and abetted or conspired with the Nusra Front and Ahrar al-Sham. None of these Counts allege that QIB had any contact with either the Nusra Front or Ahrar al-Sham. Instead, Plaintiff bases his claims on allegations that QIB provided routine "financial services" to Saad bin Saad al-Kabi and Qatar Charity and that it made a donation to Qatar Charity, none of which constitutes an act of international terrorism. *E.g.,* SAC ¶¶ 3-4, 10, 12, 250, 311, 313, 327, 347, 351.

The essential element that serves as the foundation for such a claim is that the defendant *knowingly* played a role in terrorist activities. Providing routine financial services or a charitable donation to persons who supported terrorist organizations, as alleged by Plaintiff, does not by itself rise to the requisite level of scienter to constitute an act of "international terrorism." Section

2331(1)(B) requires that the act be intended "(i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping."

Plaintiff merely makes formulaic recitals of these elements for six counts, as follows:

| Count One | Count Two | Counts Three & Four | Counts Five & Six |
|---|---|---|---|
| "QIB's material support of the Nusra Front objectively appears to have been intended to (a) intimidate and coerce the civilian populations of Syria and the United States, (b) influence the policy of the Syrian and United States governments by intimidation and coercion, and (c) affect the conduct of the Syrian and United States governments by mass destruction, assassination, and kidnapping." (SAC ¶ 318) | "QIB's material support of the Ahrar al-Sham objectively appears to have been intended to (a) intimidate and coerce the civilian populations of Syria and the United States, (b) influence the policy of the Syrian and United States governments by intimidation and coercion, and (c) affect the conduct of the Syrian and United States governments by mass destruction, assassination, and kidnapping. (SAC ¶ 330) | "The Nusra Front's kidnapping, hostage taking, torture, assault, battery, and extortion of Mr. Schrier appear to have been intended to (a) intimidate or coerce the civilian population of the United States, (b) influence the policy of the Qatari and United States governments by intimidation and coercion, and (c) affect the conduct of the Qatari and United States governments by kidnapping. In particular, and among other things, the Nusra Front's kidnapping, torture, and false imprisonment of Mr. Schrier appears to have been intended to (a) intimidate United States civilians who sought to report on the Syrian Civil War, (b) influence the Qatari government's policy of paying ransom for Western hostages and the United States government's policy of refusing to pay ransom to terrorists, and (c) affect the conduct of the Qatari and United States governments by inducing them to pay ransom for Mr. Schrier." (SAC ¶ 339) | "Ahrar al-Sham's kidnapping and hostage taking of Mr. Schrier appear to have been intended to (a) intimidate or coerce the civilian population of the United States; (b) influence the policy of the Qatari and United States governments by intimidation and coercion; (c) affect the conduct of the Qatari and United States governments by kidnapping. In particular, Ahrar al-Sham's kidnapping and hostage taking appears to have been intended to (a) intimidate United States civilians who sought to report on the Syrian Civil War, (b) influence the Qatari government's policy of paying ransom for Western hostages and the United States government's policy of refusing to pay ransom to terrorists, and (c) affect the conduct of the Qatari and United States governments by inducing them to pay ransom for Mr. Schrier." (SAC ¶ 373) |

Plaintiff's allegations are nothing more than conclusory and formulaic recitals of legal elements. They cannot serve as a basis for liability against QIB. Plaintiff alleges no facts that would allow this Court to reach the speculative conclusion that there was an act of "international terrorism," as defined by § 2331(1)(B). For example, Plaintiff alleges that "QIB had anti-terrorism funding policies" (SAC ¶ 240) and therefore "*would have known* of al-Kabi's use of the QIB account to finance the Nusra Front." SAC ¶ 241 (emphasis added). Plaintiff alleges that "QIB's due diligence policies and the [unspecified] information they yielded provide *circumstantial* evidence that QIB expressly and *tacitly* agreed with al-Kabi to allow him to use the QIB account to fundraise for the Nusra Front." *Id.* ¶ 252 (emphasis added). Plaintiff makes similarly equivocal allegations that QIB "knew or intended" some of the charitable donation to Qatar Charity would "reach Ahrar al-Sham." SAC ¶ 328; SAC ¶¶ 312, 315, 317, 329 ("knew *or recklessly disregarded*") (emphasis added); SAC ¶¶ 394, 402, 410, 417, 423, 430 ("knew *or should have known*") (emphasis added). Plaintiff used the phrase "*upon information and belief*" seven times, indicating he is not confident enough in his allegations to make them directly.[13] This

