EXHIBIT

B

```
 1              IN THE UNITED STATES DISTRICT COURT

           FOR THE SOUTHERN DISTRICT OF FLORIDA

 2                  FORT LAUDERDALE DIVISION

 3                Case No. 0:20-cv-60075-RKA

 4

 5

    MATTHEW SCHRIER,              )

 6                               )

              Plaintiff,         )

 7                               )

    vs.                          )

 8                               )

    QATAR ISLAMIC BANK,           )

 9                               )

              Defendant.          )

10  ------------------------------

11

12

13              REMOTE DEPOSITION OF

14                 USMAN GULZAR

15

16              September 23, 2021

17

18

19

    Job No.: 107941

20

21

    Reported by:

22

    Doreen Fox Krenchicki, CM, RPR, CRR

23

24

25
```

```
1                      September 23, 2021

2                      6:00 a.m. - 9:09 a.m.

3

4

5

6                 Remote deposition taken before Doreen

7    Fox Krenchicki, Registered Professional Reporter,

8    Certificate of Merit Reporter, Certified Realtime

9    Reporter and Notary Public for the State of

10   Florida at Large, pursuant to Notice of Taking

11   Deposition filed in the above cause.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                     A P P E A R A N C E S

 2                       (All Remotely)

 3

 4          BONDURANT, MIXSON & ELMORE, LLP

 5          Counsel for the Plaintiff

 6               3900 One Atlantic Center

 7               1201 West Peachtree Street, N.W.

 8               Atlanta, Georgia 30309

 9          BY:  MATTHEW R. SELLERS, ESQ.

10               sellers@bmelawcom

11               404-881-4100

12          and  KAMAL GHALI, ESQ.

13

14

15          CROWELL & MORING, LLP

16          Counsel for the Defendant

17          BY:  T. MICHAEL GUIFFRE, ESQ.

18               1001 Pennsylvania Avenue, N.W.

19               Washington, DC 20004

20               mguiffre@crowell.com

21               202-624-2501

22

23

24

25
```

```
 1              A P P E A R A N C E S (Continued)

 2                     (All Remotely)

 3

 4

 5         PILLSBURY WINTHROP SHAW PITTMAN

 6         Co-Counsel for the Defendant

 7         BY:  ARYEH L. KAPLAN, ESQ.

 8              600 Brickell Avenue

 9              Suite 3100

10              Miami, FL 33131

11              aryeh.kaplan@pillsburylaw.com

12              786-913-4883

13

14

15

16         ALSO PRESENT:

17         Lindsey A. Harrison (Bondurant Law Firm)

18

19

20

21

22

23

24

25
```

1        Mr. Guiffre is going to have to launch or

2        bring those objections clearly so they're

3        part of the record.

4                MR. SELLERS:  We are happy to let you

5        have a standing objection to scope.  We're

6        well aware of the objections, but it is not

7        proper to instruct the witness not to answer

8        a question if he knows the answer, except to

9        preserve privilege.

10               MR. GUIFFRE:  It is appropriate for

11       me to instruct the witness not to answer a

12       question to preserve privilege which is what

13       I just did.  And I explained it when you

14       asked me to explain it.

15               It's also appropriate for me to

16       instruct the witness not to answer in order

17       to enforce a limitation ordered by this

18       court.  And as you know, this court has

19       ordered limited jurisdictional discovery.

20       We're going to enforce that through

21       instructing the witness not to answer.

22               If you would like, from now on, I

23       will just say objection, I instruct the

24       witness not to answer, and we can proceed.

25               MR. SELLERS:  Let's do it that way.

```
 1        relying on for the proposition that you can

 2        instruct a witness not to answer for a non --

 3        when the objection is not based on privilege,

 4        in the absence of a protective order?

 5                MR. GUIFFRE:  Sure.

 6                Federal Rule of Civil Procedure

 7        30(c)(2) permits counsel to instruct a

 8        witness not to answer a question in order to

 9        enforce a court order.

10                In this case, the court has ordered

11        limited jurisdictional discovery and we are

12        enforcing that order.

13                Now, I believe you said that the

14        relevant time period is in 2012 and 2013, so

15        I don't understand why you're asking

16        questions about the bank's current

17        operations.

18                MR. GHALI:  Mr. Guiffre, we just want

19        the record clear.

20                You purport to be enforcing Judge

21        Altman's order by instructing the witness not

22        to answer.  That is your position, that the

23        witness should not answer questions that you

24        perceive to be beyond the scope because you

25        are enforcing Judge Altman's order.  Is that
```

```
 1        your position?

 2                MR. GUIFFRE:  That's correct.

 3   BY MR. SELLERS:

 4        Q.     To get back to the question,

 5   Mr. Gulzar.

 6                Would you agree that by doing these

 7   cross-border payments, QIB completed transactions

 8   in the United States?

 9        A.     How would you define completed

10   transactions in the United States?

11        Q.     QIB had accounts in the United

12   States, correct?

13        A.     We maintained accounts with banks in

14   the United States.

15        Q.     And when you used them, there were

16   debits and credits that happened in the United

17   States, correct, in that account?

18                MR. GUIFFRE:  I object.

19                You can answer the question.

20                THE WITNESS:  Transactions passed

21        through the account, yes.

22   BY MR. SELLERS:

23        Q.     Okay.  You would agree that those

24   transactions happened in the United States?

25                MR. GUIFFRE:  I object.
```

```
 1   maintain -- I'm sorry.

 2        Q.      Something must happen in the United

 3   States, no?

 4             MR. GUIFFRE:  I object.

 5             THE WITNESS:  We -- as I said in the

 6        beginning, the bank accounts that we maintain

 7        with the banks in the United States is like

 8        any other bank that we would be maintaining

 9        with any other bank across the world.

10             For example, in the -- for example if

11        we have correspondent relationships with

12        Japan, we would have accounts in JPY.  If we

13        are -- if we have relationships in Singapore,

14        we would have the Singaporean dollar account

15        with Singaporean banks.  And we would

16        facilitate for not only ourselves, as well as

17        our Qatari client base, to facilitate trade,

18        treasury requirements, et cetera, through

19        those accounts.

20   BY MR. SELLERS:

21        Q.      How did having correspondent accounts

22   benefit QIB?  US correspondent accounts.

23        A.      The dollar correspondent

24   relationships -- we use the dollar account for not

25   only ourselves, but for our Qatari client base who
```

