EXHIBIT F

1001 Pennsylvania Avenue, N.W., Washington, DC  20004-2595 ■ p202 624-2500 ■ f202 628-5116



T. Michael Guiffre
(202) 624-2501
MGuiffre@crowell.com

September 30, 2021

**VIA E-MAIL**

Matthew R. Sellers, Esq.
Bondurant, Mixson & Elmore, LLP
1201 W. Peachtree St., N.W., Suite 3900
Atlanta, GA 30309

      Re:    *Schrier v. QIB*, No. 20-cv-60075 (S.D. Fla.)

Dear Matthew,

    Your September 29, 2021 letter ineffectively attempts to overcome Plaintiff's failure to respond to QIB's extensive efforts to meet and confer in advance of the deposition, and your posturing evidences the fact that Plaintiff has no interest in meeting the Court's requirement that the parties *shall* confer before filing discovery motions. As QIB offered many times before and during the deposition, we will confer in good faith to minimize, to the extent possible, any disputes that must be resolved by the Court. Plaintiff should do so, too.

    QIB provided ample notice of its objections to Plaintiff's Rule 30(b)(6) deposition topics and refusal to designate a witness for certain topics, and QIB repeatedly offered to meet and confer about its objections:

- QIB served objections to the original deposition notice on August 18, 2021 and offered to meet and confer about the deposition topics more than five weeks before the deposition. Plaintiff did not acknowledge receipt of QIB's objections or respond to QIB's offer to confer about the matters for examination.

- QIB reiterated its objections and Plaintiff's failure to confer in QIB's September 8, 2021 letter.

- Plaintiff responded on September 10, 2021 by noting his understanding that QIB would prepare to respond during the deposition according to the Court's rulings on the pending discovery motions. Plaintiff did not, however, address QIB's objections to the deposition topics or respond to QIB's offer to meet and confer.

- QIB again provided notice of its objections to the designated topics on September 15, 2021 and expressed its hope that these issues could be resolved appropriately.

Crowell & Moring LLP ■ www.crowell.com ■ Washington, DC ■ New York ■ San Francisco ■ Los Angeles ■ Orange County ■ London ■ Brussels

September 30, 2021
pg. 2

- QIB promptly served objections to Plaintiff's September 16, 2021 amended deposition notice, which did not amend any of the topics to which QIB had objected. In a September 19, 2021 letter, QIB reiterated that Plaintiff had never responded to QIB's offer to confer in an effort to resolve QIB's objections.

- Plaintiff responded on September 20, 2021 by repeating his understanding that QIB would answer questions in accordance with the Court's rulings on pending discovery motions. Plaintiff did not respond to QIB's offers to meet and confer and did not express any disagreement with QIB's objections to the deposition topics.

- As reflected in QIB's September 21, 2021 letter, I affirmatively raised this issue during a call concerning deposition scheduling and confirmed that Plaintiff's sole concern was whether QIB would testify in accordance with the Court's rulings on pending discovery motions, to which we agreed. Plaintiff never raised any issues concerning QIB's objections to the deposition topics and its clear notice that it would not designate a witness for certain topics.

- Plaintiff responded on September 21, 2021, by saying that QIB was required to answer all deposition questions regardless of its objections to the topics in the deposition notice. Once again, Plaintiff did not make any effort to meet and confer about QIB's objections.

- Consistent with its many notices to Plaintiff during the preceding five weeks, QIB stood by its objections during the September 23, 2021 deposition. During the deposition, QIB again offered to meet and confer about its objections, and it offered to leave the deposition open while the parties attempted to resolve the objections.

Plaintiff was obligated under Rule 30(b)(6) to "confer in good faith about the matters for examination." However, Plaintiff ignored QIB's numerous offers and efforts to meet and confer about QIB's objections to the deposition topics and chose to go forward with the deposition in a tactical play to force answers to questions that have nothing to do with jurisdictional discovery.

QIB rejects Plaintiff's exaggerated accusations and threats in his September 29, 2021 letter, but agrees with Plaintiff that Rule 30(c)(2) – which QIB explicitly invoked during the deposition – permits counsel to instruct a witness not to answer a question in order to enforce a court order. In our case, the Court ordered limited jurisdictional discovery, a boundary that Plaintiff has never respected. Plaintiff's questions that transgressed the scope of jurisdictional discovery were patently inappropriate, and it was both proper and necessary for QIB's counsel to instruct the witness not to answer them. *See Klayman v. Fitton*, No. 19-20544-CIV, 2019 WL 11505348, at *2 (S.D. Fla. July 11, 2019). For example, during the deposition, you asked questions that clearly do not relate to QIB's contacts with the United States, but rather constitute an impermissible fishing expedition into the merits of Plaintiff's claims, such as:

Q: Mr. Gulzar, QIB had anti-terrorism financing policies in 2012 and 2013, correct?

September 30, 2021
pg. 3

Q: The purpose of those policies was to prevent the use of QIB services for money laundering and terrorism financing, correct?

Q: Would QIB agree that any terrorism financing policies are important?

Q: Did QIB have to verify the identity of a person who opened an account at the bank?

Q: Did QIB have to verify an account holder's source of funds?

Q: Did QIB have to verify the purpose of an account?

Q: Did QIB have to monitor account activity periodically?

Q: Did QIB have to apply heightened due diligence to charities?

Q: Did QIB have to apply heightened due diligence to charity transactions?

Q: Did QIB have to apply heightened due diligence to wires that exceeded 4,000 Qatari riyal?

Q: Did QIB verify Qatar Charity's identity when it opened an account?

Q: How did QIB verify the account holder's identity?

Q: What's the purpose of QIB -- the QIB account ending 0122?

Q: Did QIB verify Hazza Saad al-Kabi's identity when it opened account ending 2076?

Q: How did it verify Mr. al-Kabi's identity?

Q: Was Hazza Saad al-Kabi a minor when the account ending 2076 was opened?

Q: Was QIB aware of Saad bin Saad al-Kabi's ties to the Nusra Front when it opened this account?

Q: What was the scope of services that QIB provided to Hazza Saad al-Kabi?

Q: QIB policy forbade QIB from receiving donations for an association for any reason without approval from the Ministry of Social Affairs, correct?

Q: Did QIB verify Qatar Charity's identity when it opened account ending in 0121?

Q: What is the purpose of QIB account ending – sorry – of the Qatar Charity account ending 0121?

Q: Did the investigations department look into this transaction?

Q: What were the results of their investigation?

September 30, 2021
pg. 4

      Q: This message put QIB on notice of a risk with this transaction, correct?

These questions all transgress the scope of jurisdictional discovery, as do many of the other questions asked during the deposition, and QIB was within its rights not to answer them

      Notwithstanding our current disagreement about the permissible scope of jurisdictional discovery, we take our obligation to confer prior to the filing of discovery motions seriously and stand ready to discuss specific questions that you believe are relevant to the jurisdictional inquiry. This discussion likely will be more productive after Judge Hunt decides the pending discovery motions. With this in mind, we propose coordinating our meet-and-confer session on Friday—or a date after Judge Hunt issues a decision.

      Sincerely yours,

      T. Michael Guiffre

cc:    John H. Rains IV, Esq.
       Kamal Ghali, Esq.
       Shawn C. Layman, Esq.