EXHIBIT H

1001 Pennsylvania Avenue, N.W., Washington, DC  20004-2595 ▪ p202 624-2500 ▪ f202 628-5116



T. Michael Guiffre
(202) 624-2501
MGuiffre@crowell.com

October 20, 2021

**VIA E-MAIL**

Matthew R. Sellers, Esq.
Bondurant, Mixson & Elmore, LLP
1201 W. Peachtree St., N.W., Suite 3900
Atlanta, GA 30309

    Re:    *Schrier v. QIB*, No. 20-cv-60075 (S.D. Fla.)

Dear Matthew,

    Your October 19, 2021 letter seeks to complete conferral about the deposition of QIB by asking QIB to answer 35 questions to which QIB objected because they were beyond the scope of jurisdictional discovery or otherwise improper. This request is untimely for numerous reasons, including the following:

- Plaintiff took QIB's Rule 30(b)(6) deposition on September 23, 2021.

- Jurisdictional discovery ended on September 27, 2021.

- As set forth in QIB's September 30, 2021 letter, QIB made numerous offers to confer with Plaintiff concerning its objections to Plaintiff's Rule 30(b)(6) deposition topics, but Plaintiff never did notwithstanding its obligation to do so under Rule 30(b)(6).

- QIB immediately responded to your conferral request following your receipt of QIB's September 30, 2021 letter and conferred with Plaintiff on October 1, 2021. QIB's position was that any withdrawal of QIB's objections during the deposition would be informed by Judge Hunt's rulings on two pending motions to compel and a pending motion for protective order.

- Magistrate Judge Hunt issued his Order concerning most discovery issues on October 5, 2021. See ECF No. 147.  Judge Hunt's Order slightly modified the time period for jurisdictional discovery, but denied Plaintiff's other requests.

- Plaintiff filed a consent motion for extension of time to file a second amended complaint on October 7, 2021, in which Plaintiff stated that the extension was

October 20, 2021
pg. 2

- needed due to pending discovery including potentially supplemental deposition testimony by QIB.

- Based on Magistrate Judge Hunt's October 5, 2021 decision, QIB produced all remaining responsive documents on October 11, 2021.

- Plaintiff filed his second amended complaint on October 11, 2021.

- Magistrate Judge Hunt issued his ruling on the remaining discovery issue and denied further discovery on October 13, 2021. See ECF No. 151.

- The Court denied Plaintiff's consent motion for extension of time to file a second amended complaint on October 14, 2021.

- QIB's motion to dismiss the second amended complaint is due on Monday, October 25, 2021.

It is unreasonable and untimely for Plaintiff to ask QIB to withdraw its objections and submit to another deposition only six days before QIB's motion to dismiss is due. Based on their orders, both Judge Altman and Magistrate Judge Hunt consider jurisdictional discovery to be complete and are unlikely to look favorably on any further requests for extensions of time—even by consent—to conduct additional discovery or amend Plaintiff's complaint. Accordingly, QIB is under no obligation to submit to additional deposition questions and doing so is both infeasible and would inhibit QIB's ability to complete and file its motion to dismiss.

That said, QIB will answer these 35 questions, with slight modifications to six of them, if the following conditions are met:

1) The Court grants a two-week extension of time for QIB to file its motion to dismiss in order to enable the parties to complete this discovery;

2) Plaintiff agrees to the slightly modified questions that QIB will answer; and

3) QIB may answer the questions in writing and under oath. Conducting a supplemental oral deposition would result in a substantial delay to the proceedings that the Court almost certainly would not grant.

QIB is enclosing the revised deposition questions, which QIB consolidated in some instances, for Plaintiff's review and agreement. The only substantive modifications are reflected in the first three questions. QIB revised these three questions to pertain only to the U.S. correspondent transactions produced by QIB. This is essentially how Plaintiff proposed to modify the Deutsche Bank subpoena requests. *See* ECF No. 131 at 3-4; ECF No. 133 at 4. QIB is willing to answer these questions even though Magistrate Judge Hunt denied Plaintiff's requests with respect to the Deutsche Bank subpoena.

October 20, 2021
pg. 3

      QIB needs Plaintiff's agreement to these terms today in order to file a consent motion for a two-week extension of time for QIB to file its motion to dismiss. Judge Altman may not grant QIB's motion if it is filed any later.

                                       Sincerely yours,

                                       T. Michael Guiffre

cc:    John H. Rains IV, Esq.
       Kamal Ghali, Esq.
       Shawn C. Layman, Esq.

1. With respect to the transactions reflected in Qatar Islamic Bank's ("**QIB**") document productions (QIB000001-76), were QIB's US correspondent accounts used to finance the Madid campaign during the period from September 1, 2012 to November 1, 2013?

2. With respect to the transactions reflected in QIB's document productions (QIB000001-76), were QIB's US correspondent accounts used to finance the Nusra Front during the period from September 1, 2012 to November 1, 2013?

3. With respect to the transactions reflected in QIB's document productions (QIB000001-76), were QIB's US correspondent accounts used to finance Ahrar al-Sham during the period from September 1, 2012 to November 1, 2013?

4. Does Qatar Islamic Bank know who Saad bin Saad al-Kabi is?

The remaining questions reference this table:

| No. | Date | Amount | Sender | Recipient | Correspondent Bank |
|---|---|---|---|---|---|
| ■ | ■ | ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ | ■ | ■ |

5. With respect to transaction No. 1, did this transaction benefit the Madid campaign?

6. With respect to transaction No. 1, did this transaction flow to Ahrar al-Sham?

7. With respect to transaction No. 1, did this transaction flow to the Nusra Front?

8. With respect to transaction No. 1, did this transaction finance Matthew Schrier's detention?

9. With respect to transaction No. 2, did this transaction benefit the Madid campaign?

10. With respect to transaction No. 2, did this transaction flow to Ahrar al-Sham?

11. With respect to transaction No. 2, did this transaction flow to the Nusra Front?

12. With respect to transaction No. 2, did this transaction finance Matthew Schrier's detention?

13. With respect to transaction No. 3, did this transaction benefit the Madid campaign?

14. With respect to transaction No. 3, did this transaction flow to Ahrar al-Sham?

15. With respect to transaction No. 3, did this transaction flow to the Nusra Front?

16. With respect to transaction No. 3, did this transaction finance Matthew Schrier's detention?

17. With respect to transaction No. 4, did this transaction benefit the Madid campaign?

18. With respect to transaction No. 4, did this transaction flow to Ahrar al-Sham?

19. With respect to transaction No. 4, did this transaction flow to the Nusra Front?

20. With respect to transaction No. 4, did this transaction finance Matthew Schrier's detention?

21. With respect to transaction No. 5, did this transaction benefit the Madid campaign?

22. With respect to transaction No. 5, did this transaction flow to Ahrar al-Sham?

23. With respect to transaction No. 5, did this transaction flow to the Nusra Front?

24. With respect to transaction No. 5, did this transaction finance Matthew Schrier's detention?

25. With respect to transaction No. 6, did this transaction benefit the Madid campaign?

26. With respect to transaction No. 6, did this transaction flow to Ahrar al-Sham?

27. With respect to transaction No. 6, did this transaction flow to the Nusra Front?

28. With respect to transaction No. 6, did this transaction finance Matthew Schrier's detention?

29. With respect to transaction No. 7, did this transaction benefit the Madid campaign?

30. With respect to transaction No. 7, did this transaction flow to Ahrar al-Sham?

31. With respect to transaction No. 7, did this transaction flow to the Nusra Front?

32. With respect to transaction No. 7, did this transaction finance Matthew Schrier's detention?