---

[13] Plaintiff used the phrase "on information and belief" 23 times in his original Complaint. After the Court stated that it "accord[s] little weight" to allegations made "on information and belief," Plaintiff

Circuit has rejected such allegations as "vague and conclusory" and failing "to provide any factual content" to support inferences of liability. *See In re Chiquita Brands Int'l, Inc.*, 792 F. Supp. 2d 1301, 1347 (S.D. Fla. 2011). Plaintiff's speculations about what QIB knew or intended are insufficient to make the leap of logic that QIB intended to achieve the objectives required in § 2331(1)(B).

Other cases have held that providing financial services and charitable contributions to persons who support a terrorist organization is insufficient to meet the requirements of § 2331(1)(B). In *Linde v. Arab Bank, PLC*, 882 F.3d 314, 326-27 (2d Cir. 2018), the Second Circuit held that "providing financial services to a known terrorist organization" does not invariably equate to an act of international terrorism. *See also Strauss v. Crédit Lyonnais, S.A.,* 379 F. Supp. 3d 148, 160-61 (E.D.N.Y. 2019) ("Defendant merely provided banking services … which does not satisfy the intent required by § 2331(1)(B)."); *Siegel*, 933 F.3d at 225 (Plaintiffs "did not advance any non-conclusory allegation that AQI received any of those funds or that HSBC knew or intended that AQI would receive the funds.").

To constitute an act of international terrorism, Plaintiff also must establish that the alleged activities "involve violent acts or acts dangerous to human life[.]" 18 U.S.C. § 2331(1)(A). In this respect, Plaintiff focuses on the acts of the Nusra Front and Ahrar al-Sham, rather than QIB. The acts allegedly committed by QIB are insufficient to meet this requirement:

> [P]roviding routine financial services to members and associates of terrorist organizations is not so akin to providing a loaded gun to a child as to … compel a finding that as a matter of law, the services were violent or life-endangering acts that appeared intended to intimidate or coerce civilians or to influence or affect governments.

*Linde*, 882 F.3d at 326-27. In *Strauss*, 379 F. Supp. 3d at 159, the court found that donations to "13 Charities [that] were [alleged to be] controlled by Hamas founders, without more, is insufficient to prove that Defendant's activities were violent or endangered human life.*"* Therefore, Plaintiff's allegations concerning the provision of financial services and a donation fail to sufficiently plead the requirements of § 2331(1)(A), and Counts One through Six must be dismissed.

---

removed the majority of these statements from his First Amended Complaint. Hr'g Tr. (Aug. 12, 2020) at 17:17-18:7; ECF No. 76. Plaintiff's counsel represented that paragraph 194 of the Complaint contains "an upon information and belief allegation, and we were careful where we alleged that versus not alleging it, consistent with our obligations under Rule 11 … because of the limits of our knowledge at this point." *Id.* at 51:18-52:8. However, Plaintiff removed the phrase from paragraph 194 when he filed his First Amended Complaint one week after the Court granted the Motion to Dismiss, notwithstanding the fact that no documents or information had yet been produced in jurisdictional discovery. *Compare* ECF No. 1, ¶ 194 *with* ECF No. 76, ¶ 203. Plaintiff's SAC also does not contain this phrase even though jurisdictional discovery did not identify any U.S. correspondent account transaction processing a donation to the Madid campaign. SAC ¶ 229.

**B. Plaintiff Failed to Plausibly Allege Primary Liability in Counts One and Two.**

Plaintiff's first two counts allege primary liability under the ATA pursuant to 18 U.S.C. §§ 2333(a), 2339A, and 2339B for providing "material support" to the Nusra Front and Ahrar al-Sham.