1    have dollar requirements for US dollar.

2         Q.      So having US correspondent accounts

3    allowed you to give clients access to the US

4    financial system.

5                 MR. GUIFFRE:   Objection.

6    BY MR. SELLERS:

7         Q.      Is that accurate?

8         A.      No, sir.

9                 Let me give you an example.

10                If a Qatari client or a bank requests

11   to import cars from the United States and it wants

12   to pay the beneficiary US based company, then the

13   payment would be facilitated through QIB with a

14   correspondent relationship to pass on the funds to

15   the beneficiary in the United States.

16                Now, if the similar trade on the

17   other side, if the cars are imported in Japan, if

18   somebody wants to have those settled in US

19   dollars, not in the local currency, we would

20   facilitate that payment as well.

21        Q.      How is -- my question was; having

22   these accounts allowed you to give your clients

23   access to the US financial system, and you said no

24   and then you gave an example.

25                How is the example you gave different



16      Q.      All right.  I want to move on to,

17  we're discussing the mechanics of a correspondent

18  bank account transaction.

19              You've mentioned you have accounts

20  all over the world.

21              Why would QIB choose to send a

22  transaction through the United States as opposed

23  to elsewhere?

24      A.      Right.  It largely depends on the

25  beneficiary's requirements.  If a beneficiary

Case 0:20-cv-60075-RKA   Document 158-3   Entered on FLSD Docket 11/08/2021   Page 12 of 14

```
 1    wants US dollar, the payments get settled through

 2    a dollar correspondent account.  If the

 3    beneficiary wants JPY, which is the Japanese yen,

 4    the payment would go through a Japanese

 5    correspondent bank.  Similarly, if they wanted a

 6    Singaporean dollar, the payment would go through a

 7    Singaporean correspondent bank account.

 8        Q.      I think we might get some clarity if

 9    we look at some of your documents?

10             MR. SELLERS:  Lindsey, could you put

11        up tab 3?  We'll mark this as Plaintiff's

12        Exhibit 4.

13             (Whereupon Exhibit 4, FIN 103, was

14        marked for Identification.)

15    BY MR. SELLERS:

16        Q.      We received this from your bank.

17    This document reflects instructions to send to --

18    to execute a correspondent account transaction?

19        A.      Let me read through this.  Just give

20    me a second.

21             Yes, sir.  What was your question

22    again, sir?

23        Q.      Does this document reflect

24    instructions to complete a correspondent account

25    transaction?
```

```
 1                    MR. GUIFFRE:  I object.  I instruct

 2         the witness not to answer.

 3                    MR. SELLERS:  I have no more

 4         questions.

 5                    Michael, I don't know if you do or

 6         not.

 7                    MR. GUIFFRE:  Can we take five

 8         minutes and then we'll close it out.

 9                    MR. SELLERS:  Sure.

10                    MR. GUIFFRE:  Okay.  Thank you.

11                    (Whereupon a recess was taken.)

12                    MR. GUIFFRE:  I would say that at the

13         moment we don't have any questions to ask of

14         the witness.  However, I would recommend that

15         we leave this deposition open.  Obviously

16         there are some issues that you plan to raise,

17         we have some outstanding motions with the

18         court that may affect the scope of discovery.

19                    As I indicated at the beginning of

20         the deposition, we had asked to meet and

21         confer about these topics on August 18th,

22         2021 and then several more times after that.

23         We have not yet conferred about any of those

24         topics.

25                    Now that we have your questions, we
```

## REPORTER'S DEPOSITION CERTIFICATE

STATE OF FLORIDA

COUNTY OF MIAMI-DADE

      I, DOREEN FOX KRENCHICKI, CCR, CM, RPR, CRR, certify that I was authorized to and did stenographically report the deposition of ^ WITNESS; that a review of the transcript was not requested; and that the transcript is a true and complete record of my stenographic notes.

      I do further certify that I am neither a relative nor employee nor attorney nor counsel of any of the parties to this action, and that I am neither a relative nor employee of such attorney or counsel, and that I am not financially interested in the action.

      DATED this ^ day of ^ month 2017.

DOREEN FOX KRENCHICKI,
CCR, CM, RPR, CRR