**1. Plaintiff failed to sufficiently allege proximate causation.**

Plaintiff fails to allege facts that QIB proximately caused his injuries. Recovery under § 2333 is not permitted "on a showing of less than proximate cause." *Rothstein v. UBS AG*, 708 F.3d 82, 95 (2d Cir. 2013). "[T]he fact that there is an intervening cause of the plaintiff's injury may foreclose a finding of proximate cause." *Id.* at 92. To establish "proximate causation, the central question … is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). This Court has adopted the "substantial factor" test for proximate cause, which places the burden on plaintiffs to show that the defendant's conduct "was a material and 'substantial factor' in bringing about their injuries" and those injuries were a "reasonably foreseeable consequence of that conduct." *In re Chiquita Brands Int'l Inc.*, 284 F. Supp. 3d 1284, 1317 (S.D. Fla. 2018).

For Count One, Plaintiff makes the conclusory allegation that his injuries were "proximately caused by QIB's material support of the Nusra Front." SAC ¶ 323. Plaintiff does not allege facts that QIB directly supported the Nusra Front or that QIB's support of the Nusra Front was a material and substantial factor in bringing about his injuries. Instead, Plaintiff alleges that QIB supported al-Kabi by letting al-Kabi use a bank account to funnel money al-Kabi to the Nusra Front. SAC ¶ 311. However, Plaintiff alleges that al-Kabi opened an account at QIB "[n]o later than May 2013" and al-Kabi did not begin soliciting donations for the Madid fundraising campaign until "around May 2013." SAC ¶¶ 115, 135. The first alleged tweet connecting al-Kabi to a QIB bank account was on June 2, 2013. SAC ¶ 150. Plaintiff does *not* allege that al-Kabi used his QIB account to transfer funds to the Nusra Front before Plaintiff was kidnapped on December 31, 2012 or freed himself on July 29, 2013. *Id.* ¶ 42. Plaintiff's allegations that QIB provided financial services to al-Kabi starting in *May 2013* could not have proximately caused his kidnapping in *December 2012,* and there are no alleged facts that would establish financial services starting in May 2013 proximately caused Plaintiff's continued confinement before July 29, 2013. Thus, the SAC establishes no direct link between QIB and the Nusra Front, or that Plaintiff's injuries were a reasonably foreseeable consequence.

Courts have voiced concerns with stretching ATA liability too far down the chain of responsible causation. *See Fields v. Twitter, Inc.,* 881 F.3d 739, 749 (9th Cir. 2018) ("[W]e are troubled by the seemingly boundless litigation risks that would be posed by extending the ATA's bounds as far as foreseeability may reach."). Therefore, providing "'routine banking services to organizations and

- 14 -

individuals said to be affiliated with' terrorists does not necessarily establish causation." *Linde*, 882 F.3d at 327; *Terrorist Attacks on September 11, 2001,* 714 F.3d at 124 (holding that mere provision of routine banking services to terrorists does not necessarily support causation). Holding QIB liable for a terrorist act merely because it allegedly provided financial services to a person affiliated with the Nusra Front is precisely the boundless liability that proximate cause is meant to protect against.

Plaintiff's allegations in Counts One and Two relating to Qatar Charity are even more convoluted. Plaintiff alleges that QIB supported Qatar Charity "by making a donation to Qatar Charity to support Ahrar al-Sham and the Syrian Islamic Front, which fought alongside and shared resources with the Nusra Front." SAC ¶¶ 313, 327. These allegations are insufficient to meet proximate causation. *See Terrorist Attacks on Sept. 11, 2001,* 714 F.3d at 124 ("[D]efendants are alleged to have provided funding to purported charity organizations known to support terrorism that, in turn, provided funding to al Qaeda and other terrorist organizations. These allegations are insufficient for proximate causation."). Plaintiff does not allege that QIB participated in his kidnapping or provided money directly to Ahrar al-Sham or the Nusra Front; nor does he allege that the charitable donation to Qatar Charity actually was transferred to Ahrar al-Sham or the Nusra Front or aided in his kidnapping. *See id.* And, again, Plaintiff has a timing problem. The SAC fails to allege that QIB made its charitable contribution *before* Plaintiff was held captive by Ahrar al-Sham. *See* SAC ¶¶ 10 (alleging QIB made a donation to Qatar Charity "in 2013"), 45 (alleging Plaintiff was held captive by Ahrar al-Sham from May 5, 2013 to June 20, 2013). Therefore, Plaintiff has failed to allege facts that would establish any charitable donation proximately caused his injuries. *See Julin v. Chiquita Brands Int'l, Inc.*, 690 F. Supp. 2d 1296, 1314 (S.D. Fla. 2010) ("[t]o sufficiently allege proximate cause, Plaintiffs must also allege that their payments to [the terrorist organization] occurred prior to, not subsequent to, the kidnappings at issue."). The lack of proximate cause requires dismissal of both Counts One and Two.

**2. Plaintiff failed to allege sufficient facts that would establish QIB knowingly provided material support to either the Nusra Front or Ahrar al-Sham.**

Under Count Two, Plaintiff is required to allege facts that, if true, would state a claim under § 2339A, which makes it unlawful for a person to provide material support or resources to a foreign terrorist organization, "knowing or intending that they are to be used in preparation for, or in carrying out, a violation of" certain enumerated offenses. This Court has held that:

> Section 2339A requires proof of a heightened *mens rea*. To be liable under 2339A, the defendant must have provided the support or resources acting with knowledge or intent that the support would be used in preparation for, or in carrying out, specific terror-related crimes. Thus, the mental state required under § 2339A 'extends both to the support itself, *and* to the underlying purposes for which the support is given,' and

an ATA plaintiff proceeding on a 2339A predicate must show evidence of the defendant's specific knowledge of, or intent to further, the specified underlying crime.

*In re Chiquita Brands Int'l, Inc.*, 284 F. Supp. 3d at 1309 (citation omitted) (emphasis in original). In addition to the statutory requirements, "ordinary tort requirements of 'fault, state of mind, causation, and foreseeability must be satisfied' in an ATA action." *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 389 (7th Cir. 2018). Since "the ATA provides for treble damages and cost shifting, a plaintiff must prove intentional misconduct by the defendant." *Id.* at 390.

Plaintiff alleges that QIB provided material support and conspired with Qatar Charity to provide material support to Ahrar al-Sham by giving Qatar Charity 500,000 Qatari riyals. SAC ¶¶ 326-27. As established in Section II.A., *supra*, Plaintiff failed to allege facts establishing that QIB knew or intended its charitable donation "would reach Ahrar al-Sham and would be used by Ahrar al-Sham" to commit an offense. *Id.* ¶ 328. QIB's knowledge is a critical element, without which there would be no liability. Therefore, Count Two must be dismissed.

Count One is based on § 2339B, which makes it unlawful for a person to knowingly provide material support or resources to a foreign terrorist organization. "A person must have knowledge that the organization is a designated terrorist organization, that the organization has engaged or engages in terrorist activity, or that the organization has engaged or engages in terrorism," as those terms are defined in § 2339B and other specified statutes. Plaintiff alleges that QIB provided material support and conspired with al-Kabi to provide material support to the Nusra Front, and that QIB provided material support and conspired with Qatar Charity to provide material support to Ahrar al-Sham, which in turn supported the Nusra Front. SAC ¶¶ 311, 313-14. Plaintiff fails to allege any non-conclusory facts that QIB had actual knowledge that either al-Kabi, who was not designated as a terrorist until August 2015, or Qatar Charity were associated with either the Nusra Front or Ahrar al-Sham. *Id.* ¶ 111. There are also no allegations that QIB had any direct contact with the Nusra Front, let alone knowingly provided support directly to the Nusra Front. Therefore, § 2339B cannot be satisfied, and Count One must be dismissed.

### C. Plaintiff Failed to Plead Secondary Liability against QIB under Section 2333(d).

Counts Three through Six, which allege secondary liability under the ATA based on aiding and abetting and conspiracy theories, fail to state a claim under Rule 12(b)(6). Section 2333(d) provides for liability "for an injury arising from an act of international terrorism committed, planned, or authorized by an organization that had been designated as a foreign terrorist organization … as of the date on which such act was committed, planned, or authorized." Liability may be claimed against any

- 16 -

person "who aids and abets, by knowingly providing substantial assistance, or who conspires with the person *who committed* such an act of international terrorism." *Id.* (emphasis added).

> In enacting JASTA, Congress instructed that the 'proper legal framework for how [aiding and abetting] liability should function' under the ATA is the framework identified in *Halberstam*. *Halberstam* set forth three elements for finding aiding and abetting liability in the civil context: (1) the party whom the defendant aids must perform a wrongful act that causes an injury, (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance, and (3) the defendant must knowingly and substantially assist the principal violation.

*Strauss*, 379 F. Supp. 3d at 155-56 (citations omitted).

1. **Plaintiff failed to allege facts that QIB directly aided and abetted or conspired with the Nusra Front or Ahrar al-Sham.**

Plaintiff's artful drafting in Counts Three and Four alleges legal conclusions that Plaintiff aided and abetted and conspired with the Nusra Front. SAC ¶¶ 36, 343. Plaintiff's factual allegations, however, do not include any alleged direct contact, communications, financial services, donations, or other conduct between QIB and the Nusra Front. Section 2333(d) creates a cause of action against a "person who aids and abets or conspires with the person *who committed* the terrorist act." *Weiss v. Nat'l Westminster Bank PLC*, 278 F. Supp. 3d 636, 650 (E.D.N.Y. 2017). "By the plain language of the statute, § 2333(d) does not create liability against a person who aids and abets or conspires with the person who merely authorized (rather than committed) the terrorist act." *Id.* Plaintiff alleges that Nusra Front committed the terrorist act. However, all of Plaintiff's factual allegations allege conduct between QIB and al-Kabi and Qatar Charity, neither of which is alleged to have committed (or even planned or authorized) the acts committed against Plaintiff. By failing to allege any direct acts with Nusra Front, Plaintiff has failed to state a claim in Counts Three and Four.

Plaintiff makes similar conclusory allegations in Counts Five and Six that QIB aided and abetted Ahrar al-Sham, the Nusra Front, Qatar Charity, and "others" to support the terrorist acts. SAC ¶¶ 379, 384, 389. Plaintiff alleges that Ahrar al-Sham committed the terrorist acts. However, all of Plaintiff's factual allegations allege conduct between QIB and al-Kabi and Qatar Charity, neither of which is alleged to have committed the terrorist acts. Therefore, these Counts also fail to state a claim.

2. **Plaintiff failed to plead facts that QIB knowingly aided and abetted the Nusra Front or Ahrar al-Sham.**

In Counts Three and Five, Plaintiff alleges that QIB knowingly aided and abetted the Nusra Front and Ahrar al-Sham and "was generally aware of and knew its role in financing" their acts of international terrorism. SAC ¶¶ 351, 380. This generic allegation is insufficient to state a claim.

> Aiding and abetting requires the secondary actor to be aware that, by assisting the principal, it is itself assuming a role in terrorist activities." For a defendant that is a financial institution, this requires a showing that "in providing [financial] services, the bank was generally aware that it was thereby playing a role *in [the terrorist organization's] violent or life-endangering activities*," which "*requires more than the provision of material support* to a designated terrorist organization.

*Strauss*, 379 F. Supp. 3d at 155-56 (internal citations omitted) (emphasis added).

As set forth in Section II.A., *supra,* Plaintiff has failed to plead specific facts to support the conclusory allegation that QIB knowingly played a role in terrorist activities. Plaintiff does not even allege that QIB provided financial services to the Nusra Front or Ahrar al-Sham. Nor does Plaintiff allege that QIB had knowledge that it was playing a role in violent or life-endangering activities by providing its banking services. Here, the allegations are even further removed as Plaintiff (1) does not allege that financial services and charitable donations were provided either before he was kidnapped or before he was freed; (2) does not allege that any money actually was provided to the Nusra Front or Ahrar al-Sham before he was freed; (3) does not allege that Ahrar al-Sham was a designated terrorist organization, and (4) alleges that the financial services and charitable donations were provided to two supporters of a terrorist organization—al-Kabi, who was not designated as a terrorist until 2015 (well after Plaintiff was freed), and Qatar Charity, which Plaintiff has never alleged was designated as a terrorist organization. Therefore, Plaintiff failed to plausibly plead that QIB knowingly aided and abetted the Nusra Front and Ahrar al-Sham to commit acts of international terrorism against him.

**3.   Plaintiff failed to plead facts that QIB conspired with Nusra Front and Ahrar al-Sham.**

In Counts Four and Six, Plaintiff alleges that QIB conspired with the Nusra Front and Ahrar al-Sham. However, an ATA-based conspiracy claim cannot be used "to hold defendants liable who were not the proximate cause of the plaintiff's injury." *Kemper*, 911 F.3d at 395 (business dealings that incidentally assisted a separate terrorism-related conspiracy do not suggest bank agreed to join that conspiracy). Therefore, mere allegations that a bank provided financial services to a terrorist organization are insufficient to allege an unlawful agreement or conspiracy.

**III.   THE COURT SHOULD DISMISS THE STATE LAW CLAIMS**

**A.   Plaintiff's State Law Claims Fail to State a Claim for Relief.**

Counts Seven to Twelve allege claims based on the theory that, under some unknown state's law, QIB aided and abetted false imprisonment, intentional infliction of emotional distress, battery, and assault (the "**State Law Claims**"). Plaintiff's State Law Claims in the SAC are identical to the allegations in his original Complaint. *Compare* ECF No. 1, ¶¶ 326-69 *with* SAC ¶¶ 391-434.

- 18 -

Plaintiff fails to establish that Florida state law, or any state law, applies to his claims against QIB.[14] No Florida court has ever recognized general civil liability for aiding and abetting, and this Court should decline to do so here. Under Florida law, causes of action are recognized by the decisions of its appellate courts or legislative decree. *United States v. Dempsey*, 635 So. 2d 961, 964 (Fla. 1994). No Florida court has expressly affirmed the existence of any of the State Law Claims. *See ZP No. 54 Ltd. P'ship v. Fidelity & Deposit Co. of Maryland*, 917 So. 2d 368, 371 (Fla. 5th DCA 2005) (noting a "dearth of authority" that aiding and abetting constitutes a cause of action). Nor is there any statute establishing these causes of action. Therefore, these claims must be dismissed.

Assuming, *arguendo*, that the claims asserted by Plaintiff were recognized under Florida law, Plaintiff fails to allege facts sufficient to establish liability. Claims for aiding and abetting generally require the following elements: (1) the existence of an underlying wrong; (2) the defendant's knowledge of that wrong; and (3) the defendant having provided substantial assistance for the commission of that wrong. *Freeman v. JPMorgan Chase Bank, N.A.*, 675 F. App'x 926, 934-35 (11th Cir. 2017). Knowledge of the tortious conduct against the plaintiff is an essential element of aiding and abetting in every context in which it has been acknowledged by a Florida court. *Id.* at 935 ("[T]o establish that a bank substantially assisted a fraudulent scheme to steal trust funds, knowledge of the underlying fraud 'is the crucial element.'") (citation omitted). This "will only be satisfied if the plaintiff pleads facts demonstrating that the [secondary wrongdoer] had '*actual knowledge*' of the wrongdoings," as opposed to allegations that he "should have known about the underlying wrong." *Angell v. Allergan Sales, LLC*, Case Nos. 3:18-cv-282-J-34JBT & 3:18-cv-283-J-34JBT, 2019 U.S. Dist. Lexis 142768, at *26, 30 (M.D. Fla. Aug. 22, 2019) (citations omitted).[15] As set forth in Section II.A, *supra*, the SAC is

---

[14] In fact, Plaintiff made the extraordinary admission in his opposition to QIB's Motion to Dismiss the original Complaint that he does not know whether there is a legal basis for these State Law Claims. *See* ECF No. 38, at 20 ("Applicable law *may* support [Plaintiff's] theories for relief.") (emphasis added). Plaintiff should not have reasserted these claims against QIB if he does not know whether there is any basis in law for his incendiary accusations, especially when he was already aware of the infirmities in these claims as a result of the briefing and oral argument on the first Motion to Dismiss.

[15] "[A]llegations which demonstrated merely constructive knowledge, recklessness, or gross negligence cannot satisfy the 'knowledge' element of an aiding and abetting claim under Florida law." *Angell*, 2019 U.S. Dist. Lexis 142768 at *28. "Conclusory statements that a defendant *actually knew* are insufficient to support an aiding and abetting claim where the facts only suggest that the defendant *should have known* that something was amiss." *Id.* at *30 (emphasis in original). The Eleventh Circuit has held that allegations that "arouse suspicions" or show only that a bank "should have known" of a Ponzi scheme failed to state a claim for aiding and abetting. *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 907 (11th Cir. 2012); *Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 993 (11th Cir. 2014).

devoid of factual allegations that demonstrate QIB had actual knowledge of the underlying torts committed against Plaintiff. Therefore, the Court should dismiss the State Law Claims.

**B.   Plaintiff's State Law Claims are Barred by the Statute of Limitations.**

Even if this Court were inclined to establish these four new causes of action in Florida, the State Law Claims are barred by the statute of limitations. District courts are empowered to dismiss a claim on statute of limitations grounds if "it is apparent from the face of the complaint that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 846 (11th Cir. 2004).

By default, these State Law Claims are subject to a four-year statute of limitations period because they do not fall within any enumerated category under Florida's statute of limitations. *See* Fla. Stat. § 95.11(3)(p). The statute of limitations runs from the time the cause of action accrues. Fla. Stat. § 95.031(a). For aiding-and-abetting claims, the statute of limitations begins to run when the underlying tort occurs. *See, e.g., Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*, 748 F.3d 771, 780-81 (11th Cir. 2015). The SAC alleges that the intentional torts committed against Plaintiff occurred from December 2012 until July 2013. SAC ¶¶ 39, 42, 86. As Plaintiff's injuries occurred, at the latest, in July 2013, the four-year statute of limitations expired in July 2017, which was nearly three years before Plaintiff filed his original Complaint. The State Law Claims are time barred and should be dismissed.[16]

**C.   The Court Should Not Exercise Supplemental Jurisdiction Over the State Law Claims.**

Because this Court's subject matter jurisdiction has been invoked pursuant to original question jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 2338, the basis for adjudicating the State Law Claims is by virtue of this Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367. Pursuant to 28 U.S.C. § 1367(c)(3), a court may decline to exercise supplemental jurisdiction when it dismisses "all claims over which it has original jurisdiction." As Plaintiff has failed to state any claim under the ATA, the Court should decline to exercise supplemental jurisdiction. The Court should also decline to exercise jurisdiction because the State Law Claims raise novel and complex issues of Florida state law. *See* 28 U.S.C. § 1367(c)(1); *Borges v. City of W. Palm Beach*, 858 F. Supp. 174, 177 (S.D. Fla. 1993).

---

[16] Plaintiff has asserted that "whatever law applies," he could not have discovered his tort claims within the applicable statute of limitations. ECF No. 38, at 20. For causes of action arising under state law, this Court must apply the statute of limitations of the state in which it sits. *Saxton v. ACF Indus.*, 254 F.3d 959, 961-62 (11th Cir. 2001). Florida's "discovery rule" does not apply because it is not among the tolling provisions expressly identified in the applicable statutes.

## CONCLUSION

For all of these reasons, Defendant respectfully requests that the Court grant its motion to dismiss Plaintiff's claims.

Dated: October 25, 2021                          Respectfully submitted,

_/s/ Shawn C. Layman_
Shawn C. Layman (FBN 48112)
   slayman@crowell.com
T. Michael Guiffre (DC Bar No. 465745)
   (pro hac vice)
   mguiffre@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 654-6704

Aryeh L. Kaplan (FBN 60558)
   Aryeh.kaplan@pillsburylaw.com
Markenzy Lapointe (FBN 172601)
   Markenzy.lapointe@pillsburylaw.com
Ariella J. Ederi (FBN 1002965)
   Ariella.ederi@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
600 Brickell Avenue, Suite 3100
Miami, FL 33131
Telephone: (786) 913-4900

_Attorneys for Defendant Qatar Islamic Bank_

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2021, a true and correct copy of a true and correct copy of the foregoing was served via transmission of Notices of Electronic Filing generated by CM/ECF on all counsel or parties of record.

_/s/ Shawn C. Layman_
Shawn C. Layman (FBN 48112)

- 21 -